EDMUND G. BROWN JR., State Bar No. 37100
Attorney General of California
JONATHAN K. RENNER, State Bar No. 187138
Senior Assistant Attorney General
GEORGE WATERS, State Bar No. 88295
Deputy Attorney General
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone:  (916) 323-8050
 Fax:  (916) 324-8835
 E-mail:  George.Waters@doj.ca.gov
*Attorneys for Defendants Edmund G. Brown Jr. and
Superior Court of California, Shasta County*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **DWAYNE B. BURNS,**<br><br>                                    Plaintiff,<br><br>    v.<br><br>**MICHAEL MUKASEY, in his official capacity as Attorney General of the United States of America, et al.,**<br><br>                                    Defendants. | 2:09-CV-00497-MCE-CMK<br><br>**POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS [Fed.R.Civ.P. Rules 12(b)(1), 12(b)(6)]**<br><br>Date:            August 6, 2009<br>Time:            10:00 a.m.<br>Courtroom:   304, 3rd Floor<br>Judge:           The Honorable<br>                      Craig M. Kellison<br>Trial Date:     None Assigned<br>Action Filed: February 20, 2009 |

**INTRODUCTION**

Plaintiff Dwayne Burns, proceeding *pro se*, has sued a number of government actors. The defendants can be divided into three categories: (a) the *State Defendants* (California Attorney General Edmund G. Brown Jr., and the Superior Court of California, Shasta County), (b) the *Federal Defendants* (former U.S. Attorney General Michael Mukasey, Acting Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives Michael

1

Sullivan, and FBI Director Robert S. Mueller III), and (c) the *Local Defendants* (Shasta County Sheriff Tom Bosenko, the City of Redding, Redding Police Chief Peter Hansen, and four Redding police officers).

This memorandum is filed on behalf of the State Defendants.

The complaint[1], set forth in ten claims, can be divided into two parts. The first part (claims 1-2) is a broad constitutional challenge to state and federal laws that prohibit the target of a domestic violence restraining order from possessing a firearm. (Plaintiff currently is the target of an order that he not "harass, attack, strike, threaten, assault (sexually or otherwise), hit, follow, stalk, [or] molest" his wife.) The second part (claims 3-10) focuses on a specific event – plaintiff's arrest for spousal battery and the aftermath – and generally asserts that the Local Defendants wrongfully took plaintiff's gun. This motion to dismiss is directed to the first two claims (the constitutional challenge). These are the only claims plead against the State Defendants.

This motion is brought under Rules 12(b)(1) and 12(b)(6). Plaintiff's claims against the State Defendants should be dismissed for two reasons:

- Defendant Shasta County Superior Court is immune from suit under the 11th Amendment. This Court therefore lacks subject-matter jurisdiction as to the Superior Court. Fed.R.Civ.P. Rule 12(b)(1).
- The California statute at issue here – which prohibits gun possession by the target of a domestic violence restraining order – has a virtually-identical federal counterpart. The federal statute has been upheld against Second Amendment challenge by every court (eight) that has considered the issue. Plaintiff fails to state a claim against either State Defendant because the statute he challenges here is clearly consistent with the Second Amendment. Fed.R.Civ.P. Rule 12(b)(6).

---

[1] All references to the "complaint" are to the amended complaint filed February 24, 2009.

# BACKGROUND

## I. ALLEGATIONS OF THE COMPLAINT

All well-pleaded material allegations of the complaint will be accepted as true, as they must be on a motion to dismiss. *Wilbur v. Locke*, 423 F.3d 1101, 1107 (9th Cir. 2005).

Plaintiff is a United States citizen concerned that federal and state gun laws are in direct violation of recent court decisions interpreting the Second Amendment. ¶ 1.[2] He lives in a high-crime neighborhood and has been threatened, beaten, and robbed by drug dealers. The Redding Police Department repeatedly refused to investigate those matters properly. He would like to have a handgun for self-defense in his home. ¶ 10.

On May 21, 2007, Plaintiff was arrested for alleged spousal battery. Redding police officers conducted an illegal search of his home and seized a .380 caliber automatic pistol. ¶ 24. On September 5, 2007, in a separate civil proceeding, the Shasta County Superior Court entered a restraining order prohibiting plaintiff from contacting or harassing his wife. ¶ 26.

