Dwayne B. Burns
P.O. Box 720157
Redding, CA 96099-7157
Telephone: (530) 440-0682
dwaynebburns@charter.net

Plaintiff, *IN PRO PER*

**FILED**

JUL 2 3 2009

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
               DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT FOR

# THE EASTERN DISTRICT OF CALIFORNIA

## SACRAMENTO DIVISION

| | |
|---|---|
| DWAYNE B. BURNS,<br><br>        Plaintiff,<br><br>vs.<br><br>MICHAEL MUKASEY, *et al.*,<br><br>        Defendants. | CIVIL CASE NO.<br>2:09-CV-0497 MCE CMK<br><br>**BRIEF IN OPPOSITION TO STATE DEFENDANTS' MOTION TO DISMISS** |

The Plaintiff, Dwayne B. Burns, appearing *in propria persona*, respectfully requests that this Honorable Court deny the "Motion to Dismiss" filed by the Superior Court of California, Shasta County, and Edmund G. Brown, Jr., (the "State Defendants"). The grounds for this opposition are as follows: (1) the claims against the Superior Court of California, Shasta County have been dismissed making the Superior Court's motion to dismiss moot; and (2) the Plaintiff has stated valid claims against the Attorney General of California under F.R.C.P. 8 for injunctive and declaratory relief because the policies, practices, and customs which the Attorney General is currently enforcing pursuant to California law is unconstitutional and violate the Plaintiff's rights under the Second and Fourteenth Amendments to the United States Constitution.

## PRELIMINARY STATEMENT

"The enshrinement of constitutional rights necessarily takes certain policy choices off the table." These words written by Justice Antonin Scalia in the recent United States Supreme Court case of *District of Columbia v. Heller*, 554 U.S. ___, 128 S. Ct. 2783 (2008), sum up the issues that will be decided in this case. Plaintiff is sure this Court is aware that *D.C. v. Heller* was an astounding landmark decision which for the first time in our nation's history announced unequivocally that the right to keep and bear arms in the home for self-defense is an **individual**, rather than a collective, fundamental right. The California Attorney General, and others who have erroneously agreed with him, fail to recognize the significance and the full breadth and depth of what the decision stands for. Second Amendment jurisprudence is not what it used to be. The *Heller* case has turned American Second Amendment jurisprudence on its head. The old has passed away.

Cases that analyzed the Second Amendment in the past under the Privileges and Immunities Clause are no longer relevant. For that matter most of the American cases dealing with the Second Amendment are now irrelevant and either meaningless or useless as precedent in deciding a case with issues such as this one. This is essentially a case of first impression before this Honorable Court. This will likely be a case of first impression before the Ninth Circuit Court of Appeals, and ultimately a case which will more than likely need to be decided by the Supreme Court.

The *post-Heller* District Court cases that the Attorney General cites as authority for upholding the state statutes at issue here against a constitutional challenge are especially irrelevant. They were all criminal cases where the issue involved whether the District Courts could make collateral inquiry into the validity of the state court restraining orders. Out of the seven Federal District Courts that the Attorney General cites, only one was a District Court within the Ninth Circuit, the *Grote* Court[1], and the *Grote* court used the wrong analysis – a due

---

[1] *U.S. v. Grote*, 2009 WL853974, *7 (E.D. Wash. 2009).

1  process analysis – in deciding whether to grant or deny the defendant's motion to dismiss the
2  charges. The *Grote* decision has not yet been reviewed by the Ninth Circuit Court of Appeals.

3        The issues that this case will decide are (1) can a state law categorically strip a member of
4  a class of individuals of his fundamental right to keep and bear arms in his home for self-defense
5  by means of a civil hearing with a drastically lower burden of proof, and without having the
6  safeguards of right to counsel and a right to be tried by jury; and (2) whether the statutes at issue
7  are "narrowly tailored to achieve a compelling state interest." It is Plaintiff's contention that
8  while the Lautenberg Amendment[2], the Federal counterpart to the state statutes at issue here, and
9  the California statutes, do indeed serve a compelling state interest; i.e., the attempted reduction of
10 domestic violence committed by the use of firearms, the statutes go too far. By prohibiting the
11 possession of firearms within the home and private property of the Plaintiff, the state and federal
12 statutes at issue in this case are too broad and too sweeping under the heightened level of review
13 that the *Heller* case mandates be used when analyzing statutes which infringe on Second
14 Amendment rights.

