1  **GARY BRICKWOOD, State Bar No. 94892**
   **RODNEY M. BLACO, State Bar. No. 212139**
2  BRICKWOOD LAW OFFICE
   1135 Pine Street, Suite 210
3  Redding, CA 96001
   (530) 245-1877
4  (530) 245-1879 (fax)

5  Attorneys for Defendants
   TOM BOSENKO, CITY OF REDDING,
6  PETER HANSEN, KEVIN KIMPLE,
   WILLIAM FORREST, WILL WILLIAMS
7  and REBECCA ZUFAL

8

9                    UNITED STATES DISTRICT COURT

10             FOR THE EASTERN DISTRICT OF CALIFORNIA

11  DWAYNE B. BURNS,                    Case No. 2:09-CV-00497-MCE-CMK

12          Burns,

13  vs.                                 **MEMORANDUM OF POINTS AND**
                                        **AUTHORITIES IN SUPPORT OF**
14  MICHAEL MUKASEY, in his official    **MOTION TO DISMISS PURSUANT TO**
    capacity as Attorney General of the **FRCP 12(b)6**
15  United State of America, et al.,
                                        **Date: September 10, 2009**
16          Defendants.                 **Time: 2:00 pm**
    _____/   **Courtroom: 7**
17

18  **1. Introduction.**

19       Plaintiff DWAYNE B. BURNS, proceeding pro se, has filed an First

20  Amended Complaint naming a number of federal, state and local

21  government defendants.   The defendants joining in this motion are

22  those best termed the "local defendants" which include the Shasta

23  County Sheriff TOM BOSENKO, the CITY OF REDDING, Redding Police Chief

24  PETER HANSEN and Redding police officers KEVIN KIMPLE, WILLIAM

25  FORREST, WILL WILLIAMS and REBECCA ZUFAL.

26       Plaintiff has ten causes of action in his complaint which can be

27  divided into two distinct parts. The first part (causes of action 1

28  and 2)are those related to plaintiff's constitutional challenge to

1   state and federal laws that prohibit the target of a domestic violence
2   restraining order from possessing a firearm.  The second part (causes
3   of action 3-10) are those claims related to Burns' arrest for spousal
4   battery and the events following his arrest, which include what Burns
5   claims was the wrongful seizure of his firearm.

6       This motion is brought under <u>Federal Rule of Civil Procedure</u>
7   12(b)(6).  Burns' claims  against the local defendants should be
8   dismissed for the following reasons:

9       a) The California Statute at issue here - which prohibits gun
10  possession by the target of a domestic violence restraining order -
11  has a virtually-identical federal counterpart.  The federal statue has
12  been upheld against Second Amendment challenge by every court (eight)
13  that has considered the issue. Burns fails to state a claim against
14  any of the local defendants because the statute he challenges here is
15  clearly consistent with the Second Amendment. <u>Fed.R.Civ.P.</u> Rule
16  12(b)(6).

17      b) Burns has asserted multiple duplicative causes of action and
18  those duplicative claims should be stricken.

19      c) Burns' claims under <u>Cal.Civ.Code</u> §52.1 fail to identify any
20  threats, intimidation or coercion involved with the alleged
21  interference with his rights. Burns has failed to provide the facts
22  necessary to support this cause of action.

23      The defendants Shasta County Sheriff TOM BOSENKO, the CITY OF
24  REDDING, Redding Police Chief PETER HANSEN and Redding police officers
25  KEVIN KIMPLE, WILLIAM FORREST, WILL WILLIAMS and REBECCA ZUFAL move
26  the Court, pursuant to <u>Federal Rule of Civil Procedure</u> 12(b)(6), for
27  an order dismissing the plaintiff's first, second, fourth, fifth,
28  sixth, seventh, eighth, ninth and tenth causes of action on the ground

1  that they fail to state a claims upon which relief can be granted or

2  are duplicative of one another.

3  **2. Legal Standard for Motion to Dismiss.**

4  A Rule 12(b)(6) motion tests the legal sufficiency of the claims

5  stated in the complaint.   The Court must decide whether the facts

6  alleged, if true, would entitle Burns to some form of legal remedy.

7  All well-pleaded material allegations of the complaint will be

8  accepted as true, as they must be on a motion to dismiss. <u>Wilbur v.</u>

9  <u>Locke</u>, 423 F.3d 1101, 1107 (9th Cir. 2005). A dismissal under Rule

10 12(b)(6) is proper where there is either a lack of a cognizable legal

11 theory or the absence of sufficient facts alleged under a cognizable

12 legal theory.   <u>Balistreri v. Pacifica Police Department</u> 901 F.2d 696,

13 699 (9th Cir. 1990).

