1 | Dwayne B. Burns
P.O. Box 720157
2 | Redding, CA 96099-7157
Telephone: (530) 440-0682
3 | dwaynebburns@charter.net

4 | Plaintiff, *IN PRO PER*

**FILED**

AUG 2 8 2009

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

5

6

7

8 | IN THE UNITED STATES DISTRICT COURT FOR

9 | THE EASTERN DISTRICT OF CALIFORNIA

10 | SACRAMENTO DIVISION

11

12 | **DWAYNE B. BURNS,**                  ) 2:09-CV-0497 MCE CMK
                                        )
13 |               **Plaintiff,**          ) **PLAINTIFF'S SUPPLEMENTAL**
                                        ) **POINTS AND AUTHORITIES IN**
14 |         **vs.**                       ) **OPPOSITION TO STATE**
                                        ) **DEFENDANTS' MOTION TO DISMISS**
15 | **MICHAEL MUKASEY, in his official**   )
     **capacity as Attorney General of the United** ) Date:        October 29, 2009
16 | **States of America,** *et al.*,        ) Time:        10:00 a.m.
                                        ) Courtroom:   304, 3rd Floor
17 |               **Defendants.**          ) Judge:       Hon. Craig M. Kellison
                                        ) Trial Date:  None Assigned
18 | _____ ) Action Filed: February 20, 2009

19

20 | ## PROCEDURAL HISTORY

21 | On June 26, 2009, Defendants Edmund G. Brown, Jr., Attorney General of the State of

22 | California, and the Superior Court of California, Shasta County (the "State Defendants"), filed

23 | the pending Motion to Dismiss For Failure to State a Claim pursuant to Rule 12(b)(6) of the

24 | Federal Rules of Civil Procedure. (Dkt. No. 13.) Subsequent to the motion's filing, the claims

25 | against the Superior Court of California, Shasta County, were dismissed pursuant to stipulation.

26 | (Dkt. No. 21.)

1    A hearing on the State Defendants' Motion to Dismiss was held on August 6, 2009, at

2    10:00 a.m., in Courtroom 304 of the United States District Court in Redding, California.  At said

3    time and place, the Court ordered that Plaintiff file Supplemental Points and Authorities on the

4    issues involved no later than August 28, 2009, and that the Reply thereto be filed by Defendant

5    no later than September 11, 2009.  Plaintiff hereby requests that further oral argument be

6    scheduled for October 29, 2009, at 10:00 a.m., in Courtroom 304 in Redding.

7
        **SUPPLEMENTAL POINTS AND AUTHORITIES IN OPPOSITION TO**
8              **STATE DEFENDANTS' MOTION TO DISMISS**

9    **I.    A SELECTIVE INCORPORATION ANALYSIS UNDER THE FOURTEENTH
            AMENDMENT'S DUE PROCESS CLAUSE IS REQUIRED FOR A PROPER**
10          **DETERMINATION OF THE ISSUES IN THIS CASE**

11          Before a proper resolution of the issues of this case can be made, the proper question to

12   be decided must be identified.  Fourteenth Amendment jurisprudence is complex and contains

13   many subtle distinctions and nuances.  The Due Process Clause itself is more complex than most

14   lawyers realize.  There is a procedural, as well as a substantive aspect to it.

15          As a preliminary matter, and in light of the Seventh Circuit's decision that it is barred by

16   "direct" precedent from considering selective incorporation of the Second Amendment,[1] it is

17   necessary to examine whether the Supreme Court has ever ruled upon that issue.  The answer is

18   no, both as a matter of logic and as a matter of law.[2]  Before *Heller* there could be no case or

19   controversy over selective incorporation, for if the amendment only guaranteed a right of the

20   states, it would be self contradictory to incorporate it into the Fourteenth Amendment.[3]

21   ////

22

23
     [1] *See NRA v. Chicago,* 2009 U.S. App. LEXIS 11721, *2 (June 2, 2009), following *Maloney v.*
24   *Cuomo,* 554 F.3d 56, 58-59 (2009).

25          [2] 128 S. Ct. at 2813, n.23 (courts must apply current Fourteenth Amendment jurisprudence).

26          [3] See also Don B. Kates, Jr., *Handgun Prohibition and the Original Meaning of the Second*
     *Amendment,* 82 MICH. L. REV. 204, 257 (1983) (hereafter, "Kates, *Second Amendment* ").

