1  Dwayne B. Burns
   P.O. Box 720157
2  Redding, CA 96099-7157
   Telephone: (530) 440-0682
3  dwaynebburns@charter.net

4  Plaintiff, *IN PRO PER*

**FILED**

OCT 1 5 2009

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
        DEPUTY CLERK



5

6

7

8          IN THE UNITED STATES DISTRICT COURT FOR

9             THE EASTERN DISTRICT OF CALIFORNIA

10                  SACRAMENTO DIVISION

11                              )  CIVIL CASE NO.
                                )  2:09-CV-0497 MCE CMK
12  DWAYNE B. BURNS,            )
                                )  BRIEF IN OPPOSITION TO LOCAL
13          Plaintiff,          )  DEFENDANTS' MOTION TO
                                )  DISMISS
14      vs.                     )
                                )  Date:        October 29, 2009
15  MICHAEL MUKASEY, in his official   )  Time:        10:00 a.m.
    capacity as Attorney General of the United  )  Courtroom:   304, 3rd Floor
16  States of America, *et al.*,    )  Judge:       Hon. Craig M. Kellison
                                )  Trial Date:  None Assigned
17          Defendants.         )  Action Filed: February 20, 2009
                                )
18

19         The Plaintiff, Dwayne B. Burns, appearing *in propria persona*, respectfully requests that

20  this Honorable Court deny the "Motion to Dismiss" filed by the Shasta County Sheriff TOM

21  BOSENKO, the CITY OF REDDING, Redding Police Chief PETER HANSEN, and Redding

22  police officers KEVIN KIMPLE, WILLIAM FORREST, WILL WILLIAMS, and REBECCA

23  ZUFALL, (the "Local Defendants"). The grounds for this opposition are as follows: (1) the

24  claims against each of the defendants are valid, plausible, and the types of which are ripe for

25  adjudication by this Court; and (2) the Plaintiff has stated valid claims against the each of the

26  above-named defendants under F.R.C.P. 8.

# PRELIMINARY STATEMENT

The moving defendants make a number of assertions in their Motion to Dismiss which, as is explained in detail *infra*, are either erroneous because of defendants' misstatement of fact, or are without merit because there is no legal basis to support them. Much of the Local Defendants' motion consists of a repetition of the State Defendants' Motion to Dismiss and their Brief in Support thereof. In order to conserve the Court's valuable time and resources Plaintiff will direct the Court's attention to the Plaintiff's Supplemental Points and Authorities in Opposition to State Defendants' Motion to Dismiss previously filed in this action on August 28, 2009, (Dkt. No. 31) when addressing the issues which were previously raised in the State Defendants' Motion.

The issues that this case will decide are (1) can a state law categorically strip a member of a class of individuals of his fundamental right to keep and bear arms in his home for self-defense by means of a civil hearing with a drastically lower burden of proof, and without having the safeguards of right to counsel and a right to be tried by jury; and (2) whether the statutes at issue are "narrowly tailored to achieve a compelling state interest." It is Plaintiff's contention that while the Lautenberg Amendment, the Federal counterpart to the state statutes at issue here, and the California statutes, do indeed serve a compelling state interest; i.e., the attempted reduction of domestic violence committed by the use of firearms, the statutes go too far. By prohibiting the possession of firearms within the home and private property of the Plaintiff, the state and federal statutes at issue in this case are too broad and too sweeping under the heightened level of review that the *Heller* case mandates be used when analyzing statutes which infringe on Second Amendment rights.

The same state interest of reducing domestic violence by the use of firearms can be effectively achieved by prohibiting the possession of firearms outside of the home and off of the private property of the Plaintiff and other "restrained" persons in the same class. By only prohibiting the possession of firearms outside of the home, the same compelling state interest is

1   advanced, and the restrained person's rights under the Second and Fourteenth Amendments are

2   not violated.  If a restrained person is going to abide by the court's orders, the person will abide

3   by the orders which prohibit the possession and transportation of firearms outside of the home

4   and off of the private property of the restrained person.  If the restrained person is not of a mind

5   set to abide by the court's orders to begin with, then the further prohibition of the possession of

6   firearms within the home will add nothing in the way of reducing domestic violence by the use of

7   firearms.  A law prohibiting the possession and carrying of a firearm **outside** of the home by a

8   restrained person would be a reasonable means of achieving the state's compelling interest.

