**GARY BRICKWOOD, State Bar No. 94892**
BRICKWOOD LAW OFFICE
1135 Pine Street, Suite 210
Redding, CA 96001
(530) 245-1877
(530) 245-1879 (fax)

Attorneys for Defendants TOM BOSENKO, CITY OF REDDING,
PETER HANSEN, KEVIN KIMPLE, WILLIAM FORREST, WILL WILLIAMS
and REBECCA ZUFALL

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DWAYNE B. BURNS,<br><br>    Plaintiff,<br><br>vs.<br><br>MICHAEL MUKASEY, in his official capacity as Attorney General of the United State of America, et al.,<br><br>    Defendants. | Case No.2:09-CV-00497-MCE-CMK<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE MOTION FOR SUMMARY ADJUDICATION PURSUANT TO FRCP RULE 56(B)**<br><br>DATE: April 14, 2011<br>TIME: 2:00 p.m.<br>DEPT: 7 |

### I.   INTRODUCTION AND STATEMENT OF FACTS

By its Order dated February 11, 2010, the Court has dismissed many of the defendants and half of the causes of action asserted in this pro per Complaint. Remaining defendants are individual police officers, KEVIN KIMPLE, WILL WILLIAMS, REBECCA ZUFALL and BILL FORREST. Remaining causes of action are the third and fifth causes of action under Section 1983 alleging illegal search and seizure at two separate trailers; the seventh and eighth causes of action under California Civil Code Section 52 also for searches conducted of two trailers; and the ninth cause of action against KEVIN KIMPLE only alleging trespass to chattels arising out of the seizure of a handgun.

The facts are straightforward. Officers were dispatched to a domestic disturbance at a trailer home park in Redding. Dispatch advised officers that there were multiple reporting parties and that there were reports of a man brandishing a handgun.

The domestic dispute involved plaintiff Dwayne Burns and his wife Lori Burns. Officer Kevin Kimple was the first officer to arrive and was the investigating officer who arrested Dwayne Burns for domestic violence in violation of Penal Code Section 243(e). Officer Will Williams provided backup to Kimple. Officer Zufall and Sergeant (then Corporal) Forrest responded as additional backup and arrived after Kimple and Williams.

Dwayne Burns called law enforcement dispatch during the domestic disturbance and was instructed to wait for responding officers at the entrance to the trailer park. Officer Kimple first made contact with Dwayne Burns when he arrived at the trailer park. Plaintiff Burns was angry and emotionally upset. Because of the dispatch information about a handgun, Burns was handcuffed and searched. He had no handgun. Burns was placed in the back of a patrol car for the safety of officers and others at the scene.

Officers Kimple and Williams then proceeded into the trailer park to contact Lori Burns and other witnesses. Lori Burns was located hiding behind a fence within the trailer park. Officer Kimple interviewed Lori Burns. Lori Burns told Kimple that she and Dwayne Burns had been in a physical fight the previous night at about 1:00 a.m.. Lori Burns stated that Dwayne Burns had grabbed her face forcefully, punched her two to three times and had grabbed her hair and pulled her backwards. Lori Burns stated that she left her residence at the trailer park at about 1:30 a.m. to stay with her

sister out of concern for her own safety because of Dwayne Burns. Lori Burns stated to Kimple that she returned to the trailer park in the morning for the purpose of collecting some personal belongings and to check on her dog.

Lori Burns further told Kimple that she and Dwayne Burns resided and co-occupied two trailers in the trailer park, the trailer located in space 5 and the trailer located in space 23. Lori Burns also told Kimple that she individually owned both trailers, but that she and Dwayne resided together in the trailers and had their possessions in both trailers. Lori Burns also told Kimple that Dwayne Burns spent most of his time in the trailer at space 5.

Lori Burns told Kimple that during the argument that morning before police arrived, she had seen Dwayne Burns fiddling with an object in his pocket that she thought might be a handgun. Lori Burns stated that Dwayne Burns owned a small silver handgun and often carried the handgun on his person in his pocket.