The criminal spousal battery charges against plaintiff were later dismissed. Plaintiff then tried to retrieve his automatic pistol from the police department but was refused because the restraining order was still in effect and the restraining order prevents him from possessing or carrying firearms. He cannot get his gun back until he gets a clearance from the Department of Justice. ¶¶ 27-29.

Plaintiff seeks injunctive and declaratory relief against the enforcement of federal and state law "in such a manner as to forbid Mr. Burns from possessing or carrying a firearm within his home or possessed land." Prayer ¶ 1. Jurisdiction is plead under 42 U.S.C. § 1983.

///

---

[2] All citations using only the paragraph symbol are to the Amended Complaint filed February 24, 2009.

## II.  PLAINTIFF'S DOMESTIC VIOLENCE RESTRAINING ORDER

Plaintiff's domestic violence restraining order is attached to the complaint as Exhibit A.[3] The restraining order shows that plaintiff was ordered not to do the following to his wife:

- Harass, attack, strike, threaten, assault (sexually or otherwise), hit, follow, stalk, molest, destroy personal property, disturb the peace, keep under surveillance, or block movements.

- Contact (either directly or indirectly), telephone, or send messages or mail or e-mail.

- Take any action, directly or through others, to get the addresses or locations of any protected persons[.]

Restraining Order ¶ 6. Plaintiff was further ordered to stay at least 100 yards away from his wife and to divest himself of firearms. Restraining Order ¶¶ 7, 28. The order remains in effect for three years. Restraining Order ¶ 4.

## III.  A SHORT DESCRIPTION OF CALIFORNIA AND FEDERAL STATUTES PROHIBITING THE POSSESSION OF FIREARMS BY TARGETS OF DOMESTIC VIOLENCE RESTRAINING ORDERS.

In 1993 California consolidated the substantive provisions of several statutes into the Domestic Violence Protection Act (Act). Cal. Family Code § 6200.[4] "Domestic violence" is defined in part as abuse against a "spouse or former spouse." § 6211(a).

The Act provides for protective orders:

> enjoining a party from molesting, attacking, striking, stalking, threatening, sexually assaulting, battering, harassing, telephoning, including, but not limited to, annoying telephone calls as described in Section 653m of the Penal Code, destroying personal property, contacting, either directly or indirectly, by mail or otherwise, coming within a specified distance of, or disturbing the peace of the other party, and, in the

---

[3] The court may consider material attached to the complaint without converting a motion to dismiss into a motion for summary judgment. *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

[4] Unless otherwise noted, all statutory references are to the California Family Code.

> discretion of the court, on a showing of good cause, of other named family or household members.

§ 6320.

Protective orders are of limited duration and can be entered under three circumstances. First, any law enforcement officer can apply for an ex parte emergency protective order when he asserts reasonable grounds that a person is in immediate danger of domestic violence. § 6250(a). Such an order expires within a week of issuance. § 6256. Second, the victim of domestic violence can apply for an ex parte protective order. § 6320. Such an order, which (when served) also operates as an order to show cause, expires in either twenty or twenty-five days. §§ 6327, 242. Third, after notice and hearing, a court can enter an order for up to five years, subject to modification by motion of either party or by written stipulation. §§ 6340, 6345. Such an order is appealable. *See Quintana v. Guijosa*, 107 Cal.App.4th 1077, 1079-1080 (2003); Rutter, *Cal.Prac.Guide:Family Law* (2009) ¶ 5:534.1

All the orders described in the preceding paragraph must include a restriction that the target "not own, possess, purchase, or receive a firearm while [the] protective order is in effect." § 6389(a). The firearm restriction is mandatory; a court has no authority to modify or waive it. *Ritchie v. Conrad*, 115 Cal.App.4th 1275, 1293-1294 (2004). Violation of the firearm restriction is punishable as a misdemeanor. Cal. Penal Code § 12021(g).