15       The same state interest of reducing domestic violence by the use of firearms can be
16 effectively achieved by prohibiting the possession of firearms outside of the home and off of the
17 private property of the Plaintiff and other "restrained" persons in the same class. By only
18 prohibiting the possession of firearms outside of the home, the same compelling state interest is
19 advanced, and the restrained person's rights under the Second and Fourteenth Amendments are
20 not violated. If a restrained person is going to abide by the court's orders, the person will abide
21 by the orders which prohibit the possession and transportation of firearms outside of the home
22 and off of the private property of the restrained person. If the restrained person is not of a mind
23 set to abide by the court's orders to begin with, then the further prohibition of the possession of
24 firearms within the home will add nothing in the way of reducing domestic violence by the use of

25 ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

26  [2] The Federal counterpart to state statutes at issue 18 U.S.C. § 922(g)(8) was enacted by Congress in 1996 as part of the so-called Lautenberg Amendment to the Gun Control Act of 1968. *United States v. Carr*, 513 F.3d 1164, 1168 (9th Cir. 2008).

firearms. A law prohibiting the possession and carrying of a firearm **outside** of the home by a restrained person would be a reasonable means of achieving the state's compelling interest. Plaintiff asks this Court the same question that Chief Justice Roberts asked counsel for the District of Columbia, Walter Dellinger, during oral argument in the *Heller* case, "What is . . . what is reasonable about a total ban on possession?"

## ARGUMENT

### I. THE LEGAL STANDARD FOR 12(b)(6) MOTIONS

A ruling that Plaintiff has failed to state a claim under F.R.C.P. 12(b)(6) may be granted only in extraordinary circumstances. *United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981). F.R.C.P. 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief". The party bringing a 12(b)(6) motion has the burden to show that Rule 8(a)(2) has not been met. *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3rd Cir. 1991). The court's role at the 12(b)(6) stage is not to evaluate the strength or weakness of claims. *Jacobson v. Hughes Aircraft Co.*, 105 F.3d 1288, 1292 (9th Cir. 1997). A Plaintiff's brief may always be used "to clarify allegations in her complaint whose meaning is unclear." *Pegram v. Herdrich*, 530 U.S. 211, 230, fn. 10 (2000). "New" facts in Plaintiff's opposition must be considered to determine whether to grant leave to amend or to dismiss with or without prejudice. *Orion Tire Corp. v. Goodyear Tire & Rubber Co.*, 268 F.3d 1133, 1137 (9th Cir. 2001).

### II. STANDING

#### A. LEGAL STANDARD

To establish standing, a plaintiff must demonstrate three elements:

"First plaintiffs must clearly demonstrate that they have suffered an "injury in fact" – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly traceable to the challenged action of the defendant. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

1  *Hemp Indus. Ass'n v. D.E.A.*, 333 F.3d 1082, 1086 (9th Cir. 2003) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992)). Plaintiff asserts multiple discrete injuries, caused by the State Defendant's statutes, policies, and practices alleged by Plaintiff to be unconstitutional under the Second and Fourteenth Amendments to the United States Constitution, which are redressable by a favorable decision of this Court.

### B. STANDING TO CHALLENGE THE CALIFORNIA STATUTES AT ISSUE

The California statutes complained of prohibit Plaintiff from exercising his fundamental right to keep a firearm in his home for self-defense as enshrined by the recent United States Supreme Court decision in *D.C. v. Heller*, 554 U.S. ___, 128 S. Ct. 2783 (2008). The California statutes at issue in this case prohibit Plaintiff from possessing any firearm within his home. The restrictions that the California statute put on the Plaintiff are more severe than the restrictions that were placed on Mr. Heller by the District of Columbia. Plaintiff was ordered to have no firearms at all within his home for a period of three years. Restraining Order ¶¶ 4 and 28. Contrary to what the Attorney General would have this Court believe, the California statutes are an outright ban on firearm possession. The statute allows the state court's orders to be in effect for as long as five years, and can then be renewed. A half of a decade is a long time to have an outright ban placed upon someone, especially someone who has not been convicted of **any** crime of domestic violence, nor has been convicted of any crime of violence involving a firearm.