14 **3. Background**

15 **A.   Allegations of the Complaint**

16 On May 21, 2007, Burns was arrested for alleged spousal battery.

17 Redding police officers conducted an alleged illegal search of his

18 home and seized a .380 calibur automatic pistol. (Burns' First Amended

19 Complaint, paragraph 24) On September 5, 2007, in a separate civil

20 proceeding, the Shasta County Superior Court entered a restraining

21 order prohibiting Burns from contacting or harassing his wife. (Burns'

22 First Amended Complaint, paragraph 26)

23 The criminal spousal battery charges against Burns were later

24 dismissed. When Burns then tired to retrieve his automatic pistol from

25 the police department but was refused because the restraining order

26 was still in effect and the restraining order prevents him from

27 possessing or carrying firearms. Plaintiff cannot get his gun back

28 until he gets a clearance from the Department of Justice. (Burns'

---

1  First Amended Complaint, paragraphs 27-29)

2      Burns seeks injunctive and declaratory relief against the

3  enforcement of state and federal law which forbids Mr. Burns from

4  possessing or carrying a firearm within his home or possessed land.

5  (Burns' First Amended Complaint, Prayer paragraph 1).

6      **B.   Burns' Domestic Violence Restraining Order**

7      Burns' domestic violence restraining order is attached to the

8  First Amended Complaint as Exhibit A.  The court may consider material

9  attached to the complaint without converting a motion to dismiss into

10  a motion for summary judgment. <u>U.S. v. Ritchie</u>, 342 F.3d 903, 908 (9th

11  Cir. 2003).  The restraining order shows that Burns was ordered not

12  to do the following to his wife:

> –   Harass, attack, strike, threaten, assault (sexually or otherwise, hit, follow, stalk, molest, destroy personal property, disturb the peace, keep under surveillance, or block movements;
> –   Contact (either directly or indirectly), telephone, or send messages or mail or e-mail.
> –   Take any action, directly or through others, to get the addresses or locations of any protected persons.

(Burns' First Amended Complaint, Exhibit A paragraph 4). Burns was

further ordered to stay at least 100 yards away from his wife and to

divest himself of firearms. (Burns' First Amended Complaint, Exhibit

A paragraphs 7 and 28). Burns cannot own, have, possess, buy or try

to buy, receive or try to receive, or otherwise get guns, firearms,

and/or ammunition while the order is in effect. (Burns' First Amended

Complaint, Exhibit A paragraph 28). The order remains in effect for

three years. (Burns' First Amended Complaint, Exhibit A paragraph 4).

       **C.   Summary of California and Federal statutes prohibiting the**
              **possession of firearms by targets of domestic violence**
              **restraining orders.**

       In 1993 California consolidated the substantive provisions of

several statutes into the Domestic Violence Protection Act (Act). <u>Cal. Family Code</u> §6200. "Domestic violence" is defined in part as abuse against a "spouse or former spouse" <u>Cal. Family Code</u> §6211(a).

The Act provides for protective orders:

> enjoining a party from molesting, attacking, striking, stalking, threatening, sexually assaulting, battering, harassing, telephoning, including, but not limited to, annoying telephone calls as described in Section 653m of the Penal Code, destroying personal property, contacting, either directly or indirectly, by mail or otherwise, coming within a specified distance of, or disturbing the peace of the other party, and in the discretion of the court, on a showing of good cause, of other named family or household members. <u>Cal. Family Code</u> §6320.

Protective orders are of limited duration and can be entered under three circumstances. First, any law enforcement officer can apply for an ex parte emergency protective order when he asserts reasonable grounds that a person is in immediate danger of domestic violence. <u>Cal. Family Code</u> §6250(a). Such an order expires within a week of issuance. <u>Cal. Family Code</u> §6256. Second, the victim of domestic violence can apply for an ex parte protective order. <u>Cal. Family Code</u> §6320. Such an order, which (when served) also operates as an order to show cause, expires in either twenty or twenty-five days. <u>Cal. Family Code</u> §§6327, 242. Third, after notice and hearing, a court can enter an order for up to five years, subject to modification by motion of either party or by written stipulation. <u>Cal. Family Code</u> §§6340, 6345. Such an order is appealable. See <u>Quintana v. Guijosa</u>, 107 Cal.App.4th 1077, 1079-1080 (2003); <u>Rutter</u>, *Cal.Prac.Guide:Family Law* (2009)5:534.1.