### A.    SUPREME COURT PRECEDENT DOES NOT FORECLOSE INCORPORATION OF THE SECOND AMENDMENT BY THE DUE PROCESS CLAUSE OF THE FOURTEENTH

Supreme Court decisions from 1876, 1886, and 1894 contain statements to the effect that the Second Amendment does not apply to the States. *See United States v. Cruikshank*, 92 U.S. 542 (1876); *Presser v. Illinois*, 116 U.S. 252 (1886); *Miller v. Texas*, 153 U.S. 535 (1894). But those cases were decided **before** the advent of the incorporation doctrine, before the Court even hinted that fundamental provisions of the Bill of Rights are incorporated through the Fourteenth Amendment. *See Chicago, Burlington & Quincy R.R. Co. v. Chicago*, 166 U.S. 226 (1897). Accordingly, none of those cases addressed whether the Second Amendment applies against the states *through* the Due Process Clause of the Fourteenth Amendment. They addressed only whether the Second Amendment applies *directly* against the states – and that is not the question presented here.

As explained in *Heller*, 128 S. Ct. at 2812-13 & n.23, *Cruikshank*, "in the course of vacating the convictions of members of a white mob for depriving Blacks of their right to keep and bear arms, held that the Second Amendment *does not by its own force* apply to anyone other than the Federal Government." 128 S. Ct. at 2812, *citing* 92 U.S. at 553 (emphasis added). The "limited discussion of the Second Amendment in *Cruikshank*," *id.* at 2813, simply did not address the possibility of incorporation of the right to keep and bear arms in the Fourteenth Amendment's Due Process Clause. Indeed, in discussing the application of the Second Amendment, the *Cruikshank* Court took care to note that the "[S]econd [A]mendment declares that it shall not be infringed; but this, *as has been seen*, means no more than it shall not be infringed by Congress." 92 U.S. at 553 (emphasis added). The " as has been seen" language refers to the Court's preceding discussion of the of the First Amendment: "The First Amendment to the Constitution . . . like other amendments *proposed and adopted at the same time, was not intended to limit the powers of the State governments* in respect to their own citizens, but to operate upon the National government alone." *Id.* at 552 (emphasis added). At this point the

1 | *Cruikshank* opinion cites *Barron v. Mayor of Baltimore*, 32 U.S. (7 Pet.) 243 (1833).

2 |     In stark contrast, the Fourteenth Amendment (1) was *not* "adopted at the same time" as

3 | the First and Second Amendments, and (2) was quite explicitly meant to "limit the powers of the

4 | state governments." Thus, *Cruikshank's* discussion of the Second Amendment simply reaffirmed

5 | the basic principle of *Barron* that the Bill of Rights originally, of its own terms, applied *directly*

6 | only to the Federal Government.

7 |     Indeed, the *Cruikshank* opinion did not take up the Fourteenth Amendment claim until

8 | *after* it had disposed of the Second Amendment claim – and then it rested its decision on a

9 | principle that is entirely consistent with the incorporation jurisprudence that the Court has

10 | subsequently developed.  In responding to the contention that the private defendants had

11 | somehow violated due process by engaging in " a conspiracy to falsely imprison or murder

12 | citizens of the United States," the Court invoked the now familiar maxim that the Fourteenth

13 | Amendment addressed only state action and therefore "adds nothing to the rights of one citizen

14 | against another." 92 U.S. at 553-54.  Instead, it "furnishes an additional guaranty against any

15 | encroachment *by the States upon the fundamental rights which belong to every citizen* as a

16 | member of society." *Id.* (emphasis added).

17 |     The same analysis applies to *Presser* and *Miller*, both of which relied exclusively on

18 | *Cruikshank*.  Like *Cruikshank*, neither opinion engaged in an incorporation analysis.  Rather,

19 | both opinions merely reaffirmed *Barron's* holding that the Bill of Rights does not ***directly*** apply

20 | against the states. *See Presser*, 116 U.S. at 264-66; *Miller*, 153 U.S. at 538.  In *Presser*, the

21 | parties did not even raise the incorporation issue.  And in *Miller* the Court explicitly refused to

22 | address the question of incorporation through the Privileges and Immunities Clause because the

23 | plaintiff had waived that argument "if the Fourteenth Amendment limited the power of the states

24 | as to such rights . . . we think it was fatal to this claim that it was not set up in the trial court."