9   Plaintiff asks this Court the same question that Chief Justice Roberts asked counsel for the

10   District of Columbia, Walter Dellinger, during oral argument in the *Heller* case, "What is . . .

11   what is reasonable about a total ban on possession?"

## ARGUMENT

### I. THE LEGAL STANDARD FOR 12(b)(6) MOTIONS

14          A ruling that Plaintiff has failed to state a claim under F.R.C.P. 12(b)(6) may be granted

15   only in extraordinary circumstances.  *United States v. City of Redwood City*, 640 F.2d 963, 966

16   (9th Cir. 1981).  F.R.C.P. 8(a)(2) requires "a short and plain statement of the claim showing that

17   the pleader is entitled to relief".  The party bringing a 12(b)(6) motion has the burden to show

18   that Rule 8(a)(2) has not been met.  *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409

19   (3rd Cir. 1991).  The court's role at the 12(b)(6) stage is not to evaluate the strength or weakness

20   of claims.  *Jacobson v. Hughes Aircraft Co.*, 105 F.3d 1288, 1292 (9th Cir. 1997).  A Plaintiff's

21   brief may always be used "to clarify allegations in her complaint whose meaning is unclear."

22   *Pegram v. Herdrich*, 530 U.S. 211, 230, fn. 10 (2000).  "New" facts in Plaintiff's opposition

23   must be considered to determine whether to grant leave to amend or to dismiss with or without

24   prejudice.  *Orion Tire Corp. v. Goodyear Tire & Rubber Co.*, 268 F.3d 1133, 1137 (9th Cir.

25   2001).

26   ////

1  **II. STANDING**

2      **A. LEGAL STANDARD**

3      To establish standing, a plaintiff must demonstrate three elements:

4      "First plaintiffs must clearly demonstrate that they have suffered an "injury in
    fact" – an invasion of a legally protected interest which is (a) concrete and
5      particularized, and (b) actual or imminent, not conjectural or hypothetical.
    Second, there must be a causal connection between the injury and the conduct
6      complained of – the injury has to be fairly traceable to the challenged action of the
    defendant.  Third, it must be likely, as opposed to merely speculative, that the
7      injury will be redressed by a favorable decision."

8  *Hemp Indus. Ass'n v. D.E.A.*, 333 F.3d 1082, 1086 (9th Cir. 2003) (quoting *Lujan v. Defenders of*

9  *Wildlife*, 504 U.S. 555, 559 (1992)).  Plaintiff asserts multiple discrete injuries, caused by the

10  Local Defendants' statutes, policies, and practices alleged by Plaintiff to be unconstitutional

11  under the Second and Fourteenth Amendments to the United States Constitution, which are

12  redressable by a favorable decision of this Court.

13      **B. STANDING TO CHALLENGE THE CALIFORNIA STATUTES AT ISSUE**

14      The California statutes complained of prohibit Plaintiff from exercising his fundamental

15  right to keep a firearm in his home for self-defense as enshrined by the recent United States

16  Supreme Court decision in *D.C. v. Heller*, 554 U.S. ___, 128 S. Ct. 2783 (2008).  The California

17  statutes at issue in this case prohibit Plaintiff from possessing any firearm within his home.  The

18  restrictions that the California statute put on the Plaintiff are more severe than the restrictions

19  that were placed on Mr. Heller by the District of Columbia.  Plaintiff was ordered to have no

20  firearms at all within his home for a period of three years.  Restraining Order ¶¶ 4 and 28.

21  Contrary to what the Local Defendants would have this Court believe, the California statutes are

22  an outright ban on firearm possession.  The statute allows the state court's orders to be in effect

23  for as long as five years, and can then be renewed.  A half of a decade is a long time to have an

24  outright ban placed upon someone, especially someone who has not been convicted of **any** crime

25  of domestic violence, nor has been convicted of any crime of violence involving a firearm.