Officer Kimple also interviewed Shari McClendon. Shari McClendon identified herself as Lori Burns' sister. Shari McClendon told Kimple that Lori Burns had come to her house out of fear of Dwayne Burns at approximately 1:30 a.m. the previous night. Shari McClendon stated that she had come to the trailer park with Lori Burns that morning to provide support for Lori Burns and to allow Burns to collect some personal belongings and to check on Lori Burns' dog. McClendon stated that Lori Burns and Dwayne Burns had gotten into a further argument that morning, prompting the calls to the police. Shari McClendon stated that she saw Burns fiddling with a silver object that she thought might have been a handgun during the time that he was arguing with Lori Burns. McClendon stated that she could not be certain that

1  Burns had a handgun.

2  Officers wanted to search the two trailers for the handgun for
3  the safety of Lori Burns.  Officer Williams asked Lori Burns whether
4  she would consent to officers searching both trailers for the handgun.
5  Lori Burns told Officer Williams that she consented to officers
6  conducting a search of both trailers.  Lori Burns further told Officer
7  Williams that Dwayne Burns might have firearms in both trailers and
8  that she did not know whether he had drugs in both trailers.

9  Officer Zufall made contact with Dwayne Burns who remained in the
10 back of the patrol car, and asked Dwayne Burns if he would consent to
11 officers conducting a search of the two trailers located in space 5
12 and space 23.  Dwayne Burns stated to Officer Zufall that he would
13 consent to a search of the trailer at space 5, but that he would not
14 consent to a search of the trailer at space 23.

15 Officers Kimple, Williams and Zufall conferred with Corporal
16 Forrest regarding the consent to search both trailers.  Officers
17 advised Forrest that both Lori Burns and Shari McClendon thought Burns
18 might have been in possession of a handgun during his argument with
19 Lori Burns prior to police arrival.  Officers confirmed that dispatch
20 reports from multiple parties had reported a man in possession of a
21 handgun and perhaps brandishing a handgun.  No handgun had been found
22 on the person of Dwayne Burns.  Officers related to Forrest that Lori
23 Burns told him that she owned both trailers and that she and Dwayne
24 Burns residing in and co-occupied both trailers.  Officers told
25 Forrest that Lori Burns consented to police officers conducting a
26 search of both trailers.  Officer Zufall told Forrest that Dwayne
27 Burns consented to a search of the trailer at space 5, but did not
28 consent to a search of the trailer at space 23.

1    Corporal Forrest believed that officers had legal authority to
2 search both trailers based on the consent by Lori Burns as the wife
3 and co-occupant of both trailers with Dwayne Burns and as the owner
4 of both trailers.  Forrest authorized Williams and Zufall to conduct
5 a search of the trailers at space 5 and space 23.  Officer Kimple
6 transported Dwayne Burns to jail.

7    Officer Williams search the trailer at space 5.  He found drug
8 paraphernalia, identification of both Lori Burns and Dwayne Burns,
9 ammunition, but did not find a handgun.  Officer Williams and Officer
10 Zufall conducted a search of the trailer at space 23.  Zufall found
11 a handgun in a dresser drawer in the bedroom.  Officer Zufall seized
12 the handgun for the safety of Lori Burns arising out of the arrest of
13 Dwayne Burns for domestic violence against Lori Burns.  Officer
14 Williams did not find or seize a handgun during the search of the
15 trailer at space 23.  Officer Williams did find additional ammunition,
16 restricted drugs consisting of approximately 10 pounds of marijuana,
17 and drug paraphernalia.