The California restriction on gun possession works hand in glove with federal law. Federal law prohibits possession of a firearm by anyone who is the subject of a domestic violence restraining order, provided that the order (a) was entered after a noticed hearing and (b) either includes a finding that the target represents a credible threat to an intimate partner or explicitly prohibits the use of physical force against an intimate partner.[5]

---

[5] *See* 18 U.S.C. § 922(g)(8):

(g) It shall be unlawful for any person--

\* \* \* \* \*

(8) who is subject to a court order that--

(continued…)

The restraining order against plaintiff was entered after a noticed hearing. Restraining Order ¶ 18. It includes, as it must, a prohibition on the possession of firearms during the pendency of the order. Restraining Order ¶ 28. It has a duration of three years. Restraining Order ¶ 4. The protective order triggers the parallel federal firearm restriction because it (a) was entered after notice and (b) explicitly prohibits the use of physical force against an intimate partner. *See* Restraining Order ¶6; 18 U.S.C. § 922(g)(8).

## ARGUMENT

**I.   THE 11TH AMENDMENT BARS PLAINTIFF'S CLAIMS AGAINST THE SHASTA COUNTY SUPERIOR COURT.**

The 11th Amendment of the United States Constitution limits the jurisdiction of federal courts.[6] It withdraws federal jurisdiction from suits by individuals against States. State agencies are immune from suit in federal court absent an unequivocal waiver and consent to sue. *Quern v. Jordan*, 440 U.S. 332, 337-345 (1979). This immunity extends to suits by citizens against their own states. *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 72-73 (2000).

---

(…continued)

  (A) was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate;

  (B) restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and

  (C)(i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or

  (ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury;

\*  .  \*   \*   \*   \*

to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

[6] The Eleventh Amendment states "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

The Shasta County Superior Court is a state agency. Cal. Const., Art. VI, § 1. A suit against a superior court is a suit against the state and is barred by the Eleventh Amendment. *Greater Los Angeles Council on Deafness, Inc. v. Zolin*, 812 F.2d 1103, 1110 (9th Cir. 1987). The Eleventh Amendment bars suits "in law or equity;" thus all forms of relief are barred.[7] *Id.*

## II. CALIFORNIA STATUTES PROHIBITING THE POSSESSION OF FIREARMS BY THE TARGETS OF DOMESTIC VIOLENCE RESTRAINING ORDERS ARE CONSISTENT WITH THE SECOND AMENDMENT.

In *District of Columbia v. Heller*, ___ U.S. ___, 128 S.Ct. 2783 (2008), the Supreme Court held that the District of Columbia's total ban on the possession of handguns violated the Second Amendment.[8] *Id.* at 2821-22. In doing so, the Court also concluded that the Second Amendment protects an individual right to possess certain weapons for self-defense. *Id.* at 2797. The Court did not reach a related issue of whether the Second Amendment is incorporated by the Fourteenth Amendment and therefore applicable to the States. *Id.* at 2813 n. 23. Nor did the Court decide what standard of review would apply to Second Amendment challenges. *Id.* at 2817 n. 7.

In April of this year a panel of the Ninth Circuit concluded that the Second Amendment is incorporated by the Fourteenth Amendment and therefore does apply to the States. *Nordyke v. King*, 563 F.3d 439, 457 (9th Cir. 2009). The Second Circuit (*Maloney v. Cuomo*, 554 F.3d 56, 58 (2nd Cir. 2009)) and the Seventh Circuit (*National Rifle Ass'n of America, Inc. v. City of Chicago*, ___ F.3d ___, 2009 WL 1515443, *1 (7th Cir. 2009))

---

[7] Nor would an individual judge be a proper defendant in this action:

"[i]n the typical prospective assault on the constitutionality of a state statute, the state judge is not a proper party defendant under § 1983 because he has no stake in upholding the statute: he is not the plaintiff's adversary, and the complaint should be dismissed for failure to state a claim upon which relief can be granted." . . . . We agree with these decisions holding that judges adjudicating cases pursuant to state statutes may not be sued under § 1983 in a suit challenging the state law.

*Grant v. Johnson* 15 F.3d 146, 148 (9th Cir. 1994); quoting *R.W.T. v. Dalton*, 712 F.2d 1225, 1232 (8th Cir.), *cert. denied*, 464 U.S. 1009 (1983).