#### 1. PLAINTIFF HAS PERSONALLY SUFFERED INJURY AS A RESULT OF DEFENDANT'S ACTIONS.

On a number of occasions, Plaintiff has attempted to retrieve his firearm from the Redding Police Department ("RPD") who has Plaintiff's firearm in its custody. Both times RPD has refused to return Plaintiff's firearm citing the California statutes at issue here as authority for refusing to return it. Plaintiff would like to keep a firearm in his home for self-defense, but risks arrest, incarceration, and prosecution if he were to do so.

////

1   Plaintiff fears for the safety of himself and his family. Plaintiff currently lives with his
2   elderly handicapped parents who are incapable of defending themselves if attacked. In times past
3   when Plaintiff has had to summon RPD for assistance, it has always taken RPD at least a
4   minimum of fifteen minutes to arrive despite Plaintiff living within the city limits of Redding.
5   Plaintiff fears that if a life-threatening situation should arise, RPD would be of little or no
6   immediate assistance.

### 2. PLAINTIFF'S INJURY CAN BE FAIRLY TRACED TO THE CHALLENGED ACTION OF THE DEFENDANT.

The Defendant, Edmund G. Brown, Jr., as California Attorney General heads the California Department of Justice and is responsible for executing and administering California's law, customs, practices, and policies. In that capacity, Mr. Brown is presently enforcing the unconstitutional laws, customs, practices, and policies complained of in this action.

### 3. PLAINTIFF'S INJURY IS LIKELY TO BE REDRESSED BY A FAVORABLE DECISION.

In accordance with *Warth v. Seldin*, 422 U.S. 490, 504 (1975), Plaintiff has "allege(d) facts from which it reasonably could be inferred that . . . there is a substantial probability [that the asserted injury would end] if the court affords the relief requested". Plaintiff's injuries would be redressed if he was not prohibited from possessing firearms in his home for self-defense.

### III. PLAINTIFF'S FUNDAMENTAL RIGHT TO KEEP A FIREARM IN HIS HOME FOR SELF-DEFENSE UNDER THE SECOND AMENDMENT APPLIES TO THE STATES.

#### A. THE *HELLER* DECISION.

The case of *D.C. v. Heller*, 554 U.S. ___, 128 S. Ct. 2783 (2008), involved a D.C. special policeman, Mr. Heller, who wanted to keep a handgun in his home. D.C. law prohibited the possession of handguns within the home. D.C. law did allow long guns and rifles to be kept, but they had to be either unloaded and disassembled or have a trigger lock on them. Mr. Heller brought suit in the District Court in the District of Columbia seeking to enjoin, on Second

1 Amendment grounds, the city from enforcing the bar on handgun registration. The District Court
2 dismissed Heller's complaint, see *Parker v. District of Columbia*, 311 F. Supp. 2d 103, 109
3 (2004). The Court of Appeal for the District of Columbia reversed, see *Parker v. District of*
4 *Columbia*, 478 F. 3d 370, 401 (2007). The U.S. Supreme Court heard the case and announced its
5 decision on June 26, 2008.

6       The Supreme Court stated that the Second Amendment protects a right that pre-dates the
7 Federal Constitution; therefore, the Constitution did not grant it. *See, e.g., Heller*, 128 S. Ct. at
8 2797 ("[I]t has always been widely understood that the Second Amendment, like the First and
9 Fourth Amendments, codified a *pre-existing* right."). The Supreme Court stressed in *Heller* that
10 "few laws in the history of our Nation have come close to the severe restriction of the [District of
11 Columbia] handgun ban." *Heller*, 128 S. Ct. at 2818. However, it is important to note that the
12 current ban that has been placed on Plaintiff by the California statutes at issue is by far **more**
13 **severe** than the ban faced by Mr. Heller due to D.C.'s handgun ban. Whereas Mr. Heller could
14 possess long guns and rifles in his home, Plaintiff cannot.