All orders described in the preceding paragraph must include a restriction that the target "not own, possess, purchase, or receive a firearm while [the] protective order is in effect." <u>Cal. Family Code</u> §6389(a). The firearm restriction is mandatory; a court has no

1    authority to modify or waive it. <u>Ritchie v. Conrad</u>, 115 Cal.App.4th

2    1275, 1293-1294 (2004). Violation of the firearm restriction is

3    punishable as a misdemeanor. <u>Cal.Penal Code</u> §12021(g).

4         The California restriction on gun possession works hand in glove

5    with federal law. Federal law prohibits possession of a firearm by

6    anyone who is the subject of a domestic violence restraining order,

7    provided that the order (a) was entered after a noticed hearing and

8    (b) either includes a finding that the target represents a credible

9    threat to an intimate partner or explicitly prohibits the use of

10   physical force against an intimate partner. 18 <u>U.S.C.</u> §922(g)(8)

11        18 <u>U.S.C.</u> §922(g)(8) provides:

12        (g)  It shall be unlawful for any person --
                      * * * * *
13        (8)  who is subject to a court order that –
          (A)  was issued after a hearing of which such person received
14             actual notice, and at which such person had an opportunity
               to participate;
15        (B)  restrains such person from harassing, stalking, or
               threatening an intimate partner of such person or child of
16             such intimate partner or person, or engaging in other
               conduct that would place an intimate partner in reasonable
17             fear of bodily injury to the partner or child; and
          (C)  (i)includes a finding that such person represents a
18             credible threat to the physical safety of such intimate
               partner or child; or
19             (ii) by its terms explicitly prohibits the use, attempted
               use, or threatened use, or threatened use of physical force
20             against such intimate partner or child that would
               reasonably be expected to cause bodily injury;
21                    * * * * *
               to ship or transport in interstate or foreign commerce, or
22             possess in or affecting commerce, any firearm or
               ammunition; or to receive any firearm or ammunition which
23             has been shipped or transported in interstate or foreign
               commerce.

24

25        The restraining order against Burns was entered after a noticed

     hearing. (Burns' First Amended Complaint, Exhibit A paragraph 18). It
26
     includes, as it must, a prohibition on the possession of firearms
27
     during the pendency of the order. (Burns' First Amended Complaint,
28
     Exhibit A paragraph 28). It has a duration of three years. (Burns'

First Amended Complaint, Exhibit A paragraph 4). The protective order triggers the parallel federal firearm restriction because it (a) was entered after notice and (b) explicitly prohibits the use of physical force against an intimate partner. (Burns' First Amended Complaint, Exhibit A paragraph 6); 18 U.S.C. 922(g)(8).

**4. ARGUMENT**

**A.** **The causes of action related to the constitutionality of California Statutes prohibiting the possession of firearms by the targets of domestic violence restraining orders should be dismissed.**

Burns claims that the state and federal laws prohibiting his possession of a firearm are unconstitutional and further alleges that the individual officers involved in the enforcement of these allegedly unconstitutional laws, specifically those involved in the taking, storing and refusal to return the firearm, violated his constitutional rights.

**I.** **California Statutes prohibiting the possession of firearms by the targets of domestic violence restraining orders are consistent with the Second Amendment.**

In the District of Columbia v. Heller, ___ U.S. ___, 128 S.Ct 2783(2008), the Supreme Court held that the District of Columbia's total ban on the possession of handguns violated the Second Amendment, which states "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." Id. at 2821-22. In doing so, the court also concluded that the Second Amendment protects an individual right to possess certain weapons for self-defense. Id. at 2797. The Court

did not reach a related issue of whether the Second Amendment is incorporated by the Fourteenth Amendment and therefore applicable to the States. Id. at 2813 n. 23. Nor did the court decide what standard of review would apply to Second Amendment challenges. Id. at 2817 n. 7.

    In April of this year a panel of the Ninth Circuit concluded that the Second Amendment is incorporated by the Fourteenth Amendment and therefore does apply to the States. Nordyke v. King, 563 F.3d 439, 457 (9th Cir. 2009).  The Second Circuit (Maloney v. Cuomo, 554 F.3d 56, 58 (2nd Cir. 2009)) and the Seventh Circuit (National Rifle Ass'n of America, Inc. v. City fo Chicago, ___F.3d.___, 2009 WL 1515443, *1(7th Cir. 2009)) have come to the opposite conclusion. This memorandum will assume, as it must, that the Second Amendment is applicable to the States. (A judge of the Ninth Circuit has called for a vote to determine whether Nordyke should be heard en banc. Nordyke v. King, 9th Cir. #07-15763, Docket No. 87 (May 18, 2009).