25 | 153 U.S. at 538. Because the *Miller* Court declined to address the incorporation claim, yet also

26 | cited *Cruikshank*, it must have understood that earlier case to do just what it said: to render a

1  holding as to the direct applicability – and *only* the direct applicability – of the Second

2  Amendment.  This is confirmed by the fact that a citation to *Barron* appears in the *Miller* opinion

3  in the same string citation as *Cruikshank*.  153 U.S. at 538.

4       Also instructive on this point is the 1887 case of *Spies v. Illinois* (cited in *Miller* in the

5  same string cite as *Cruikshank*), in which Chief Justice Waite, writing for the Court, cited both

6  his majority opinion in *Cruikshank* and the *Presser* opinion (as well as *Barron*) for the

7  proposition that the Bill of Rights does not apply directly to the states, and declined to address

8  whether the rights enumerated therein applied to the states through the Fourteenth Amendment

9  because the argument was procedurally barred.  123 U.S. 131, 151-52, 166-67, 181 (1887).

10  Thus, the most natural reading of the *Cruikshank/Presser/Miller* triumvirate – indeed, the only

11  reading that comports with the actual text, posture and structure of those opinions – is that they

12  merely reaffirmed the unremarkable constitutional principle that the Bill of Rights, ***standing***

13  ***alone***, restrains only the Federal Government.

14       In sum, the Supreme Court has **never** directly addressed selective incorporation of the

15  Second Amendment through the Due Process Clause of the Fourteenth.  Thus, this Court is free –

16  and obliged – to rule on that issue.

17
18
   **B.    NINTH CIRCUIT PRECEDENT DOES NOT FORECLOSE
          INCORPORATION**

19       The Attorney General of California has cited *Fresno Rifle and Pistol Club, Inc. v. Van De*

20  *Kamp*, 965 F.2d 723, 731 (9th Cir. 1992) as precedent that the right to keep and bear arms

21  guaranteed by the Second Amendment does not apply to the states.  As I will explain, this is not

22  correct.  The Attorney General misunderstands the holding of *Fresno Rifle, supra*.  The reason

23  *Fresno Rifle* is not precedent on the issue is because, after the U.S. Supreme Court's holding in

24  *District of Columbia v. Heller*, 554 U.S. ___, 128 S. Ct. 2783 (2008), enshrining an individual

25  fundamental constitutional right to keep and bear arms in the home for self-defense, there is

26  none.

---

1     *Fresno Rifle* relied on *U.S. v. Cruikshank*, 92 U.S. 542 (1875), and *Presser v. Illinois*, 116

2 U.S. 252 (1886) for its determination that "the Second Amendment limits only federal action."

3 *Id.* at 731. Like the cases that it relied upon, however, *Fresno Rifle* did not decide whether the

4 Second Amendment applied to the states through the Due Process Clause of the Fourteenth

5 Amendment. *Fresno Rifle* itself recognized that *Cruikshank* and *Presser* predated the first

6 incorporation decision, *id.* at 729-30, and the court of appeals addressed **only** the argument that

7 the Fourteenth Amendment requires **total incorporation** of the Bill of Rights. *Id.*

8     Moreover, in *Silveira v. Lockyer*,[4] Judge Stephen Reinhardt, writing for the Court,

9 forecast the inevitable resolution of the incorporation issue raised in this case, and implied the

10 issue could be addressed by the Ninth Circuit if and when presented, stating:

11     *Fresno Rifle* itself relied on *Cruikshank* and *Presser*, decided before the Supreme
    Court held that the Bill of Rights is incorporated by the Fourteenth Amendment's

12     Due Process Clause. Following the now-rejected *Barron v. Baltimore* (holding
    that the Bill of Rights did not apply to the states), *Cruikshank* and *Presser* found

13     that the Second Amendment restricted the activities of the federal government, but
    not those of the states. One point about which we are in agreement with the Fifth

14     Circuit is that ***Cruikshank* and *Presser* rest on a principle that is now
    thoroughly discredited**. *See Emerson*, 270 F.3d at 221 n.13. Because we decide

15     this case on the threshold issue of standing, however, we need not consider the
    question whether the Second Amendment presently enjoins any action on the part

16     of the states.