26  ////

**1. PLAINTIFF HAS PERSONALLY SUFFERED INJURY AS A RESULT OF DEFENDANT'S ACTIONS.**

On a number of occasions, Plaintiff has attempted to retrieve his firearm from the Redding Police Department ("RPD") who has Plaintiff's firearm in its custody.  Both times RPD has refused to return Plaintiff's firearm citing the California statutes at issue here as authority for refusing to return it.  Plaintiff would like to keep a firearm in his home for self-defense, but risks arrest, incarceration, and prosecution if he were to do so.

Plaintiff fears for the safety of himself and his family.  Plaintiff currently lives with his elderly handicapped parents who are incapable of defending themselves if attacked.  In times past when Plaintiff has had to summon RPD for assistance, it has always taken RPD at least a minimum of fifteen minutes to arrive despite Plaintiff living within the city limits of Redding. Plaintiff fears that if a life-threatening situation should arise, RPD would be of little or no immediate assistance.

**2. PLAINTIFF'S INJURY CAN BE FAIRLY TRACED TO THE CHALLENGED ACTION OF THE DEFENDANTS.**

The Defendant, Peter Hansen,  as Chief of the Redding Police Department, is responsible for executing and administering California's law, customs, practices, and policies within the City of Redding.  In that capacity, defendant Hansen is presently enforcing the unconstitutional laws, customs, practices, and policies complained of in this action.  Chief Hansen, or members of his department, is currently in possession of a number of Plaintiff's firearms.  This fact alone makes Chief Hansen a necessary and proper party to this lawsuit.

Defendant Tom Bosenko, as Sheriff of Shasta County, California, is the head law enforcement officer in the County of Shasta, and is responsible for executing and administering California's laws, customs, practices, and policies within Shasta County.  In that capacity, defendant Bosenko is presently enforcing the unconstitutional laws, customs, practices, and policies complained of in this action.  Like Chief Hansen, defendant Sheriff Tom Bosenko, or

members of his Office, is currently in possession of one of Plaintiff's firearms. This fact, along with the others mentioned herein, makes Sheriff Bosenko a necessary and proper party to this lawsuit.

### 3. PLAINTIFF'S INJURY IS LIKELY TO BE REDRESSED BY A FAVORABLE DECISION.

In accordance with *Warth v. Seldin*, 422 U.S. 490, 504 (1975), Plaintiff has "allege(d) facts from which it reasonably could be inferred that . . . there is a substantial probability [that the asserted injury would end] if the court affords the relief requested". Plaintiff's injuries would be redressed if he was not prohibited from possessing firearms in his home for self-defense.

### III. PLAINTIFF'S FUNDAMENTAL RIGHT TO KEEP A FIREARM IN HIS HOME FOR SELF-DEFENSE UNDER THE SECOND AMENDMENT APPLIES TO THE STATES.

### A. THE *HELLER* DECISION.

The case of *D.C. v. Heller*, 554 U.S. ___, 128 S. Ct. 2783 (2008), involved a D.C. special policeman, Mr. Heller, who wanted to keep a handgun in his home. D.C. law prohibited the possession of handguns within the home. D.C. law did allow long guns and rifles to be kept, but they had to be either unloaded and disassembled or have a trigger lock on them. Mr. Heller brought suit in the District Court in the District of Columbia seeking to enjoin, on Second Amendment grounds, the city from enforcing the bar on handgun registration. The District Court dismissed Heller's complaint, see *Parker v. District of Columbia*, 311 F. Supp. 2d 103, 109 (2004). The Court of Appeal for the District of Columbia reversed, see *Parker v. District of Columbia*, 478 F. 3d 370, 401 (2007). The U.S. Supreme Court heard the case and announced its decision on June 26, 2008.