18    Defendants request that the Court summarily adjudicate each of
19 the remaining claims against each of the remaining defendants and
20 enter summary judgment in favor of all defendants if all claims are
21 determined adversely to plaintiff. Defendants submit that the consent
22 of Lori Burns establishes a complete defense to the third, fifth,
23 seventh and eighth causes of action.  Defendants further submit that
24 each individual defendant is entitled to qualified immunity based on
25 the consent provided by Lori Burns.  Finally, defendants submit that
26 Officer Kimple, the only individual defendant named in the ninth cause
27 of action was simply factually not involved in the search or seizure
28 alleged in the ninth cause of action and therefore factually cannot

be determined to be liable for the ninth cause of action. Further, to the extent that plaintiff asserts evidence that Kimple was involved in a search or seizure, the consent by Lori Burns and qualified immunity would provide complete defenses to Officer Kimple.

In addition, each of plaintiff's State law claims are barred by plaintiff's failure to file a Government claim as required by Government Code Section 945.6.

In addition, the seventh and eighth causes of action brought under Civil Code Section 52 fail to state facts sufficient to constitute a cause of action under statute. Civil Code section 52 provides a remedy for discrimination by businesses on the basis of sex, race, color, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation, none of which are implicated by the facts of this case. The Complaint on its face fails to state facts sufficient to constitute a cause of action.

## II. THE SEARCHES OF THE TRAILERS DID NOT VIOLATE PLAINTIFF'S CONSTITUTIONAL RIGHTS

There is no illegal search or seizure if there is consent to the search. It is well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause to search is consent. Davis v. United States, 328 U.S. 582, 593-594, 66 S.Ct. 1256, 1261-1262, 90 L.Ed. 1453; Zap v. United States, 328 U.S. 624, 630, 66 S.Ct. 1277, 1280, 90 L.Ed. 1477." (Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S. Ct. 2041, 2043-44, 36 L. Ed. 2d 854 (1973).)

In United States v. Lacey, 225 F. App'x. 478, 479 (9th Cir. 2007), the appellate court held that consent by a co-habitant was sufficient:

> "The district court did not err in permitting evidence located on the home computer based upon Dozier's actual authority to consent to the search. Dozier paid the rent and held the apartment in her name; she enjoyed access to all parts of the home, including the computer, which she used occasionally. Because she thus had common authority over the property, *United States v. Kim*, 105 F.3d 1579, 1582 (9th Cir.) (citing *United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974)), cert. denied 522 U.S. 940, 118 S.Ct. 353, 139 L.Ed.2d 275 (1997), she had actual authority to consent to the seizure of the home computer, and the district court did not err in admitting that evidence.

The Supreme Court in <u>Matlock</u> articulated the common authority doctrine. <u>United States v. Matlock</u>, <u>supra</u>. The doctrine established that mutual use by persons generally having joint access or control, in particular spouses, established authority to consent to search in any one of such co-habitants. That remains true whether the item seized is a personal item to the defendant rather than the co-habitant providing consent; <u>People v. Stacy</u>, 58 Ill.2d 83 (1974) and whether the spouses are adverse, <u>United States v. Sealey</u>, 830 F.2d 1028 (9th Cir. 1987). Further, a spouse, co-habitant, may consent to search common areas even though that spouse plans to abandon the residence in the near future. <u>United States v. Lawless</u> 465 F.2d 422 (4th Cir. 1972).

Here, the officers obtained the consent of plaintiff's wife to the search of both trailers. She told officers that she and Dwayne Burns lived in and co-occupied both trailers and had personal belongings in both trailers. That plaintiff Dwayne Burns refused to consent to search the trailer at space 23 does not officiate the consent given by Lori Burns to conduct the search of the trailer at space 23. The gun was found in the trailer located at space 23.

Moreover, under the circumstances, the officers conducting the search are entitled to qualified immunity for the alleged section 1983

violations. Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). As the law cited above reflects, no fourth amendment violation occurs if there is consent to a search; and thus an officer who reasonably believes that he has obtained a valid consent to search is immune from civil liability for claimed constitutional violations. Here, consent was obtained from plaintiff's co-habitant spouse who also claimed sole ownership of both the trailers.  A reasonable officer would rely upon such information.  Officers Williams and Zufall (who actually conducted the search) and Sergeant Forrest (who authorized the search) are immune from liability for their reasonable reliance on the consent obtained from Lori Burns.