[8] The Second Amendment states "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."

have come to the opposite conclusion. This memorandum will assume, as it must, that the Second Amendment is applicable to the States.[9]

Since *Heller* was decided in June 2008, no case has considered the constitutionality of the gun prohibition in the California domestic violence protective order statute (Family Code § 6389) that plaintiff challenges here. But seven federal district courts have examined the parallel federal protective order statute (18 U.S.C. § 922(g)(8)), and all seven have held that the federal statute does not violate the Second Amendment. *See U.S. v. Knight*, 574 F.Supp.2d 224, 226 (D. Maine 2008); *United States v. Erwin*, 2008 WL 4534058, *3 (N.D. N.Y. 2008); *U.S. v. Lippman*, 2008 WL 4661514, *3 (D. N.D. 2008); *U.S. v. Luedtke*, 589 F.Supp.2d 1018, 1025 (E.D. Wisc. 2008); *U.S. v. Montalvo*, 2009 WL 667229, *3 (W.D. N.Y 2009); *Livingston v. Francis*, 2009 WL 818133, *5 (E.D. Mich. 2009); *U.S. v. Grote*, 2009 WL 853974, *7 (E.D. Wash. 2009). While none of these cases determined the standard of review to be applied in Second Amendment cases, all agreed that the federal protective order statute would pass muster *even if* strict scrutiny were applied. *See, e.g. Luedtke*, 589 F.Supp.2d at 1025; *Grote*, 2009 WL 853974, *6; *Knight,* 574 F.Supp.2d at 226; *Erwin*, 2008 WL 4534058, *2.

The Fifth Circuit also has upheld the federal firearm ban against such a Second Amendment challenge. In 2001 the Fifth Circuit held that the Second Amendment protects an individual's right to bear arms. (This is the same conclusion that the Supreme Court reached seven years later in *Heller*). Nonetheless, the Fifth Circuit upheld the validity of the federal protective order statute (18 U.S.C. § 922(g)(8)) against a Second Amendment challenge, stating "Although, as we have held, the Second Amendment *does* protect individual rights, that does not mean that those rights may never be made subject to any limited, narrowly tailored specific exceptions or restrictions for particular cases that are reasonable and not inconsistent with the right of Americans generally to individually

---

[9] A judge of the Ninth Circuit has called for a vote to determine whether *Nordyke* should be heard en banc. *Nordyke v. King*, 9th Cir. # 07-15763, Docket No. 87 (May 18, 2009).

1  keep and bear their private arms as historically understood in this country." *U.S. v. Emer-*
2  *son*, 270 F.3d 203, 261 (5th Cir. 2001).

3        The cases upholding the federal protective order statute are persuasive authority that
4  the parallel California protective order statute also is constitutional. Both statutes prohibit
5  the possession of firearms by the target of a domestic violence restraining order when the
6  order is entered (a) after a noticed hearing and (b) explicitly prohibits the use or attempted
7  use of physical force against an intimate partner. *Compare* Cal. Family Code § 6320(a)
8  *with* 18 U.S.C. § 922(g)(8)).

9        The Supreme Court stressed in *Heller* that "few laws in the history of our Nation
10 have come close to the severe restriction of the [District of Columbia] handgun ban." *Hel-*
11 *ler,* 128 S.Ct at 2818. Thus, once *Heller* decided that the Second Amendment protects an
12 individual's right to bear firearms, it was a straightforward conclusion that the District of
13 Columbia law was unconstitutional. But as the Ninth Circuit has noted, "'not every law
14 which makes a right more difficult to exercise is, *ipso facto,* an infringement of that
15 right.'" *Nordyke,* 563 F.3d at 459 (quoting *Planned Parenthood of Se. Pa. v. Casey,* 505
16 U.S. 833, 873 (1992)). *Heller* described as "presumptively lawful" many restrictions on
17 the possession of firearms, such as "longstanding prohibitions on the possession of fire-
18 arms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive
19 places such as schools and government buildings, or laws imposing conditions and quali-
20 fications on the commercial sale of arms." *Heller,* 128 S.Ct. at 2816-17. *Heller* went on to
21 note that this list "does not purport to be exhaustive." *Id*. at 2817 n. 26. The question
22 posed by the present case is whether California's ban on the possession of firearms by the
23 targets of domestic violence restraining orders is similar enough to the traditional bans on
24 firearm possession by felons and the mentally ill so as to be "presumptively lawful." *See*
25 *Luedtke*, 589 F.Supp.2d at 1021 (construing 18 U.S.C. § 922(g)(8)).