15       While the Supreme Court played a puerile game of "hide the ball" when it came to
16 announcing the level of scrutiny to be used when analyzing Second Amendment cases, it did
17 leave us with a number of clues as to the proper level of scrutiny to be used. *Heller* explicitly
18 rejected rational basis review for Second Amendment claims. *Heller* at 2818 fn. 25. *Heller* also
19 declined to adopt the interest balancing test proposed by the dissent, and in so doing makes it
20 explicit that whatever the court has left to future evaluation, the very enumeration of the right
21 elevates it above all other interests. *Heller* at 2821. The Court compared the right to other
22 enumerated rights such as the First Amendment. *Id.* at 2821.

23       *Heller* also characterized the right to keep and bear arms as a corollary to the individual
24 right of self-defense. *Id.* at 2817, ("[T]he inherent right of self-defense has been central to the
25 Second Amendment right."). The right contains a personal component, it is a means to protect
26 the individual from threats to life or limb.

**B. THE *NORDYKE* DECISION.**

The Ninth Circuit Court of Appeals has spoken on the issue of whether the Second Amendment right to keep and bear arms applies to the states. In *Nordyke v. King*, 563 F.3d 439, 457 (9th Cir. 2009), it concluded that the Second Amendment is incorporated by the Fourteenth Amendment and therefore does apply to the states. To decide whether the Second Amendment rights should be applied to the states through the Fourteenth Amendment's Due Process Clause, the Ninth Circuit looked to the similarities between the right to a jury trial in criminal cases and the right to keep and bear arms. *Nordyke*, at 458. The *Nordyke* court noted that *Heller* revealed evidence similar to that on which *Duncan v. Louisiana*, 391 U.S. 145 (1968) relied to conclude that the Due Process Clause incorporated the right to a jury in criminal cases. *Id.* *Heller* began with the 1689 English Declaration of Right (which became the English Bill of Rights), just as *Duncan* did. The Court then noted that the right to keep and bear arms shares ancestry with a right already deemed to be fundamental. *Id.*

The *Nordyke* court then noted that both *Heller* and *Duncan* had both looked to Blackstone, and found that significant since Blackstone "constituted the preeminent authority on English law for the founding generation." *Id., citing Alden v. Maine*, 527 U.S. 706, 715 (1999). Blackstone considered the right to keep and bear arms crucial to safeguarding all other rights. *Id.* at 459. The *Nordyke* court ended its survey of our history by finding that the right to keep and bear arms was "deeply rooted in this Nation's history and tradition." *Nordyke* at 462.

The *Nordyke* court then looked to our Nation's history through the Civil War and the post-Civil War period and concluded that there was a general consensus, in case law as well as commentary, on the importance of the right to keep and bear arms to American republicanism. *Id.* at 464, *citing Heller*, 128 S. Ct. 2805-09.

The *Nordyke* court ultimately declared that because the right to keep and bear arms can "meet the criteria set by *Duncan* and *Glucksberg*, we have undertaken the further historical analysis necessary to confirm what in *Heller* was only a suggestion." *Id.* at 467.

In determining whether the Due Process Clause incorporated the right to jury trials in criminal cases, *Duncan* noted that every American state "uses the jury extensively, and imposes very serious punishments only after a trial at which the defendant has a right to a jury's verdict." 391 U.S. at 149 n.14. In Plaintiff's case, he has been in essence punished by a sentence of no right to keep and bear arms within his home for self-defense for a term of three years without the right to a jury's verdict.