    Since Heller was decided in June 2008, no case has considered the constitutionality of the gun prohibition in the California domestic violence protective order statute (Cal. Family Code §6389) that Burns challenges here. But seven federal district courts have examined the parallel federal protective order statute (18 U.S.C. §922(g)(8)), and all seven have held that the federal statute does not violate the Second Amendment. See U.S. v. Knight, 574 F. Supp.2d 224, 226 (D. Maine 2008); United States v. Erwin, 2008 WL 4534058, *3 (N.D.N.Y. 2008); U.S. v. Lippman, 2008 WL 4661514, *3 (D.N.D. 2008); U.S. v. Luedtke, 589 F.Supp.2d 1018, 1025 (E.D. Wisc. 2008); U.S. v. Montalvo, 2009 WL 667229, *3 (W.D.N.Y. 2009); Livingston v. Francis, 2009 WL 818133, *5(E.D. Mich. 2009); U.S. v. Grote, 2009 WL 853974, *7 (E.D.

1   Wash. 2009).   While none of these cases determined the standard of
2   review to be applied in Second Amendment cases, all agreed that the
3   federal protective order statute would pass muster *even if* strict
4   scrutiny were applied. See, e.g. <u>Luedtke</u>, 589 F.Supp.2d at 1025;
5   <u>Grote</u>, 2009 WL 853974, *6; <u>Knight</u>, 574 F.Supp.2d at 226; <u>Erwin</u>, 2008
6   WL 4534058, *2.

7       The Fifth Circuit also has upheld the federal firearm ban against
8   such a Second Amendment challenge.   In 2001 the Fifth Circuit held
9   that the Second Amendment protects an individual's right to bear arms.
10  (This is the same conclusion that the Supreme Court reached seven
11  years later in <u>Heller</u>).   Nonetheless, the Fifth Circuit upheld the
12  validity of the federal protective order statute (18 <u>U.S.C.</u>
13  §922(g)(8)) against a Second Amendment challenge, stating "Although,
14  as we have held, the Second Amendment *does* protect individual rights,
15  that does not mean that those rights may never be made subject to any
16  limited, narrowly tailored specific exceptions or restrictions for
17  particular cases that are reasonable and not inconsistent with the
18  right of Americans generally to individually keep and bear their
19  private arms as historically understood in this country." <u>U.S. v.</u>
20  <u>Emerson</u>, 270 F.3d 203, 261 (5th Cir. 2001).

21      The cases upholding the federal protective order statue are
22  persuasive authority that the parallel California protective order
23  statute is also constitutional.   Both statutes prohibit the possession
24  of firearms by the target of a domestic violence restraining order
25  when the order is entered (a) after noticed hearing and (b) explicitly
26  prohibits the use or attempted use of physical force against an
27  intimate partner. *Compare* <u>Cal. Family Code</u> §6320(a) *with* 18 <u>U.S.C.</u>
28  §922(g)(8).

1    The Supreme Court stressed in <u>Heller</u> that "few laws in the
2  history of our Nation have come close to the severe restriction of the
3  [District of Columbia] handgun ban." <u>Heller</u>, 128 S.Ct at 2818.  Thus,
4  once <u>Heller</u> decided that the Second Amendment protects an individual's
5  right to bear firearms, it was a straightforward conclusion that the
6  District of Columbia law was unconstitutional. But as the Ninth
7  Circuit has noted, "'not every law which makes a right more difficult
8  to exercise is, *ipso facto*, an infringement of that right.'" <u>Nordyke</u>,
9  563 F.3d at 459 (quoting <u>Planned Parenthood of Se. Pa. v. Casey</u>, 505
10 U.S. 833, 873 (1992)). <u>Heller</u> described as "presumptively lawful" many
11 restrictions on the possession of firearms, such as "longstanding
12 prohibitions on the possession of firearms by felons and mentally ill,
13 or laws forbidding the carrying of firearms in sensitive places such
14 as schools and government buildings, or laws imposing conditions and
15 qualifications on the commercial sale of arms." <u>Heller</u>, 128 S.Ct at
16 2816-17. <u>Heller</u> went on to note that this list "does not purport to
17 be exhaustive." <u>Id.</u> at 2817 n. 26. The questions posed by the present
18 case is whether California's ban on the possession of firearms by the
19 targets of domestic violence restraining orders is similar enough to
20 the traditional bans on firearm possession by felons and the mentally
21 ill so as to be "presumptively lawful." See <u>Luedtke</u>, 589F.Supp.2d at
22 1021 (construing 18 <u>U.S.C.</u> §922(g)(8)).