17 *Id.* at 1067 (additional emphasis added, point cites omitted).

18     Thus, one of the questions presented by this case – whether the individual right

19 recognized in *Heller* is incorporated under the Due Process Clause is still open in the Ninth

20 Circuit. Neither *Fresno Rifle* nor *Cruikshank, et al.*, preclude its review.

21     **C.    THE DECISION OF THE SECOND CIRCUIT, FOLLOWED
    RECENTLY BY THE SEVENTH, WAS WRONG: THERE IS**

22     **NO SUPREME COURT PRECEDENT ON INCORPORATION**

23     The Second Circuit, dismissed a plaintiff's Second Amendment challenge to a state law

24

25     [4] 312 F.3d 1052, 1061, reh. denied, 328 F.3d 567 (9th Cir. 2003), cert. denied, 540 U.S. 1046

26 (2003) (following *Hickman v. Block*, 81 F.3d 98 (9th Cir. 1996), in finding the "collective rights" model
provides the best interpretation of the Second Amendment).

1   prohibiting "nunchakus" (a martial arts weapon), stating: "It is settled law, however, that the

2   *Second Amendment* applies only to limitations the federal government seeks to impose on this

3   right." That court cited *Presser* in support of its holding, reasoning as follows:

4   > [W]e "must follow *Presser*" because "[w]here, as here, a Supreme Court
    > precedent 'has *direct application* in a case, yet appears to rest on *reasons rejected*
5   > *in some other line of decisions*, the Court of Appeals should follow the case which
    > directly controls, leaving to the Supreme Court the prerogative of overruling its
6   > own decisions.'" *Bach*, 408 F.3d at 86 (quoting *Rodriguez de Quijas v.*
    > *Shearson/Am. Express, Inc.*, 490 U.S. 477, 484, 109 S. Ct. 1917, 104 L. Ed. 2d
7   > 526 (1989)) (alteration marks omitted).[5]

8          *Maloney's* reasoning fails on two points. First, as discussed above, the issue of selective

9   incorporation of the Second Amendment via the Due Process Clause of the Fourteenth

10  Amendment has never been addressed "directly" by the Supreme Court. As the Supreme Court

11  noted in *Rodriguez de Quijas*, the case relied upon in *Maloney*, the appellate court decision in

12  that case declared as "obsolete" an earlier Supreme Court case *directly* on point. *Rodriguez de*

13  *Quijas*, 490 U.S. at 479. The Court rightly opined that is not the appellate court's role. *Id.* at

14  484. This Court, in deciding this issue, will not be making any such determination regarding *any*

15  Supreme Court case.

16         Second, the Supreme Court has not "rejected" the holdings in any of the cases cited above

17  – not *Cruikshank*, *Presser*, *Miller*, nor even *Barron*.[6] These cases remain binding authority, but

18  only on the legal questions presented and resolved in those cases, i.e., whether the Second

19  Amendment applies to the states directly. In fact, *Miller* criticized counsel in that case for *not*

20  raising Privileges and Immunities incorporation in the trial court so the issue could be addressed

21  there, before being raised for the first time on appeal. *Miller*, 153 U.S. 535, 538.

22      ////

23

24      [5] *Maloney v. Cuomo*, 554 F.3d 56, 58-59 (2009) (italics added); *see also NRA v. Chicago*, 2009
    U.S. App. LEXIS 11721, *4-5 (following *Maloney* and adopting its reasoning).

25

26      [6] *See, e.g.*, Erwin Chemerinsky CONSTITUTIONAL LAW PRINCIPLES AND POLICIES, 484 (2d ed.
    2002) ("[T]he Bill of Rights still applies directly only to the federal government; *Barron v. Mayor of*
    *Baltimore* never has been expressly overruled.").

1    While it is not within the province of trial or appellate courts to overrule outdated – even

2    "fossilized" – Supreme Court cases, neither is it within their province to divine the presumptive

3    rulings of past Courts on legal issues not heard.  The Second and Seventh Circuit rulings do

4    precisely that when they take the broad ruling in *Presser, et al.*, that the Second Amendment

5    directly restricts only federal acts, divorce it from the case in controversy actually before those

6    courts at the time, and interpose their opinion of how those courts might have ruled – over a

7    century ago – on an issue not before them.  The fact remains, those courts did *not* rule on

8    selective incorporation.  As the *Heller* Court noted, *id.* at 2813, n.23, courts are bound to resolve

9    that issue when presented.  Plaintiff has presented that issue for this Court's determination.