The Supreme Court stated that the Second Amendment protects a right that pre-dates the Federal Constitution; therefore, the Constitution did not grant it. *See, e.g., Heller*, 128 S. Ct. at 2797 ("[I]t has always been widely understood that the Second Amendment, like the First and Fourth Amendments, codified a *pre-existing* right."). The Supreme Court stressed in *Heller* that

"few laws in the history of our Nation have come close to the severe restriction of the [District of Columbia] handgun ban." *Heller*, 128 S. Ct. at 2818. However, it is important to note that the current ban that has been placed on Plaintiff by the California statutes at issue is by far **more severe** than the ban faced by Mr. Heller due to D.C.'s handgun ban. Whereas Mr. Heller could possess long guns and rifles in his home, Plaintiff cannot.

While the Supreme Court has yet to announce what level of scrutiny should be used when analyzing Second Amendment claims, it did leave us with a number of clues as to the proper level of scrutiny to be used. *Heller* explicitly rejected rational basis review for Second Amendment claims. *Heller* at 2818 fn. 25. *Heller* also declined to adopt the interest balancing test proposed by the dissent, and in so doing makes it explicit that whatever the court has left to future evaluation, the very enumeration of the right elevates it above all other interests. *Heller* at 2821. The Court compared the right to other enumerated rights such as the First Amendment. *Id.* at 2821.

*Heller* also characterized the right to keep and bear arms as a corollary to the individual right of self-defense. *Id.* at 2817, ("[T]he inherent right of self-defense has been central to the Second Amendment right."). The right contains a personal component, it is a means to protect the individual from threats to life or limb.

### B. THE *NORDYKE* DECISION.

Earlier this year, a three judge panel of the Ninth Circuit Court of Appeals decided in *Nordyke v. King*, 563 F.3d 439, 457 (9th Cir. 2009), that the Second Amendment is incorporated by the Fourteenth Amendment and therefore does apply to the states. Later this year, on July 29, 2009, the Ninth Circuit ordered that *Nordyke* be reheard *en banc*, and further ordered that the panel opinion not be cited as precedent. On September 24, 2009, the Ninth Circuit, sitting *en banc,* heard oral argument in *Nordyke*; however, later that same day the Chief Judge of the Ninth Circuit, the Honorable Alex Kozinski, ordered the submission vacated pending the United States Supreme Court's disposition of *McDonald, et al. v. City of Chicago*, No. 08-1521. A copy of the

order is attached hereto as Exhibit A.  The Supreme Court has granted *certiorari*, but the case is not scheduled to be heard until sometime in the January term.  Defendant Attorney General of California, Edmund G. Brown, Jr. has filed a friend of the court brief in that case and it is attached hereto as Exhibit B for the Court's review.

For an in-depth discussion of why this Court should hold that the Second Amendment is applicable to the states, see Plaintiff's Supplemental Points and Authorities in Opposition to State Defendants' Motion to Dismiss previously filed in this action on August 28, 2009. (Dkt. No. 31.)

## IV. DEFENDANT KIMPLE IS NOT ENTITLED TO ANY FORM OF IMMUNITY

### A. THE FOURTH CLAIM FOR RELIEF

Defendant Kimple's actions were in violation of clearly established law, and no form of immunity applies to his unlawful actions.  Defendant Kimple illegally seized Plaintiff's firearm in the course of an illegal search.  Plaintiff made it perfectly clear to defendant Kimple that Plaintiff objected to the illegal search of his residence and there were no circumstances which would allow a search of Plaintiff's residences without a warrant or consent from Plaintiff.  If a co-tenant is physically present and refuses to give consent for a search of his residence, the other tenant's consent does not allow a search without a warrant or some justification which would excuse the warrant requirement. *Georgia v. Randolph*, 547 U.S. 103 (2006).  At the time of the illegal search, Mrs. Burns was not even residing with the Plaintiff and had no keys to Plaintiff's residence.  The defendants' claim of consent given by Mrs. Burns for the unlawful searches that took place were pretextual.