Dependants respectfully request that the Court summarily adjudicate that plaintiff's Fourth Amendment rights were not violated by the search of the trailers and seizure of the handgun.

### III.   PLAINTIFF'S STATE LAW CLAIMS ARE BARRED
### BY PLAINTIFF'S FAILURE TO FILE A GOVERNMENT CLAIM

The First Amended Complaint does not allege that plaintiff has at any time filed a claim for damages with the City of Redding, as required by Government Code Section 905, much less filed a claim within the six months allowed by statute.  The fact of the matter is, as established by the Declaration of Chris Carmona, that plaintiff did not file such a claim. Therefore, the state causes of action are barred under the express provisions of Government Code Section 945.4 ["Except as provided by Sections 945.6 and 946.6, no suit for money or damages may be brought against a public entity on a cause of action

for which a claim is required to be presented in accordance with Chapter 1 (commencing with Section 900) and Chapter 2 (commencing with section 910) of Part 3 of this division until a written claim therefore has been presented to the public entity and has been acted upon by the board, or has been deemed to have been rejected by the board, in accordance with Chapters 1 and 2 of Part 3 of this division.'] Similarly, while there is no requirement of the presentation of claims naming specific public employees (Government Code Section 950), where a claim against the public entity is barred for failure to present a claim, the claim against the employee is barred as well. (Government Code Section 950.2.)

Plaintiff having failed to present any claim to the City of Redding, his state law claims against the individual officers as alleged in the seventh, eighth and ninth causes of action are barred.

### IV. PLAINTIFF HAS NOT AND CANNOT STATE A CAUSE OF ACTION UNDER CIVIL CODE SECTION 52

Civil Code Section 52 provides a remedy for violations of Civil Code Section 51, 51.5, 51.6, 51.7, and 51.9. Thus, to determine whether a plaintiff has stated a cause of action under Section 52, one must determine whether a claim is made under any of these other sections. In this case, plaintiff does not assist defendants or the Court in this effort; plaintiff merely cites to Section 52 in his pleadings, but not to any of these other section. Nonetheless, an evaluation of the claims asserted in the context of each of these sections reveals that plaintiff's Complaint falls within the parameters of none of them.

Civil Code Section 51, aka the Unruh Civil Rights Act, provides that all persons within the State of California "are free and equal,

and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Expanding upon this general principle of equal protection and nondiscrimination based on prohibited characteristics, Civil Code Section 51.5 prohibits discrimination or boycott by a business establishment on the basis of any of the characteristics identified in Section 51. Section 51.6 repeals any discrimination in charges for services rendered by a business based on gender. Section 51.7 proscribes intimidation and threats of violence based on the factors enumerated in Section 51. Finally, Section 51.9 proscribes sexual harassment.  In short, each and all of these section proscribe unequal treatment based upon inclusion in a protected class.

Plaintiff's Complaint does not allege that plaintiff was discriminated against because of his inclusion in a protected class, whether sex, race, religion or national origin, etc. Plaintiff therefore fails to state a claim under Civil Code Section 52.

Defendants request that the Court dismiss the seventh and eighth causes of action, for failure to state or establish facts in support of a cause of action.

### V. PLAINTIFF CANNOT MAINTAIN A CAUSE OF ACTION FOR TRESPASS TO CHATTELS

The ninth cause of action is asserted against Officer Kimple only, and asserts that Officer Kimple dispossessed plaintiff of his firearm. Officer Kimple's declaration establishes that plaintiff is misinformed as to the identity of the Officer who seized the weapon;

it was not Officer Kimple. Therefore Officer Kimple is entitled to judgment as to the ninth cause of action.