26       Laws barring felons and the mentally ill from possessing firearms are based on a so-
27 cietal determination that such persons pose a particular danger. *See, e.g., Barrett v. United*
28

*States*, 423 U.S. 212, 218-21, (1976); *Huddleston v. United States*, 415 U.S. 814, 824-25, (1974)). Such prohibitions have deep roots in our history:

> In the classical republican political philosophy ascendant at the founding, the concept of a right to arms was tied to that of the "virtuous citizen." Consistent with this emphasis on the virtuous citizen was that the right to arms did not preclude laws disarming the "unvirtuous" (i.e., criminals) or those who, like children or the mentally unbalanced, were deemed "incapable of virtue." Thus, felons, children and the insane were excluded from the right to arms. Glenn Harlan Reynolds, *A Critical Guide to the Second Amendment,* 62 Tenn. L.Rev. 461, 480 (1995) (citing Don B. Kates Jr., *1022 *The Second Amendment: A Dialogue,* 49 Law & Contemp. Probs. 143, 146 (1986)).

*Luedtke*, 589 F.Supp.2d at 1021.

The state and federal bans on the possession of firearms by the targets of domestic violence restraining orders carry on this tradition. The federal statute, known as the "Lautenberg Amendment," was adopted in 1996. *U.S. v. Carr*, 513 F.3d 1164, 1168 (9th Cir. 2008). At that time, congressional hearings showed that "nearly 65 percent of all murder victims known to have been killed by intimates were shot to death[.]" 142 Cong. Rec. S10379 (statement of Sen. Murray), quoted in *Luedtke*, 589 F.Supp.2d at 1022. The Lautenberg Amendment was aimed at closing a loophole that contributed to a reported 150,000 instances of household violence involving firearms each year. *Id*. As Senator Lautenberg described the loophole:

> Under current Federal law, it is illegal for persons convicted of felonies to possess firearms, yet, many people who engage in serious spousal or child abuse ultimately are not charged with or convicted of felonies. At the end of the day, due to outdated laws or thinking, perhaps after a plea bargain, they are, at most, convicted of a misdemeanor. In fact, most of those who commit family violence are never even prosecuted.

142 Cong. Rec. S10377-01, quoted in *Luedtke*, 589 F.Supp.2d at 1022 (internal citation omitted).

///

///

1  The California statute, like the federal statute, is narrowly drawn to address the problem of epidemic use of firearms in domestic disputes. *See U.S. v. Emerson*, 270 F.3d 203, 261-262 (5th Cir. 2001) (construing 18 U.S.C. § 922(g)(8)). The statutes are not an outright ban on firearm possession; they last only as long as a noticed restraining order remains in effect. *See Knight*, 574 F.Supp.2d at 226. In this aspect the statutes are much narrower than the ban on the possession of firearms by felons, which is a lifetime ban. *See* 18 U.S.C. § 922(g)(1), Cal. Penal Code § 12021(a)(1). The statutes require an actual hearing with prior notice and an opportunity to participate. *See Luedtke*, 589 F.Supp.2d at 1023. "These are narrowly crafted limits on when a citizen may possess a firearm and well tuned to the legitimate concerns of avoiding serious physical injury to a partner or child." *Knight*, 574 F.Supp.2d at 226 (construing 18 U.S.C. § 922(g)(8)).

The Second Amendment is "subject to certain well-recognized exceptions, arising from the necessities of the case." *Robertson v. Baldwin,* 165 U.S. 275, 281 (1897). Nothing in *Heller* suggests that Congress and the California Legislature cannot – based on experience and study – close loopholes, "thus adding to the list of dangerous individuals historically barred from firearm possession." *Luedtke*, 589 F.Supp.2d at 1023. The ban on firearm possession by the targets of domestic violence restraining orders is the type of regulation traditionally permitted in this nation and is presumptively valid.

/ / /

/ / /

/ / /

11

POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
(2:09-CV-00497-MCE-CMK)

**CONCLUSION**

For the reasons set forth above, the State Defendants' motion to dismiss pursuant to Rule 12(b)(1) and 12(b)(6) should be granted.

Dated: June 26, 2009

Respectfully submitted,

EDMUND G. BROWN JR.
Attorney General of California
JONATHAN K. RENNER
Senior Assistant Attorney General

/s/ *George Waters*

GEORGE WATERS
Deputy Attorney General
*Attorneys for Defendants Edmund G. Brown Jr. and Superior Court of California, Shasta County*

SA2009310048