## IV. THE NINTH CIRCUIT WILL LIKELY LOOK TO SEE WHETHER THE STATUTES AT ISSUE ARE REASONABLE AND NARROWLY TAILORED.

Since no Federal appellate court has had an opportunity to decide the constitutionality of the California statutes at issue here in the aftermath of *Heller*, one can only guess as to what criteria the Court of Appeals will use in its analysis. However, just as *Heller* suggested what the *Nordyke* court should look to, the *Nordyke* court's decision suggests what this Court should look to for guidance. Like the way the *Nordyke* court compared the right to jury trial in a criminal case with the right to keep and bear arms, Plaintiff suggests that perhaps this Court should do the same sort of comparison. Perhaps it could be referred to as a little "constitutional math." Substitute X, which is the designation for the right to keep and bear arms, for Y, the designation for the right to jury trial in a criminal case.

Plaintiff asks the Court to imagine for a moment that instead of imposing the severe and harsh outright ban against the right to keep and bear arms within his home for self-defense that the California statutes at issue have imposed upon the Plaintiff, the statutes at issue imposed an outright ban against the right to trial by jury in a criminal case for those accused of domestic violence. The state's compelling interest could be that many abusers escape prosecution due to the fact that many times the abused refuses to testify against the abuser resulting in the abuser not being convicted. Would such a statute pass constitutional muster? Of course not. It would be deemed to be unreasonable and not narrowly tailored to the compelling interest involved.

////

1     The same reasoning applies to the California statutes at issue in this case. The state's
2 compelling interest of addressing the problem of "epidemic use of firearms in domestic
3 disputes," Brief in Support of Motion to Dismiss, page11, can be addressed by simply outlawing
4 the possession or carrying of firearms outside the home. If a restraining order is in effect, the
5 domestic partners should not ever be in the same home unless the order is being violated;
6 therefore, the outlawing of the possession and carrying of firearms in public, or outside the home,
7 will be a reasonable, narrowly tailored way of addressing the problem of firearm use in domestic
8 disputes. What is more important, the citizens of our Nation who, like Dr. Emerson in *U.S. v.*
9 *Emerson*, 270 F. 203 (5th Cir. 2001), merely agree to a mutual restraining order without much
10 consideration of the consequences, will not have to worry about unknowingly becoming a felon
11 for the rest of his life.
12     The Federal counterpart to the California statutes at issue makes it illegal for anyone who
13 has been convicted of a misdemeanor crime of domestic violence to possess a firearm. This
14 federal law was recently upheld by the U.S. Supreme Court in *U.S. v. Hayes*, 555 U.S. ___
15 (2009). This law, 18 U.S.C. §§ 922(g)(9) and 924(a)(2), effectively addresses the problem of
16 firearm use in domestic violence situations in a reasonable and constitutional manner. Unlike
17 Plaintiff, Mr. Hayes was convicted of a misdemeanor crime of domestic violence. Mr. Hayes
18 was afforded a right to jury trial which makes the ban on Mr. Hayes reasonable, narrowly tailored
19 and more importantly, constitutional. Plaintiff has not been afforded a right to jury trial prior to
20 the ban being imposed upon him. For this reason, and others, the California statutes at issue are
21 unconstitutional in light of the holdings of *Heller* and *Nordyke*.

## V. CONCLUSION

23     For the reasons set forth above, the State Defendant's motion to dismiss pursuant to
24 F.R.C.P. 12(b)(6) should be DENIED.
25 ////
26 ////

1   DATED this 20th day of July, 2009.                Respectfully submitted,

2

3                                                    *[signature]*
                                                     DWAYNE B. BURNS
4                                                    Plaintiff, *in propria persona*
                                                     P.O. Box 720157
5                                                    Redding, CA 96099-7157
                                                     dwaynebburns@charter.net
6                                                    Tel. (202) 241-3776

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## CERTIFICATE OF SERVICE

I hereby certify that on July 23, 2009, a true and correct copy of the foregoing document (including the accompanying exhibits, and attachments, if any) was served on all parties by telecopy transmittal, hand delivery, and/or first-class U.S. mail, postage prepaid, to the attorneys of record named below, in compliance with FED. R. CIV. P. 5.

EDMUND G. BROWN, JR.
Attorney General of California
JONATHAN K. RENNER
Senior Assistant Attorney General
GEORGE WATERS
Deputy Attorney General
1300 I Street, Suite 125
Sacramento, California 94244-2550

_____
Dwayne B. Burns, *In Pro Per*