23   Laws barring felons and the mentally ill from possessing firearms
24 are based on a societal determination that such persons pose a
25 particular danger. See, e.g., <u>Barrett. v. United States</u>, 423 U.S. 212,
26 218-21, (1976); <u>Huddleston v. United States</u>, 415 U.S. 814, 824-25,
27 (1974)). Such prohibitions have deep roots in our history:

28       In the classical republican political philosophy ascendant at
         the founding, the concept of a right to arms was tied to that of

the "virtuous citizen." Consistent with this emphasis on the virtuous citizen was that the right to arms did not preclude laws disarming the "unvirtuous"(i.e., criminals) or those who, like children or the mentally unbalanced, were deemed "incapable of virtue." Thus, felons, children and the insane were excluded from the right to bear arms. Glenn Harlan Reynolds, *A Critical Guide to the Second Amendment*, 62 Tenn.L.Rev. 461, 480(1995)(citing Don B. Kates Jr., *1022 *The Second Amendment: A Dialogue*, 49 Law & Contemp. Probs. 143, 146 (1986)).

Luedtke, 589 F.Supp.2d at 1021.

The state and federal bans on the possession of firearms by the targets of domestic violence restraining orders carry on this tradition. The federal statute, known as the "Lautenberg Amendment," was adopted in 1996. U.S. v. Carr, 513 F.3d 1164, 1168 (9th Cir.2008). At that time, congressional hearings showed that "nearly 65 percent of all murder victims known to have been killed by intimates were shot to death[.]" 142 Cong.Rec. S10379 (statement by Sen. Murray), quoted in Luedtke, 589 F.Supp.2d at 1022. The Lautenberg Amendment was aimed at closing a loophole that contributed to a reported 150,000 instances of household violence involving firearms each year. Id. As Senator Lautenberg described the loophole:

Under current Federal law, it is illegal for persons convicted of felonies to possess firearms, yet, many people who engage in serious spousal or child abuse ultimately are not charged with or convicted of felonies. At the end of the day, due to outdated laws or thinking, perhaps after a plea bargain, they are, at most, convicted of misdemeanor. In fact, most of those who commit family violence are never even prosecuted.

142 Cong. Rec. S10377-01, quoted in Luedtke, 589 F.Supp.2d at 1022 (internal citation omitted).

The California statute, like the federal statute, is narrowly drawn to address the problem of epidemic use of firearms in domestic disputes. See U.S. v. Emerson, 270 F.3d 203, 261-262 (5th Cir. 2001)(construing 18 U.S.C. §922(g)(8)). The statutes are not an out-right ban on firearms possession; they last only as long as a noticed

restraining order remains in effect. See <u>Knight</u>, 574 F.Supp.2d at 226. In this aspect the statutes are much narrower than the ban on the possession of firearms by felons, which is a lifetime ban. See 18 <u>U.S.C.</u> §922(g)(1), <u>Cal.Penal Code</u> §12021(a)(1). The statutes require an actual hearing with prior notice and an opportunity to participate. See <u>Luedtke</u>, 589 F. Supp.2d at 1023. "These are narrowly crafted limits on when a citizen may possess a firearm and well tuned to the legitimate concerns of avoiding serious physical injury to a partner or child." <u>Knight</u>, 574 F.Supp.2d at 226 (construing 18 <u>U.S.C.</u> §922(g)(8)).

The Second Amendment is "subject to certain well-recognized exceptions, arising from the necessities of the case." <u>Robertson v. Baldwin</u>, 165 U.S. 275, 281 (1897). Nothing in <u>Heller</u> suggests that Congress and the California Legislature cannot - based on experience and study - close loopholes, "thus adding to the list of dangerous individuals historically barred from firearm possession." <u>Luedtke</u>, 589 F.Supp.2d at 1023. The ban on firearm possession by the targets of domestic violence restraining orders is the type of regulation traditionally permitted in this nation and is presumptively valid.

Therefore, Burns' first and second causes of action challenging the constitutionality of the ban on firearm possession by the targets of domestic violence restraining orders should be dismissed.