### D.   THE SECOND AMENDMENT SHOULD BE INCORPORATED TO APPLY AGAINST THE STATES

12    The Due Process Clause of the Fourteenth Amendment prohibits states from infringing

13    rights that are "fundamental."  *Duncan v. Louisiana*, 391 U.S. 145, 149 (1968).  Any

14    "fundamental right" listed in the Bill of Rights "is made obligatory on the States by the

15    Fourteenth Amendment."  *Pointer v. Texas*, 380 U.S. 400, 403 (1965).  *See, e.g., Wallace v*

16    *Jaffree*, 472 U.S. 38, 49 (1985) ("[W]hen the Constitution was amended to prohibit any State

17    from depriving any person of liberty without due process of law, that Amendment imposed the

18    same substantive limitations on the States' power to legislate that the First Amendment had

19    always imposed on the Congress' power.").  Indeed, as the author of the *Heller* opinion has

20    explained elsewhere, "virtually all" of the individual rights found in the Bill of Rights have been

21    incorporated against the States via the Fourteenth Amendment.  *Pac. Mut. Life Ins. Co. v. Haslip*,

22    499 U.S. 1, 34 (1991) (Scalia, J., concurring in judgment); *see also Planned Parenthood v.*

23    *Casey*, 505 U.S. 833, 847 (1992) ("We have held that the Due Process Clause of the Fourteenth

24    Amendment incorporates most of the Bill of Rights against the States.")

25    This Court's examination of Second Amendment incorporation should adopt and abide

26    by both the Supreme Court's incorporation doctrine clarified in *Duncan* and the fundamental

1 | rights analysis in *Heller*, which is itself an analysis of the foundations and history of the ancient

2 | right of self-defense and the right to arms for that purpose. In short, this Court should decide that

3 | the Second Amendment is incorporated through the Due Process Clause of the Fourteenth

4 | Amendment to apply against the States.

6 | **II.   THIS COURT MAY DECIDE THE ISSUES BEFORE IT WHEN THE COURT DEEMS APPROPRIATE**

7 | This Court has the inherent authority to decide the issues before it when it deems

8 | appropriate. The inherent authority of the Court is broad. The Court may control the actions of

9 | the parties appearing before it, and if desired, may institute rules which apply solely to this Court.

10 | The Court has the sound discretion to decide the matters before it in such a manner as to

11 | conserve valuable judicial resources as long as the rights of the litigants before it are not

12 | impermissibly violated. A short continuance, if needed to efficiently decide the matters law

13 | which may be dispositive of this case to any of the parties, is well within the prerogative of the

14 | Court to order.

15 | WHEREFORE, the Plaintiff, having further answered the State Defendants' Motion to

16 | Dismiss as instructed, respectfully requests that this Honorable Court deny it.

Respectfully submitted,

By _____
DWAYNE B. BURNS
Plaintiff, *In Pro Per*
P.O. Box 720157
Redding, CA 96099-7157
dwaynebburns@charter.net
(530) 440-0682

**CERTIFICATE OF SERVICE**

I hereby certify that on August 28, 2009, a true and correct copy of the foregoing document (including the accompanying exhibits, and attachments, if any) was served on all parties by telecopy transmittal, hand delivery, and/or first-class U.S. mail, postage prepaid, to the attorneys of record named below, in compliance with FED. R. CIV. P. 5.

EDMUND G. BROWN, JR.
Attorney General of California
JONATHAN K. RENNER
Senior Assistant Attorney General
GEORGE WATERS
Deputy Attorney General
1300 I Street, Suite 125
Sacramento, California 94244-2550


BRICKWOOD LAW OFFICE
Gary C. Brickwood, and
Rodney M. Blaco
Historic Pine Street School
1135 Pine Street, Suite 210
Redding, CA 96001-0750
ATTORNEYS FOR LOCAL DEFENDANTS

Dwayne B. Burns, *In Pro Per*

`

| S C A N N E D | Initials | |
|---|---|---|
| | Doc # | |
| | Folder | |
| | Docket Init | |