On the date of defendant Kimple's unlawful search and seizure of Plaintiff's firearm, there was no restraining order in effect.  The temporary restraining order initially served on Plaintiff did not come into existence until July of 2007.  The law at the time of defendant Kimple's conversion of Plaintiff's firearm was clearly established.  Defendant Kimple had no justification for either searching Plaintiff's residence or seizing anything found in the course of

conducting his illegal search. As such Plaintiff's Fourth Claim for Relief is a valid and proper claim. All that Plaintiff needs to accomplish in his Complaint is to give the defendant notice of the claim against him. F.R.C.P. 8. Plaintiff's claim is for a violation of his Federal constitutional rights. Whether Plaintiff erroneously cites the Fifth Amendment rather than the Fourth Amendment as a basis for his claim is not fatal to Plaintiff's claim against the defendant.

### B. THE NINTH CLAIM FOR RELIEF

Plaintiff's Ninth Claim for Relief is an alternative way of pleading Plaintiff's case. Trespass to Chattel is a common law tort for which Plaintiff claims defendant Kimple is liable. Counsel's allegation that the claim is "duplicative" is ludicrous. F.R.C.P. 8(a)(3) expressly authorizes a Plaintiff to demand relief in the alternative or "different types of relief". A trier of fact could theoretically determine that the defendant did not violate Plaintiff's constitutional rights, but did commit the common law tort that Plaintiff alleges the defendant committed against him. For the reasons stated above, defendant Kimple is not entitled to any form of immunity.

### C. THE TENTH CLAIM FOR RELIEF

Plaintiff's Tenth Claim for Relief alleges a state constitutional violation. Like Plaintiff's Fourth Claim for Relief which alleges a Federal constitutional violation, citing the wrong section of Article I is not fatal to Plaintiff's claim. It is also an alternative demand for relief as expressly authorized by F.R.C.P. 8(a)(3). Cal. Civil Code § 52.1 specifically allows for statutory damages for each violation of Plaintiff's rights. In addition, defendant Kimple is not entitled to any form of immunity for the reasons stated *supra*.

### V. PLAINTIFF HAS STATED VALID CLAIMS AGAINST THE DEFENDANTS FOR VIOLATION OF CAL. CIVIL CODE § 52.1

Defendants make the claim that Plaintiff has failed to identify what injuries Plaintiff sustained and has not alleged any facts necessary to support Plaintiff's claims for relief under Section 52.1. This is by far the most puzzling of defendants' assertions. Perhaps defendants fail to realize what is meant by the terms "threats, intimidation, and coercion."

1   While defendants were engaged in illegally and unlawfully invading Plaintiff's privacy

2   and sanctity of his home, defendants were carrying loaded guns, nightsticks, and mace, and

3   carrying the full weight and authority of the State of California with them while Plaintiff was

4   handcuffed and in the back of a police car.  The Random House Dictionary defines coercion as:

5   1. Use of force or intimidation to obtain compliance; and 2. force or *the power to use force* in

6   gaining compliance, as by a government *or police force*. (Emphasis added).

7   Federal Rule of Civil Procedure 8(a)(2) requires only " a short and plain statement of the

8   claim showing that the pleader is entitled to relief."  Specific facts are not necessary; the

9   statement need only "'give the defendant fair notice of what the . . . claim is and the grounds

10   upon which it rests.'" *Erickson v. Pardus*, 127 S. Ct. 2197 (2007), *citing Bell Atl. Corp. v.*

11   *Twombly*, 127 S. Ct. 1955, 1964 (2007).  In addition, a document filed *pro se* is "to be liberally

12   construed," *Estelle v. Gamble,* 429 U.S. 97, 106, and " a *pro se* complaint, however inartfully

13   pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," *ibid.*

14   (internal quotation marks omitted).  Cf. F.R.C.P. 8(f) ('All pleadings shall be so construed as to

15   do substantial justice").

## VI.  PLAINTIFF'S CLAIM ARE NOT "DUPLICATIVE."

17   Defendants accuse Plaintiff of being "duplicative", as if it is a pejorative term.  As

18   previously noted, F.R.C.P. 8(a)(3) expressly authorizes Plaintiff to plead in the alternative.

19   Plaintiff has merely stated claims for common law torts, violations of his Federal constitutional

20   rights, state constitutional rights, violations of statutes, and declaratory and injunctive relief.