Even assuming that plaintiff would be allowed leave to amend to change the identity of the seizing officer, the claim still fails. First, the seizing officer was Officer Zufall, but not Officer Williams or Corporal Forrest. Second, California law specifically allows for the seizure of firearms after a domestic violence arrest. Specifically, Penal Code Section 12028.5(b) provides:

> (b) A sheriff, undersheriff, deputy sheriff, marshal, deputy marshal, or police officer of a city..., who is at the scene of a domestic violence incident involving the threat to human life or a physical assault, shall take temporary custody of any firearm or other deadly weapon in plain sight or discovered pursuant to a consensual or other lawful search as necessary for the protection of the police officer or other persons present."

Thereafter, the weapons may be retained as evidence in any subsequent criminal prosecution related to criminal charges brought as a result of the domestic violence incident. Thus, the seizure of the firearm, as it appeared it may have been involved in this domestic violence incident, was lawful at the time it was accomplished.

Wherefore, defendants request that the Court enter an order dismissing the ninth cause of action.

## IV. CONCLUSION

Plaintiff's claims for violation of his Fourth Amendment rights arising out of the searches of trailers 5 and 23 are barred by the consent to those searches given by plaintiff's spouse who was the owner of both trailers and cohabitant of both trailers. The Court is requested to award judgment in favor of defendants and against plaintiff on the third and fifth causes of action. In addition, each

1  individual defendant is entitled to qualified immunity.

2      The remaining state law claims are barred both procedurally and substantively. Plaintiff did not file a government claim with the City; thus those claims are procedurally barred as a matter of law. The seventh and eighth causes of action fail to state facts sufficient to constitute a cause of action, as Civil Code Section 52 is designed to protect against unlawful discrimination based on sex, race, national origin, religion, etc. none of which factors are present in this case. Finally, the ninth cause of action fails because it misidentifies the seizing officer, and even if that defect is overcome, the seizure of plaintiff's firearm by a police officer was lawful under California statute.

13      Wherefore, defendants and each of them request that the Court summarily adjudicate each cause of action in their favor and against plaintiff, and enter summary judgment as to the entire action.

16  DATED: March 10, 2011.              BRICKWOOD LAW OFFICE

18                                                /s/ GARY BRICKWOOD
                                              GARY BRICKWOOD

**PROOF OF SERVICE**

I am a citizen of the United States, over the age of 18 years, and not a party to the within action. I am employed in Shasta County, California, by BRICKWOOD LAW OFFICE, at their offices located at 1135 Pine Street, Suite 210, Redding, California, 96001. On this date, I served the following document(s): **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE MOTION FOR SUMMARY ADJUDICATION PURSUANT TO FRCP RULE 56(B)**

__✓__ by placing a true copy thereof for collection and mailing, in the course of ordinary business practice, with other correspondence of Brickwood Law Office at 1135 Pine Street, Suite 210, Redding, Shasta County, California, enclosed in a sealed envelope with postage thereon fully prepaid, addressed as set forth below. I am familiar with the practice of Brickwood Law Office for collection and processing of correspondence for mailing with the United States Postal Service. It is the practice that correspondence is deposited with the United States Postal Service the same day it is submitted for mailing.

_____ by placing a true copy thereof in a box or other facility regularly maintained by _____ U.P.S. / _____ Federal Express, in a sealed envelope or package designated by _____ U.P.S. / _____ Federal Express, with delivery fees paid or provided for, addressed as set forth below.

_____ by personally delivering a true copy thereof to the person and at the address set forth below.

_____ BY FAX (Telecopier) - I personally sent to the addressee's telecopier number a true copy of the above described document(s). I verified transmission and, thereafter, I placed a true copy in a sealed envelope addressed and mailed as indicated above.

Dwayne B. Burns
P.O. Box 720157
Redding, CA 96099

I declare under penalty of perjury of the laws of the State of California that the foregoing is true and correct. Executed at Redding, California on March 10, 2011.

                                         /s/ Deena Swafford
                                         Deena Swafford