### II. __Burns' claims against defendants Peter Hansen and Kevin Kimple for enforcing the laws prohibiting Burns' possession of a firearm as a target of a domestic violence restraining order should be dismissed.__

As discussed above both federal law and the California Domestic Violence Protection Act prevent a person who is a target of a domestic

---

violence restraining order from possessing a firearm. <u>Cal. Family Code</u> §6389(a) and 18 <u>U.S.C.</u> §922(g)(8).

Therefore, upon the Court's determination that the statutes prohibiting Burns' possession of a firearm, <u>Cal. Family Code</u> §6389(a) and 18 <u>U.S.C.</u> §922(g)(8) are constitutional, Burns' sixth and ninth causes of action which are based upon the contention that the defendants were enforcing unconstitutional laws should be dismissed.

### III. Defendant Kevin Kimple is entitled to qualified immunity and therefore the fourth, ninth and tenth causes of action should be dismissed.

The fourth, ninth and tenth causes of action allege that defendant KIMPLE unlawfully seized Burns' firearm causing Burns to be dispossessed of his firearm without compensation. (Burns' First Amended Complaint, paragraphs 44, 65 and 68).

Police officers are entitled to ""qualified immunity"" for their actions within the scope of their employment ""insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."" <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 815 (1982). The defense of qualified immunity, protects §§1983 defendants from liability for civil damages, unless such conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known. <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987).

The initial question in determining whether an officer is entitled to qualified immunity is whether, taken in the light most favorable to the party asserting injury, the facts alleged show that the defendant's conduct violated a constitutional right. *Saucier v.*

*Katz,* 533 U.S. 194, 201, (2001); <u>Billington v. Smith</u>, 292 F.3d 1177, 1183 (9th Cir.2002). If not, ""there is no necessity for further inquiries concerning qualified immunity."" <u>Saucier</u>, 533 U.S. at 201. If, however, a violation could be established under the facts presented, the next step is to determine whether the right was ""clearly established."" <u>Id.</u>

""The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."" <u>Id.</u> at 202. ""The question is what the officer reasonably understood his powers and responsibilities to be, when he acted, under clearly established standards."" <u>Id.</u> at 208. Burns bears the burden of establishing the rights violated were ""clearly established."" <u>Houghton v. South</u>, 965, F.2d 1532, 1534 (9th Cir.1992).

There was a domestic violence restraining order against Burns entered after a noticed hearing. (Burns' First Amended Complaint, Exhibit A paragraph 18). The restraining order included, as it must, a prohibition on the possession of firearms during the pendency of the order. (Burns' First Amended Complaint, Exhibit A paragraph 28). The restraining order has a duration of three years. (Burns' First Amended Complaint, Exhibit A paragraph 4). The protective order triggered the parallel federal firearm restriction because it (a) was entered after notice and (b) explicitly prohibits the use of physical force against an intimate partner. (Burns' First Amended Complaint, Exhibit A paragraph 6); 18 <u>U.S.C.</u> 922(g)(8).

Defendant Kimple's acts as alleged in the fourth, ninth and tenth

causes of action were reasonable given the fact that Burns was subject to a valid domestic violence restraining order which required the prohibition of his possession of a firearm as required by established state and federal laws. Therefore, these causes of action should be dismissed.

**B.   The fourth cause of action should be dismissed**
**because the Fifth Amendment does not apply to search**
**and seizure without compensation.**

Burns' fourth cause of action alleges that defendant KIMPLE seized his firearm without compensation in violation of the Takings Clause of the Fifth Amendment. (Burns' First Amended Complaint, paragraph 44).  The Taking Clause of the Fifth Amendment does not apply to search and seizure without compensation.

In this matter the taking of Burns' personal property would trigger a claim under the Fourth Amendment's Search and Seizure provisions, and not under the Fifth Amendment's Taking Clause.  The Takings Clause limits the government's ability to confiscate property without paying for it, and is designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole. Vance v. Barrett, 345 F.3d 1083, 1089 (9th Cir.2003) (internal quotations and citation omitted).

Burns' personal property, here his firearm, was not confiscated by defendants for a public purpose and his Takings claim fails as a matter of law. See Kelo v. City of New London, Connecticut, 545 U.S.

469, 477–80 (2005).

As the Fifth Amendment does not apply in this matter Burns' fourth cause of action against defendant KIMPLE should be dismissed.

**C.**  **The seventh, eighth and tenth causes of action should be dismissed as Burns has failed to state a valid claim for relief against defendants for violations of California Civil Code Section 52.1**

Burns' seventh, eight and tenth causes of action are based on claims that he was deprived of rights and seeks protection under California Civil Code Section 52.1. Burns has failed to identify what injuries he allegedly sustained, and Burns has not alleged any of the facts necessary to support these causes of action as he does not allege threats, intimidation or coercion involved with any alleged interference with Burns' rights.