21   How Plaintiff chooses to present his claims are his prerogative.

## VII.  DEFENDANT TOM BOSENKO IS A NECESSARY AND PROPER PARTY

23   Defendant Bosenko is the Sheriff of Shasta County.  Plaintiff lives in Shasta County.

24   Defendant Bosenko is currently enforcing the unconstitutional laws, customs, practices, and

25   policies complained of in this action.  Additionally, defendant Bosenko or his deputies have a

26   firearm belonging to the Plaintiff in their possession.  As such, defendant Bosenko is a proper

1  party in this action because Plaintiff is seeking declaratory and injunctive relief from unlawful

2  acts which defendant Bosenko is currently engaged in.

3  **VIII.  THE COURT SHOULD STAY ITS RULING REGARDING THE SECOND
   AMENDMENT CLAIMS UNTIL THE NINTH CIRCUIT'S DISPOSITION OF
4  NORDYKE.**

5          A district court has the discretionary power to control the disposition of the cases on its

6  docket "in a manner which will promote economy of time and effort for itself, for counsel, and

7  for the litigants," *CMAX, Inc. v Hall*, 300 F.2d 265, 268 (9th Cir. 1962); *see Landis v. N. Am. Co.*,

8  299 U.S. 248, 254 (1936).  How these objectives can be achieved "calls for the exercise of

9  judgment, which must weigh competing interests and maintain an even balance." *Landis*, 299

10  U.S. at 254-55; *see Lockyer v. Miran Corp.*, 398 F. 3d 1098, 1110 (9th Cir. 2005) ("Where it is

11  proposed that a pending proceeding be stayed, the competing interests which will be affected by

12  the granting or refusal to grant a stay must be weighed.")  Such competing interests include "the

13  possible damage which may result from the granting of a stay, the hardship or inequity which a

14  party may suffer in being required to go forward, and the orderly course of justice measured in

15  terms of the simplifying or complicating of issues, proof, and questions of law which could be

16  expected to result from a stay." *CMAX*, 300 F.2d at 268.

17          The issues to be addressed by the court in *Nordyke* are broad in scope and material to this

18  case.  Specifically, a foundational issue in both *Nordyke* and in this case is whether the Second

19  Amendment is incorporated and thus, applicable to state and local governments.  Further, the *en*

20  *banc* decision in *Nordyke* will also evaluate a firearms regulation in light of *Heller* and

21  *McDonald*.  Such evaluation will almost certainly provide crucial direction to the Court in its

22  analysis of the firearms statutes in this case.  Accordingly, this court's decision regarding

23  Plaintiff's Second Amendment claims should be STAYED pending the Ninth Circuit's *en banc*

24  decision in *Nordyke v. King*.

25  ////

26  ////

**CONCLUSION**

For the reasons set forth above, the Local Defendants' Motion to Dismiss pursuant to F.R.C.P. 12(b)(6) should be DENIED, or in the alternative, that Plaintiff be allowed to amend any deficiencies that the Court should declare.

DATED this 14th day of October, 2009.　　　　　Respectfully submitted,

DWAYNE B. BURNS
Plaintiff, *in propria persona*
P.O. Box 720157
Redding, CA 96099-7157
dwaynebburns@charter.net
Tel. (202) 241-3776

Page 12 – Brief in Opposition to Local Defendants' Motion to Dismiss.

### CERTIFICATE OF SERVICE

I hereby certify that on October 15, 2009, a true and correct copy of the foregoing

document (including the accompanying exhibits, and attachments, if any) was served on all

parties by telecopy transmittal, hand delivery, and/or first-class U.S. mail, postage prepaid, to the

attorneys of record named below, in compliance with FED. R. CIV. P. 5.