To prevail on a claim under <u>California Civil Code</u> section 52.1, Burns must show that defendants interfered or attempted to interfere by threats, intimidation, or coercion with his statutory or constitutional rights.

Section 52.1 does not provide any substantive protections; instead it enables individuals to sue for violations of constitutional or statutory rights set forth elsewhere when those violations have occurred by threats, intimidation or coercion. <u>Cal.Civ.Code</u>, §52.1, subd.(j); <u>Reynolds v. County of San Diego</u>, (9th Cir. 1996) 84 F.3d 1162, 1170.

Thus section 52.1 acts as a mechanism for a plaintiff to assert

an action against a defendant who interferes with that plaintiffs enjoyment of a right secured by state or federal law.  Burns has alleged that his right to possess a firearm was interfered with by defendants.   As discussed in detail above, Burns is subject to a domestic violence restraining order which requires on its' face and under both state and federal law that Burns not possess a firearm. Therefore, as Burns is prohibited from possessing a firearm there has been no interference with a right secured by state or federal law.

The Legislature enacted Civil Code section 52.1 to stem a tide of hate crimes. <u>Jones v. Kmart</u> 17 Cal.4th 329, 338 (1998). Section 52.1 **requires** that an attempted or completed act of interference with a legal right be accompanied by a form of coercion. <u>Id.</u> at 334. (Emphasis added) To obtain relief under Civil Code section 52.1, Burns need not allege the defendant acted with discriminatory animus or intent; a defendant is liable if he or she interfered with the plaintiff's constitutional rights by the requisite threats, intimidation, or coercion.  <u>Austin B. v. Escondido Union School Dist.</u> 149 Cal.App.4th 860, 882 (2007); <u>Gonzalez v. County of Los Angeles</u>, 2008 WL 2951272 (C.D. Cal) at *4.   Section 52.1 does not extend to ordinary tort actions because its provisions are limited to threats, intimidation, or coercion that interferes with a constitutional or statutory right. <u>Venegas v. County of Los Angeles</u>, (<u>VenegasII</u>) 32 Cal.4th 820, 843 (2004).  Further, 52.1 provides remedies for certain misconduct that interferes with federal or state laws, if accompanied by threats, intimidation, or coercion. <u>Jones</u>, 17 Cal.4th at 338. Burns has alleged no such misconduct here nor the required threats,

intimidation, or coercion.

The word "interferes" as used in the Bane Act means "violates". The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., "threats, intimidation or coercion"), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law. <u>Austin B.</u>, 149 Cal.App.4th at 883 (internal citations omitted); <u>Jones</u>, 17 Cal.4th at 334.

Here, there are no allegations presented that the actions of defendants prevented Burns to do something he had the legal right to do (as discussed above Burns' was legally restricted from owning or possessing a firearm under both state and federal laws) and there are no allegations against defendants that could be construed as the required acts of threats, violence or intimidation that actually caused a loss of any of Burns' Constitutional or statutory rights.

As Burns has failed to state a claim under California Civil Code section 52.1, the seventh, eighth and tenth causes of action should be dismissed.

**D.   The tenth cause of action should be dismissed because Article I, Section 19 of the California Constitution does not apply to search and seizure.**

Burns' tenth cause of action alleges that defendant KIMPLE seized Burns' firearm without compensation in violation of Article I, Section 19 of the California Constitution. (Burns' First Amended Complaint,

paragraph 68).   Article I, Section 19 does not apply to search and seizure without compensation but instead relates to government acts of eminent domain and the prohibition on acquisition of private property for conveyance to a private person.

In this matter the taking of Burns' personal property would trigger a claim under the search and seizure provisions Article I, Section 13 of the California Constitution, which Burns asserts in his eighth cause of action, and not a claim under Article I, Section 19 as asserted by Burns in his tenth cause of action.

Article I, Section 19 relates to eminent domain and limits the government's ability to take or damage private property for public use.  Burns' personal property, here his firearm, was not confiscated by defendants through eminent domain or for a public purpose, instead as alleged by Burns in his complaint the firearm was seized during a search subsequent to his arrest for spousal battery in May 2007. (Burns' First Amended Complaint, paragraphs 24 and 25).  Burns' tenth cause of action fails as a matter of law because no facts have been alleged to support any allegation that defendant KIMPLE violated Article I, section 19 of the California Constitution.