> THE BRICKWOOD LAW OFFICE
> Gary C. Brickwood, and
> Rodney M. Blaco
> 1135 Pine Street, Suite 210
> Redding, CA 96001
>
>
> EDMUND G. BROWN, JR.
> Attorney General of California
> JONATHAN K. RENNER
> Senior Assistant Attorney General
> GEORGE WATERS
> Deputy Attorney General
> 1300 I Street, Suite 125
> Sacramento, California 94244-2550

Dwayne B. Burns, *In Pro Per*

---

Page 13 – Brief in Opposition to Local Defendants' Motion to Dismiss.

**EXHIBIT "A"**

**NOT FOR PUBLICATION**

**FILED**

**SEP 24 2009**

**UNITED STATES COURT OF APPEALS**

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**FOR THE NINTH CIRCUIT**

| | |
|---|---|
| **RUSSELL ALLEN NORDYKE; ANN SALLIE NORDYKE, dba TS Trade Shows; JESS B. GUY; DUANE DARR; WILLIAM J. JONES; DARYL N. DAVID; TASIANA WESTYSCHYN; JEAN LEE; TODD BALTES; DENNIS BLAIR, R.L. ADAMS; ROGER BAKER; MIKE FOURNIER; VIRGIL MCVICKER,** | No. 07-15763<br><br>D.C. No. CV-99-04389-MJJ |
| Plaintiffs - Appellants, | **ORDER** |
| v. | |
| **MARY V. KING; GAIL STEELE; WILMA CHAN; KEITH CARSON; SCOTT HAGGERTY; COUNTY OF ALAMEDA; COUNTY OF ALAMEDA BOARD OF SUPERVISORS,** | |
| Defendants - Appellees. | |

**KOZINSKI**, Chief Judge:

Submission is vacated pending the Supreme Court's disposition of <u>Maloney</u>

v. <u>Rice</u>, No. 08-1592, <u>McDonald</u> v. <u>City of Chicago</u>, No. 08-1521, and <u>National</u>

<u>Rifle Ass'n of Am., Inc.</u> v. <u>City of Chicago</u>, No. 08-1497.

**EXHIBIT "B"**

FILED

JUL 6 - 2009

OFFICE OF THE CLERK
SUPREME COURT, U.S.

Nos. 08-1497; 08-1521

# In the Supreme Court of the United States

NATIONAL RIFLE ASSOCIATION, INC., ET AL.,
PETITIONERS,

v.

CITY OF CHICAGO, ILLINOIS, ET AL., RESPONDENTS.

---

OTIS McDONALD, ET AL., PETITIONERS,

v.

CITY OF CHICAGO, ILLINOIS, ET AL., RESPONDENTS.

---

ON PETITIONS FOR WRITS OF CERTIORARI TO THE UNITED
STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

---

## BRIEF OF THE STATE OF CALIFORNIA AS AMICUS CURIAE IN SUPPORT OF PETITIONERS

---

EDMUND G. BROWN JR.
Attorney General of California
JAMES M. HUMES
Chief Deputy Attorney General
JONATHAN K. RENNER
Senior Assistant Attorney General
ZACKERY P. MORAZZINI
Deputy Attorney General
*Counsel of Record*
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone: (916) 445-8226
  Fax: (916) 324-5567
*Counsel for Amicus Curiae*

## STATEMENT OF COMPLIANCE WITH SUPREME COURT RULE 37.2(a)

Pursuant to Rule 37.4, the consent of the parties to file this brief is not required. California provided notice on July 6, 2009, that it would file this brief and believes that no party will be prejudiced by the filing.

## QUESTION PRESENTED

Whether the right of the People to keep and bear arms guaranteed by the Second Amendment to the United States Constitution is incorporated into the Due Process Clause or the Privileges or Immunities Clause of the Fourteenth Amendment so as to be applicable to the States, thereby invalidating ordinances prohibiting the possession of handguns in the home.

## INTEREST OF *AMICUS CURIAE*

California has a strong interest in protecting the constitutional rights of its citizens. But unlike many states, California has no state constitutional counterpart to the Second Amendment. Unless the protections of the Second Amendment extend to citizens living in the States as well as to those living in federal enclaves, California citizens could be deprived of the constitutional right to possess handguns in their homes as affirmed in *District of Columbia v. Heller*, 128 S. Ct. 2783 (2008).