As Article I, section 19 does not apply in this matter Burns' tenth cause of action against Defendant KIMPLE should be dismissed.

**E. Duplicative causes of action should be struck.**

    **I.   Burns' second, sixth and ninth causes of action should further be dismissed as they are duplicative of the first.**

Burns' second, sixth and ninth causes of action simply repeat the claims he alleges in his first cause of action that defendants enforced laws which violated his rights under the Second Amendment by seizing and refusing to return his firearm.  Consequently, the second, sixth and ninth causes of action should be dismissed as they are duplicative of the first.

## II.   Burns' fourth and fifth causes of action should further be dismissed as they are duplicative of the third.

Burns' fourth and fifth causes of action simply repeat the claims he asserts in his third cause of action that he was subjected to an unreasonable search and seizure under the Fourth Amendment. Consequently, the fourth and fifth causes of action should be dismissed as they are duplicative of the third.

## III. Burns' eighth cause of action should further be dismissed as it is duplicative of the seventh.

Burns' eighth cause of action simply repeats the claims he has asserted in his seventh cause of action that defendant's violated his constitutional rights under the California Constitution and in violation of California Civil Code §52.1 by conducting a unreasonable search.  Consequently, the eighth cause of action should be dismissed as it is duplicative of the seventh.

## F.   Shasta County Sheriff TOM BOSENKO should be dismissed as a defendant.

Defendant Shasta County Sheriff TOM BOSENKO is only identified as a party in First Amended Complaint. (Burns' First Amended

Complaint, paragraph 17).   The First Amended Complaint contains no allegations of acts by defendant BOSENKO.   Only the first and second causes of action include BOSENKO as they are alleged 'against all defendants'.   Burns has made no allegations that BOSENKO was involved in the seizure of Burns' firearm or that BOSENKO was involved in continued retention and storage of the firearm.   Burns has alleged no facts and identified no actions by defendant BOSENKO which could support any cause of action against him.

As there are absolutely no allegations against defendant BOSENKO which support any cause of action, BOSENKO should be dismissed as a defendant.

**5.  Conclusion.**

Based on the foregoing, it is respectfully submitted that Burns' first, second, fourth, fifth, sixth, seventh, eighth, ninth and tenth causes of action fail to state any cause of action against defendants or are duplicative of one another, and defendants' request that their motion to dismiss each of these causes of action be granted.

DATED: July 30, 2009.                BRICKWOOD LAW OFFICE


                                     _/s/_____
                                     RODNEY M. BLACO, Attorney for
                                     TOM BOSENKO, CITY OF REDDING,
                                     PETER HANSEN, KEVIN KIMPLE,
                                     WILLIAM FORREST, WILL WILLIAMS
                                     and REBECCA ZUFAL

1

**PROOF OF SERVICE**

2

3      I am a citizen of the United States, over the age of 18 years, and not a party to the within action.  I am employed in Shasta County, California, by BRICKWOOD LAW OFFICE, at their offices located at 1135 Pine Street, Suite 210, Redding, California, 96001.  On this date, I served the following document(s): **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

4

5

6      ✓  by placing a true copy thereof for collection and mailing, in the course of ordinary business practice, with other correspondence of Brickwood Law Office at 1135 Pine Street, Suite 210, Redding, Shasta County, California, enclosed in a sealed envelope with postage thereon fully prepaid, addressed as set forth below.  I am familiar with the practice of Brickwood Law Office for collection and processing of correspondence for mailing with the United States Postal Service.  It is the practice that correspondence is deposited with the United States Postal Service the same day it is submitted for mailing.

7

8

9

10

11    _____  by placing a true copy thereof in a box or other facility regularly maintained by _____ U.P.S. / _____ Federal Express, in a sealed envelope or package designated by _____ U.P.S. / _____ Federal Express, with delivery fees paid or provided for, addressed as set forth below.

12

13    _____  by personally delivering a true copy thereof to the person and at the address set forth below.

14    _____  BY FAX (Telecopier) – I personally sent to the addressee's telecopier number a true copy of the above described document(s).  I verified transmission and, thereafter, I placed a true copy in a sealed envelope addressed and mailed as indicated above.

15

16

Dwayne B. Burns

17  P.O. Box 720157

Redding, CA 96099

18

19      I declare under penalty of perjury of the laws of the State of California that the foregoing is true and correct.  Executed at Redding, California on July 30, 2009.

20

21

22                                    _/s/_____

Cyndi L. Fitzgerald

23

24

25

26

27

28