## INTRODUCTION

This Court recently held that the Second Amendment prevents the federal government from denying citizens the right to possess handguns in their homes. *District of Columbia v. Heller*, 128 S. Ct. 2783 (2008). But the decision did not resolve the more important question of whether this limitation applies to the States through the Fourteenth Amendment. The petitions in these cases should be granted so the Court may address this question. In granting the petitions and ruling upon the merits, the Court should extend to the states *Heller*'s core Second-Amendment holding that the government cannot deny citizens the right to possess handguns in their homes, but also provide guidance on the scope of the States' ability to reasonably regulate firearms.

## REASONS FOR GRANTING THE PETITIONS

The Court should grant review for two reasons. First, the Court should grant review to resolve the split in the circuits on the important question of whether the Second Amendment applies to the states. This question is particularly important because certain states, such as California, have no state constitutional counterpart to the Second Amendment. Second, the Court should grant review because further guidance is needed to define the scope of the States' legitimate interests in reasonably regulating firearms.

### I.    THESE PETITIONS SHOULD BE GRANTED TO RESOLVE A SPLIT IN THE CIRCUITS ON THE IMPORTANT QUESTION OF WHETHER THE SECOND AMENDMENT APPLIES TO THE STATES.

The Ninth Circuit Court of Appeals has held that the individual right guaranteed by the Second Amendment applies to the States through the Due Process Clause of the Fourteenth Amendment. *Nordyke v. King*, 563 F.3d 439 (9th Cir. 2009). The Second Circuit has concurred with the Seventh Circuit in reaching the opposite conclusion. *Maloney v. Cuomo*, 554 F.3d 56 (2nd Cir. 2009). This split has created confusion regarding the nature of citizens' Second-Amendment rights and the power of States to enact reasonable regulations governing firearms. These petitions should be granted to resolve the lower-court split and the confusion it has engendered.

## II.   THESE PETITIONS SHOULD BE GRANTED TO AFFIRM THE APPLICABILITY OF THE SECOND AMENDMENT TO THE STATES AND TO PROVIDE GUIDANCE ON THE SCOPE OF PERMISSIBLE FIREARMS REGULATIONS.

In affirming that the Second Amendment guarantees an individual right to keep and bear arms, the Court in *Heller* noted that its ruling permitted reasonable regulation of firearms.  It declared that nothing in the decision should "be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." 128 S. Ct. 2783, 2816-17 (2008).  But the Court declined to elaborate on the extent of the government's authority to regulate firearms or to establish a standard of review applicable to asserted Second-Amendment infringements. *Id.* at pp. 2817-19.

Further guidance on these issues is needed in California, which has been a national leader in passing common-sense legislation to regulate firearms.  The Unsafe Handgun Act, for example, aims to reduce handgun crime and promote handgun safety.  Cal. Penal Code § 12125 et seq.  It prohibits the manufacture or sale of any "unsafe handgun" in California, including those that lack certain safety features such as a chamber-load indicator.  Cal. Penal Code § 12126(c).  This law has furthered important governmental interests while not interfering with the ability of our state's residents to purchase and possess a wide range of handguns: Over 1,300 handguns have been certified by California as meeting the law's requirements.  See

http://certguns.doj.ca.gov/. Nonetheless, California is presently defending the law against a federal constitutional challenge. *Peña v. Cid*, 2:09-cv-01185-FCD-KJM, 2009 (U.S. Dist., E.D. Cal.).

The petitions in these cases should be granted to provide needed guidance on the scope of the States' ability to reasonably regulate firearms while extending to the states *Heller*'s core Second-Amendment holding that government cannot deny citizens the right to possess handguns in their homes.

Dated:  July 6, 2009

Respectfully submitted

EDMUND G. BROWN JR.
Attorney General of California
JAMES M. HUMES
Chief Deputy Attorney General
JONATHAN K. RENNER
Senior Assistant Attorney General
ZACKERY P. MORAZZINI*
Deputy Attorney General

*Counsel of Record*
*Counsel for Amicus Curiae*