1  Dwayne B. Burns
   P.O. Box 720157
2  Redding, CA 96099
   Tel. (530)638-1066
3
   Plaintiff, *In Pro Per*
4



**FILED**

APR 1 4 2011

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
         DEPUTY CLERK

8
## IN THE UNITED STATES DISTRICT COURT
9
## FOR THE EASTERN DISTRICT OF CALIFORNIA
10
## SACRAMENTO DIVISION
11

12  DWAYNE B. BURNS,                          ) Case No.: 2:09-CV-0497-MCE-CMK
                                              )
13           Plaintiff,                       ) **PLAINTIFF'S  MEMORANDUM IN**
                                              ) **OPPOSITION TO DEFENDANTS'**
14      vs.                                   ) **MOTION FOR SUMMARY JUDGMENT**
                                              ) **AND IN SUPPORT OF PLAINTIFF'S**
15                                            ) **CROSS-MOTION FOR SUMMARY**
    MICHAEL MUKASEY, in his official          ) **JUDGMENT**
16  capacity as Attorney General of the United )
    States of America, et al.,                ) DATE:   April 28, 2011
17                                            ) TIME:   10:00 a.m.
             Defendants.                      ) PLACE: 2986 Bechelli Lane
18                                            )         Redding, CA
                                              ) JUDGE: Craig M. Kellison
19  _____ )

20       Pursuant to Fed. R. Civ. P. 56, Plaintiff Dwayne B. Burns, appearing *in propria persona,*

21  respectfully submits this Memorandum in Opposition to Defendants' Motion for Summary

22  Judgment and also in Support of Plaintiff Dwayne B. Burns' Cross-Motion for Summary

23  Judgment, and states as follows:[1]

24

25
   _____
26  [1]   The Parties' motions for summary judgment address the same issues, and for purposes of efficiency Plaintiff has combined his arguments in
       opposition to Defendants' motion for summary judgment with his arguments in support of his own cross-motion for summary judgment.
       Therefore, the arguments raised herein should be construed as applying to Plaintiff's respective positions as to both motions.

Page 1 – Plaintiff's Cross-Motion for Summary Jugment

## INTRODUCTION and PRELIMINARY STATEMENT

In this action, Plaintiff has brought claims against the defendants herein, *inter alia,* for violations of his constitutional rights under the Fourth Amendment to the United States Constitution under 42 U.S.C. § 1983, and other state common law claims, arising from the unlawful search and seizure of his two residences that took place on May 21, 2007, after Plaintiff called the police to report that his estranged wife was vandalizing the gate to his residence.

At the time this incident took place, Plaintiff owned two mobile homes in the same mobile home park, one located at Space 5, and the other located at Space 23, and was in the process of remodeling one and attempting to sell the other. Plaintiff's wife had moved out of both of Plaintiff's residences, and no longer had a key to either residence. This fact was made clear to the defendants. Both the Plaintiff and his estranged wife apprised the defendants that she no longer resided at the residence and that she no longer had a key to either residence.

Moreover, Plaintiff was present at the scene and emphatically denied the defendants' requests to search Plaintiff's vehicle and residences. Despite Plaintiff's refusal to grant the defendants permission to search his vehicle and residences, the defendants ignored Plaintiff's protestations and unlawfully entered both of Plaintiff's residences and rifled through Plaintiff's private property and effects, and proceeded to unlawfully seize numerous items from Plaintiff's residences. One of the items seized by the defendants was a pre-World War II era vintage firearm owned by the Plaintiff.

Defendants claim to have relied on the "consent" of Plaintiff's wife for authorization to enter and search Plaintiff's residences. This argument may have carried the day for the Defendants if the search had taken place more than a year earlier, and if Plaintiff's wife had indeed been a current co-occupant of the residences. Defendants' argument fails for two reasons. The first is the landmark United States Supreme Court decision that was handed down in the case of *Georgia v. Randolph*, 547 U.S. 103 (2006). This case was decided on March 22, 2006 which was more than a year before the incident giving rise to this action occurred. This decision

constituted binding authority, and clearly established the law concerning the searches of

Plaintiff's residences which took place on May 21, 2007.  Had the events giving rise to this

action took place in March of 2006, **and** if Plaintiff's wife been currently residing with the

Plaintiff, then Defendants' arguments would be valid.  Unfortunately for them they are not.

## FACTUAL AND PROCEDURAL BACKGROUND

In its Memorandum in Support of its Motion for Summary Judgment, defense counsel is

correct when he states that a number of Plaintiff's claims have been dismissed by the court.

What defense counsel fails to bring to the Court's attention is the fact that the Court dismissed a

number of Plaintiff's claim due to the Court's belief that the Second Amendment to the U.S.

Constitution was not applicable to the states.  In *McDonald v. Chicago*, 561 U.S. ___, 130 S.Ct.

3020 (2010), just a number of weeks after this Court dismissed Plaintiff's claim, the United

States Supreme Court held that the Second Amendment is indeed incorporated by the Due

Process Clause of the Fourteenth Amendment, and applies to the states.  In its opinion, the

Supreme Court's holding echoed many of the arguments that Plaintiff included in his

Memorandum in Opposition to Defendants' Motion to Dismiss,[2] and the supplemental filing

submitted by Plaintiff at the Court's request.[3]  As these claims were dismissed based on an

erroneous interpretation of federal law, Plaintiff will seek to have the Court's decision reviewed

by the Court of Appeals, and so this Court should give no weight to the fact that these claims

were dismissed.

On May 21, 2007, Plaintiff called police to report that his estranged wife had returned to

his residence and was in the process of tearing apart the front gate to his residence at Space 23 of

the mobile home park where he resided.  Between the time that Plaintiff called police and they

arrived on the scene, the sister of Plaintiff's estranged wife took Plaintiff's dog and fled down

the street.  Plaintiff got into his vehicle and attempted to locate the sister and his dog.  While

---

[2]  See docket no. 19 and 33.

[3]  See docket no. 31.

looking for his dog, Plaintiff called dispatch again and advised dispatch that his dog had been taken and that he was attempting to locate the sister and his dog. Dispatch advised Plaintiff to return to the mobile home park and wait for the officers there. This Plaintiff did. Plaintiff returned to the mobile home park and parked his vehicle near the entrance and got out to wait for the officers' arrival. While waiting for the officers to arrive, Plaintiff called his mother, Dolly Burns, and his brother, Dean Burns, who lived nearby and asked for them to come to his location. Shortly after ending the call to his mother, the defendants arrived on the scene. Defendant Kimple was the first officer to arrive on the scene.

As Plaintiff attempted to approach Kimple's police vehicle to explain the situation to him, Kimple drew his firearm on Plaintiff and ordered him to the ground. Kimple then handcuffed Plaintiff and conducted a search of Plaintiff's person. Kimple asked Plaintiff if he had a firearm, and Plaintiff replied in the negative.

Shortly thereafter, defendant Williams arrived on the scene and asked Plaintiff if he would consent to a search of his vehicle. Plaintiff told Williams that he did not want his vehicle searched. Despite Plaintiff's refusal to consent to a search of his vehicle, Williams went ahead and conducted a search of Plaintiff's vehicle. Williams then asked Plaintiff if he would consent to a search of either of his two residences. Plaintiff told Williams that he did not want anyone to search either of his residences.

Shortly after Plaintiff apprised Williams that he would not consent to a search of his residence, defendant Forrest arrived and Plaintiff again told Forrest that he did not want anyone to enter or search either of his residences or property.

Within minutes of the police arriving, Plaintiffs' mother, brother, and his brother's wife, Rebecca Burns, arrived at the scene. As Plaintiff was being led to one of the police cars, he gave his key ring containing the keys to his vehicle and his residences to his mother, and instructed her to not let the police into his residences.

////

A short time later, defendant Williams approached Plaintiff and advised Plaintiff that his estranged wife had consented to a search of Plaintiff's residences.  Plaintiff then told Williams that Plaintiff's wife was no longer living in either of the residences, did not have a key to either residence, and did not have the authority to consent to a search of the residences.  Defendant Williams asked Plaintiff for the keys to his residences, but Plaintiff responded that he did not have them.  The keys to Plaintiff's residence that the defendants used to enter were not provided by Plaintiff's estranged wife, but were taken from Plaintiff's mother by defendant Zufall.

Defendant Zufall approached Plaintiff's mother and told her that she needed the keys to Plaintiff vehicle in order to move it.  Plaintiff's mother gave the keys to defendant Zufall hoping to avoid having the defendants tow Plaintiff's vehicle.  Plaintiff's mother told defendant Zufall that Plaintiff did not want anyone to enter his residences, and defendant Zufall assured her that she was only going to move use the keys to move Plaintiff's truck.

Despite having told Plaintiff's mother that she would use the keys only to move Plaintiff's truck and then return the keys to her, Defendant Zufall didn't use the keys to move Plaintiff's truck, but to enter Plaintiff's locked residence at Space 23.  After letting herself and her fellow officers into Plaintiff's residence, Defendant Zufall proceeded to give Plaintiff's keys not back to Plaintiff's mother as she had said she would, but inexplicably gave the keys to Plaintiff's sister-in-law who had stolen Plaintiff's dog.  Defendant Zufall also let Plaintiff's sister-in-law enter Plaintiff's residence and remain there.

After rifling through Plaintiff's things, Defendant Zufall apparently found Plaintiff's vintage, pre-World War II model, 7.65 mm pistol which she seized and has never returned.  In addition to unlawfully entering and searching Plaintiff's residences, Defendant Zufall failed to give the Plaintiff a receipt for the firearm that she unlawfully seized, even though California Penal Code Section 12028.7 **mandates** that when a firearm is taken into custody by a law enforcement officer, the officer **shall issue** the person who possessed the firearm a receipt describing the firearm, and listing any serial number or other identification on the firearm.

As will be demonstrated below, genuine issues of material fact exist which prohibit the granting of defendants' Motion for Summary Judgment. Plaintiff is entitled to Partial Summary Judgment as to some of his claims because the defendants' purported authority to invade Plaintiff's residences based on the "consent" given by Plaintiff's estranged wife is not valid, and was in violation of clearly established law. The case law that defendants cite to the contrary is no longer good law as it was modified by the U.S. Supreme Court's landmark decision in *Georgia v. Randolph*, 547 U.S. 103 (2006).

The *Randolph* court held that without a search warrant, police have no right to search a house where one resident consents to the search while another resident objects. The Court distinguished this case from the "co-occupant consent rule" established in *United States v. Matlock*, 415 U.S. 164 (1974), and *Illinois v .Rodriguez*, 497 U.S. 177 (1990), which permitted one resident to consent in absence of the co-occupant. The *Randolph* decision was binding precedent that was decided many months before the incident which gave rise to this action took place. The law was clearly established, and the defendants were obligated to be aware of it and follow it.

In addition to violating the clearly established law of *Randolph,* the defendants' purported justification consisting of the consent given by Plaintiff's estranged wife would not have been valid notwithstanding *Randolph's* holding. As will be demonstrated below, Plaintiff's estranged wife was not a co-occupant at the time the searches took place.

## ARGUMENT

This Court must decide the Parties' motions for summary judgment in favor of Plaintiff because there exists no genuine issue of material fact with regard to the search of Plaintiff's residence located at Space 23. While it may be disputable whether Plaintiff consented to a search of his residence at Space 5 as the Defendants claim, the Defendants admit that Plaintiff was present at the scene, and refused to consent to a search of his residence at Space 23. The Defendants also agree that they lacked probable cause or a search warrant to conduct their search

of Space 23, and their only alleged authority for conducting the search of Space 23 was the "consent" given by Plaintiff's wife which did not override Plaintiff's refusal to consent, regardless of her status of a co-occupant. Accordingly, the Court should enter an order finding that Defendants Williams and Zufall violated Plaintiff's rights under the Fourth and Fourteenth Amendments, in violation of 42 U.S.C. § 1983, as alleged in Plaintiff's Third Claim for Relief.

## I.      SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). In deciding whether there is a genuine issue of material fact, the court is to view the record in the light most favorable to the party opposing the motion, giving the non-movant the benefit of all favorable inferences that can reasonably be drawn from the record and the benefit of any doubt as to the existence of any genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157-59 (1970). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

Viewing the evidence in the light most favorable to the nonmoving party, summary judgment is appropriate only if no genuine  issues of material fact remain for trial and the moving party is entitled to judgment as a matter of law. *Margolis v. Ryan*, 140 F.3d 850, 852 (9th Cir. 1998). When the moving party does not bear the ultimate burden of persuasion at trial,

1   the moving party must show that the nonmoving party does not have enough evidence to carry its

2   burden at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th

3   Cir. 2000).  Evidentiary decisions made in the context of summary judgment motions are

4   reviewed by a reviewing court for an abuse of discretion.  An incorrect interpretation of law is

5   considered an abuse of discretion. *Maffei v. Northern Ins. Co.*, 12 F.3d 892, 897 (9th Cir. 1993).

6        When deciding a motion for summary judgment, the Court is not to usurp the role of the

7   by weighing evidence and evaluating the credibility of the witnesses.  Instead, it is to make all

8   inferences in favor of the nonmoving party.  *See Hopkins v. Andaya*, 958 F.2d 881, 885 (9th Cir.

9   1992); *Peterson v. Kennedy*, 771 F.2d 1244, 1256 (9th Cir. 1985).

10

11  ## II.   DEFENDANTS MOTION FOR SUMMARY JUDGMENT MUST BE DENIED

12       ### A.   Defendants lacked probable cause, had no search warrant, and no valid
13              exception to the warrant requirement justified Defendants' intrusion into
14              Plaintiff's residences.

15       The Defendants admit that they lacked probable cause to enter or search Plaintiff's

16  residences and that their only alleged justification for doing so was the "consent" supposedly

17  given by Plaintiff's wife to the searches.  Probable cause exists where an officer possesses

18  "knowledge or reasonably trustworthy information sufficient to lead a person of reasonable

19  caution to believe that an offense has been or is being committed." *United States v. Lopez*, 482

20  F.3d 1067, 1072 (9th Cir. 2007), *cert. denied* ___ U.S. ___, 128 S.Ct. 335, 169 L.Ed.2d 235

21  (2007).  Probable cause must be determined based on "the totality of the circumstances known to

22  the officers at the time," *United States v. Alaimalo*, 313 F.3d 1188, 1193 (9th Cir. 2002) (internal

23  quotation marks omitted), and is to be determined on a purely objective basis. *Devenpeck v.*

24  *Alford,* 543 U.S. 146, 153, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004).

25       In the present case, Plaintiff Burns was already in custody and was not in a position to be

26

a danger to anyone.  There was no reason for any "person of reasonable caution" to believe that there was any justification to enter Plaintiff's residence.  The defendants could very easily have sought a search warrant if they believed they had probable cause to enter Plaintiff's residence.  Instead, they chose to trick Plaintiff's mother into giving them the keys to the residence because Plaintiff's wife did not have a key because she was not residing in either residence at the time. (*See* Declaration of Lori Burns ¶ 4; Declaration of Dolly Burns ¶ 6 – 8.)

Defendants attempt to justify their actions by claiming that Plaintiff's wife "consented" to the searches of Plaintiff's residences.  The problems that defendants have with this theory is (1) Plaintiff's wife was not a current co-occupant, and (2) Plaintiff's presence at the scene and refusal to consent overrode any authority to consent that Plaintiff's wife might arguably have had.

The Fourth Amendment recognizes a valid warrantless entry and search of premises when police obtain the voluntary consent of an occupant who shares, or is reasonably believed to share, authority over the area in common with a co-occupant who later objects to the use of evidence so obtained.  *Illinois v. Rodriguez*, 497 U.S. 177 (1990); *United States v. Matlock*, 415 U.S. 164 (1974).  The facts in this case, are distinguishable from those in *Rodriguez* and *Matlock*.  In *Georgia v. Randolph*, 547 U.S. 103 (2006), the Supreme Court held that in circumstances like the ones in the present case, a physically present co-occupant's stated refusal to permit entry prevails, rendering the warrantless search unreasonable and invalid as to him.

Defendants' Memorandum of Points and Authorities In Support of Defendants' Motion for Summary Judgment is curiously void of any mention of the *Randolph* case.  Defendants are correct when they say that it is "well-settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause to search is consent."

What defendants fail to further clarify is the circumstances wherein a consent is valid. Defendants cite *United States v. Lacey*, 225 F. App'x 478, 479 (9th Cir. 2007) for the proposition that consent by a co-occupant is sufficient. They are correct. Under some circumstances, that is true; however, they did not need to cite an unpublished case to establish that point. *Rodriguez* and *Matlock*, *supra*, established that a long time ago. Apparently, defendants are hoping that by citing a 2007 case that they can perhaps pull the wool over the Court's eyes. What *Lacey* fails to point out in its opinion is that the search in question in *Lacey* was undertaken while Mr. Lacey was not present.

Since the *Lacey* opinion failed to state whether Mr. Lacey was present when the search was conducted, and it also failed to mention the *Randolph* case, Plaintiff took it upon himself to investigate the facts of *Lacey*. On March 31, 2011, Plaintiff spoke to Mr. Steven Babcock who was trial counsel for Mr. Lacey. Mr. Babcock is a Federal Public Defender with the Federal Defenders of Montana's Billings Office, and his telephone number is (406) 259-2459. Mr. Babcock stated that there were actually two searches that took place in the *Lacey* case, and Mr. Lacey was not physically present when either search was conducted. This explains why the *Lacey* opinion made no reference to the *Randolph* case. While the defendants should be given credit for their efforts, their argument still fails. *Randolph* controls. It was clearly established law when the searches of Plaintiff's residences were conducted, and had been for more than thirteen months.

### B. Defendants are not entitled to qualified immunity for their actions.

Even had *Randolph* not been decided, Defendants' actions would still not be justified, and they would still not be entitled to qualified immunity. The Defendants' reliance on the consent of Plaintiff's wife would be justified only if they reasonably believed that she was a

proper tenant and occupant of Plaintiff's residences, or shared "mutual use and joint access" with the Plaintiff. *United States v. Ruiz*, 428 F.3d 877, 880 (9th Cir. 2005). In the present case, there is a question of fact regarding whether Defendants had **any** reason to believe Plaintiff's wife had mutual use and joint access. Plaintiff's wife states in her declaration filed herein that she told the officers that she no longer resided there, and she no longer had a key to either residence. *See* Declaration of Lori Burns ¶ 4. In addition to her telling the officers that she no longer lived there and had no key, Plaintiff, Plaintiff's brother, and sister-in-law told the officers the same thing. *See* Declaration of Dwayne Burns ¶ 16; Declaration of Dean Burns ¶ 8; and Declaration of Rebecca Burns ¶ 7.

As stated above, at the time of the events in question, the relevant Fourth Amendment law, as discussed above, was clearly established. Assuming the facts most favorable to the Plaintiff, no reasonable officer could have believed that the warrantless entries, or the searches conducted here was justified. *See Adams v. Speers*, 473 F.3d 989, 990-91 (Accepting the [plaintiff's] facts as true, this case falls within the obvious...."). Thus, defendants are not entitled to qualified immunity on Plaintiff's Fourth Amendment claims. Plaintiff is entitled to have the merits of his Fourth Amendment claims submitted to a jury.

### C. Each of the Defendants participated in the searches and are liable.

Defendants attempt to minimize their liability by claiming that this defendant did one thing, while another defendant did not do another thing. The fact is that each of the defendants actions consisted of "integral participation" as that term is illustrated in *Boyd v. Benton County,* 374 F.3d 773, 780 (9th Cir. 2004) (citing *Chuman v. Wright*, 76 F.3d 292, 293-94 (9th Cir. 1996)). The remaining defendants either entered into Plaintiff's residences or controlled and directed the actions of those who did. A number of witnesses saw Defendants Kimple, Williams, and Zufall

enter the residences, and Defendant Forrest admits that he gave the O.K. for the other defendants to conduct the search. *See* Declarations of Dwayne, Dean, Dolly, and Rebecca Burns, as well as Declaration of Defendant Forrest.

In *Melear v. Spears*, 862 F.2s 1177 (5th Cir. 1989), the defendant argued that he could not be held liable under section 1983 because he participated "less actively" in the search than the other officer and that he did not commit physical damage. Id. at 1186. The Fifth Circuit disagreed. It concluded that "[h]e was a full, active participant in the search, not a mere bystander." Id. "Because the jury could properly have found that the search was unconstitutional, it was also justified in finding both officers liable for their integral participation in the violation." Id. None of the defendants in the present case were "mere bystanders." They either were busy pointing weapons at the Plaintiff and handcuffing him prior to the searches, or they were actually entering and searching the residences or controlling those who did in a supervisory capacity.

While Defendants Kimple and Williams both attempt to deflect liability for the unlawful seizure of Plaintiff's firearm, they readily admit either discussing plans for the search with Defendants Zufall and Forrest or handcuffing Plaintiff while the searches took place. Kimple was the arresting officer, and the property clerk told Plaintiff that Plaintiff's firearm had been lodged in the property room of the Redding Police Department under Kimple's name. At trial, Plaintiff plans to subpoena the property room clerk and the records pertaining to Plaintiff's firearm.

Defendant Forrest attempts to minimize his involvement by stating that he did not physically participate in the searches, yet at the same time admits that they would not have taken place without his approval.

**D.  Plaintiff has pled a valid claim under Civil Code 52.1.**

Plaintiff has pled a claim under California Civil Code Section 52.1.  Section 52.1(b)

provides for a private right of action to be brought by a Plaintiff if the enjoyment of his  rights

secured by the Constitution or laws of the United States, or of rights secured by the Constitution

or laws of this state, has been interfered with, or attempted to be interfered with, as described in

subdivision (a) of that section.  Subdivision (a) states that:

> "if a person or persons, whether or not acting under color of law, interferes
> by threats, intimidation, or coercion, or attempts to interfere by threats,
> intimidation, or coercion, with the exercise or enjoyment by any individual
> or individuals of rights secured by the Constitution or laws of the United
> States, or of the rights secured by the Constitution or laws of this state, the
> Attorney General, or any district attorney or city attorney may bring a **civil**
> action for injunctive and other appropriate equitable relief in the name of
> the people of the State of California, in order to protect the peaceable
> exercise or enjoyment of the right or rights secured."

In the present case, Plaintiff's rights under the Constitution of the United States and

California were violated by the Defendants.  This was done through means of intimidation, i.e.,

pulling a firearm on Plaintiff, and handcuffing him, while threatening to prosecute him for

resisting arrest if he did not comply with their demands.  On facts nearly identical to this case,

the California Supreme Court held that Plaintiff's pleadings were adequate even though the

Plaintiff did not specifically state that he was threatened by the defendants.  *Venegas v. County of

Los Angeles,* 32 Cal.4th 820 (2004).

Plaintiff need not comply with California procedural laws when litigating in Federal

court, as the Federal courts are not bound by the procedural laws of the state within which they

reside, but only substantive law.  *See Erie Railroad Co. v. Thompkins*, 304 U.S. 64 (1938);

*Gasperini v. Center for Humanities*, 518 U.S. 415 (1996).

////

**III.    PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON HIS THIRD CLAIM FOR RELIEF AGAINST DEFENDANTS WILLIAMS AND ZUFALL MUST BE GRANTED**

There exists no genuine issue of material fact regarding the unlawful actions of

Defendants Williams and Zufall.  They both readily admit to entering and searching the

Plaintiff's residence located at Space 23.  They both claim the alleged consent of Plaintiff's wife

as their only justification for doing so.  *Georgia v. Randolph*, 547 U.S. 103 (2006), decided more

than a year before the unlawful search of Plaintiff's residence took place makes clear that under

the circumstances of this case, the Defendants' actions were unlawful and a violation of

Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution.

As the law was clearly established when the search of Plaintiff's residence occurred,

Defendants cannot claim protection of qualified immunity.  Summary Judgment must be entered

in Plaintiff's favor and against Defendants Williams and Zufall.

### CONCLUSION

For the reasons stated herein above, Defendants' Motion for Summary Judgment should

be DENIED, and Plaintiff's Motion for Summary Judgment on his Third Claim for Relief as to

Defendants Williams and Zufall should be GRANTED.

Respectfully submitted,

DWAYNE B. BURNS
Plaintiff, *In Pro Per*

---

**CERTIFICATE OF SERVICE**

I hereby certify that on April 14, 2011, a true and correct copy of the foregoing document

(including the accompanying exhibits, and attachments, if any) was served on all parties by

telecopy transmittal, hand delivery, and/or first-class U.S. mail, postage prepaid, to the attorney

of record named below, in compliance with Fed. R. Civ. P. 5.

Gary Brickwood, Esq.
BRICKWOOD LAW OFFICE
1135 Pine Street, Suite 210
Redding, CA 96001

Dwayne B. Burns, *In Pro Per*

Page 15 – Plaintiff's Cross-Motion for Summary Jugment

EXHIBIT A

1  Dwayne B. Burns
   P.O. Box 720157
2  Redding, CA 96099
   Tel. (530)638-1066
3
   Plaintiff, *In Pro Per*
4

5

6

7

8              **IN THE UNITED STATES DISTRICT COURT**

9            **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10                    **SACRAMENTO DIVISION**

11

12  DWAYNE B. BURNS,                     )   Case No.: 2:09-CV-0497-MCE-CMK
                                         )
13              Plaintiff,               )
                                         )
14        vs.                            )   **DECLARATION OF DEAN B. BURNS**
                                         )
15  MICHAEL MUKASEY, in his official     )
    capacity as Attorney General of the United )
16  States of America, et al.,           )
                                         )
17              Defendants.              )
                                         )
18                                       )
                                         )
19  _____      )

20        I, DEAN B. BURNS, declare as follows:

21        1. I am the brother of the Plaintiff, Dwayne B. Burns. I was present at the scene of the

22  events which gave rise to this action. I have never been convicted of a crime. I make this

23  declaration on personal knowledge, and if called to testify at trial, I could testify to the facts

24  stated herein.

25

26

Page 1 – Declaration of Dean B. Burns

2. On May 21, 2007, when the incident giving rise to this action occurred, I received a telephone call from my mother, Dolly Burns which prompted me to go to the scene of the incident.

3. After receiving the telephone call from my mother, I, and my wife Rebecca Burns, went to the scene of the incident which was not far from where we were.

4. When we arrived at the scene at 5812 Cedars Road, in Redding, California, I saw my brother, Dwayne Burns, had been handcuffed and was standing next to a police car which was situated not far from my brother's residence at 5812 Cedars Road, Space 23, in Redding, California.

5. My brother, Dwayne Burns, told me that he had given his keys to our mother, Dolly Burns, and that the police were attempting to search his residences. His residences were located at Space 5 and Space 23 there in the mobile home park. Dwayne Burns told me that he did not want anyone to enter or search either of his residences, and asked me to make sure the police didn't go into his residences.

6. After speaking with my brother, Dwayne Burns, I contacted Corporal William Forrest, who was standing nearby. I identified myself to Corporal Forrest as the brother of Dwayne Burns. I told Corporal Forrest that my brother, Dwayne Burns, did not want anyone to enter or search either of his residences, and that they should not do so.

7. Corporal Forrest then told me that he was aware of my brother's refusal to consent to a search, but that my sister-in-law, Lori Burns, had consented to the search of his residences. Corporal Forrest told me that the police were going to search both of my brother Dwayne Burns' residences, and that the police did not need Dwayne Burns' consent. Corporal Forrest responded that he had probable cause to do so, and that Lori Burns had consented to the searches.

8.  I then told Corporal Forrest that Lori Burns was not living at either residence, and did not have a key to either residence.  When I told Corporal Forrest this, he said that he had obtained a key to the residences.

9.  While I was present at the scene of the incident, I personally observed my brother, Dwayne Burns, tell a number of police officers, including Corporal Forrest and Officer Will Williams, that he did not want them to enter or search his residences.

10.  I witnessed officers from the Redding Police Department enter both residences and search them.  I saw a female officer who I later identified as Rebecca Zufall enter both residences, along with two male officers who I later identified as Kevin Kimple and Will Williams.

11.  I have been formerly employed as a private security officer, and have received training on California Penal Code Section 832 at Shasta Community College in Redding, California.

**I declare under penalty of perjury that the foregoing is true and correct.**
Executed on this 7th day of April, 2011.

_Dean B. Burns_
Dean B. Burns, Declarant

Page 3 – Declaration of Dean B. Burns

EXHIBIT B

Dwayne B. Burns
P.O. Box 720157
Redding, CA 96099
Tel. (530)638-1066

Plaintiff, *In Pro Per*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

DWAYNE B. BURNS,

     Plaintiff,

    vs.

MICHAEL MUKASEY, in his official
capacity as Attorney General of the United
States of America, et al.,

     Defendants.

Case No.: 2:09-CV-0497-MCE-CMK

**DECLARATION OF DOLLY J. BURNS**

I, DOLLY J. BURNS, declare as follows:

1. I am the mother of the Plaintiff, Dwayne B. Burns. I was present at the scene of the events which gave rise to this action. I have never been convicted of a crime. I make this declaration on personal knowledge, and if called to testify at trial, I could testify to the facts stated herein.

Page 1 – Declaration of Dolly J. Burns

2. On May 21, 2007, when the incident giving rise to this action occurred, I received a telephone call from my son, Dwayne Burns, which prompted me to go to the scene of the incident.

3. After receiving the telephone call from my son, I, and my husband, Richard Burns, went to the scene of the incident which was not far from where we were.

4. When we arrived at the scene at 5812 Cedars Road, in Redding, California, I saw my son, Dwayne Burns, had been handcuffed and was standing next to a police car which was parked not far from my son's residence at 5812 Cedars Road, Space 23, in Redding, California.

5. My son, Dwayne Burns, gave me his keys to his pickup truck and his residences, and told me that the police were attempting to search his residences. His residences were located at Space 5 and Space 23 there in the mobile home park. My son, Dwayne Burns, told me that he did not want anyone to enter or search either of his residences, and asked me to make sure the police didn't go into his residences.

6. Shortly after I spoke with my son, Dwayne Burns, I was contacted by a police officer who I subsequently learned was Officer Rebecca Zufall. Officer Zufall told me that she needed to move my son's truck and that I could either give her the keys to it, or it would be towed.

7. I then told Officer Zufall that my son did not want anyone to enter or search his residences. I told Officer Zufall that I would give her the keys if she promised to only use them to move the pickup truck belonging to my son, Dwayne Burns, and then return them to me. Officer Zufall agreed to this condition, so I gave her my son's keys.

8. Contrary to her promise, Officer Zufall used my son's keys to enter his residence at Space 23, and then gave the keys to my daughter-in-law's sister, Shari McClendon. The door to the residence at Space 23 was locked until Officer Zufall unlocked it. I saw her enter the

Page 2 – Declaration of Dolly J. Burns

residence at Space 23, and begin to search it.

9. I personally heard my son, Dwayne Burns, tell a number of the police officers who were present that he did not want anyone to enter or search his residences. I also told Officer Zufall that he did not want his residences searched.

10. I witnessed officers from the Redding Police Department enter both residences and search them. I saw Officer Rebecca Zufall enter both residences, along with two male officers who I later identified as Kevin Kimple and Will Williams.

**I declare under penalty of perjury that the foregoing is true and correct.**

Executed on this 7th day of April, 2011.

Dolly J. Burns, Declarant

___

Page 3 – Declaration of Dolly J. Burns

EXHIBIT C

1

Dwayne B. Burns
P.O. Box 720157
2   Redding, CA 96099
Tel. (530)638-1066
3

Plaintiff, *In Pro Per*
4

5

6

7

8                 **IN THE UNITED STATES DISTRICT COURT**

9                **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10                          **SACRAMENTO DIVISION**

11

12   DWAYNE B. BURNS,                    )   Case No.: 2:09-CV-0497-MCE-CMK
                                         )
.13              Plaintiff,              )
                                         )
14        vs.                            )   **DECLARATION OF DWAYNE B. BURNS**
                                         )
15   MICHAEL MUKASEY, in his official    )
     capacity as Attorney General of the United )
16   States of America, et al.,          )
                                         )
17              Defendants.              )
                                         )
18                                       )
                                         )
19

20        I, DWAYNE B. BURNS, declare as follows:

21        1. I am the Plaintiff in the above-entitled action.  I make this declaration on personal

22   knowledge, and if called to testify at trial, I could testify to the facts stated herein.

23        2. On the morning of May 21, 2007, I called the police because my estranged wife, Lori

24   Burns, was at the gate to my residence at 5812 Cedars Road, Space 23, in Redding, California.

25   She was tearing the front gate to my residence apart with her hands.

26

3. After tearing my front gate apart, my wife then went and attempted to take my dog. She handed my dog to her sister, Shari McClendon. Ms. McClendon then ran down the street and disappeared with my dog.

4. I got into my pickup truck and went looking for Ms. McClendon and my dog. While looking for my dog, I called dispatch again to advise them that I had left the scene and was attempting to locate my dog. I was advised by the dispatcher that I should return to the scene to wait for the police to arrive, so that is what I did.

5. I parked my pickup in the front of the mobile home park where I lived and had no sooner got out of my truck when Officer Kevin Kimple of the Redding Police Department arrived. I attempted to approach Officer Kimple when he drew his firearm on me and told me to get on the ground. I did as he commanded.

6. Officer Kimple then came and handcuffed me and searched me while I was lying on the ground. As I was being handcuffed and searched, Officer Will Williams of the Redding Police Department arrived at our location. I was then "handed over" to Officer Williams by Officer Kimple.

7. As I was sitting on the ground, Officer Williams asked me if I would consent to a search of my pickup truck. I told him no, but he went and searched it anyway. Officer Williams then asked me which space I lived in, and I told him I lived in Space 5. Officer Williams then asked me if I would consent to a search of my residence at Space 5, and I told him no.

8. A few minutes later Officer Williams walked me over to his car which was parked nearby. As I was standing next to his car, my mother, Dolly Burns, and my father arrived on the scene. My mother came up to me and I asked Officer Williams if I could give her my keys to my truck and my residence. Officer Williams agreed, so I gave them to her.

9.  When I gave my keys to my mother, I told her that the police were trying to search my residence, and to not let anyone into my residence.  A short time later, I was taken to Officer Williams' car and allowed to sit on the back seat with the door open and my legs and feet outside the car.

10.  At this point, Corporal Forrest arrived and came to where I was seated.  Corporal Forrest then said to Officer Williams, "Did you know that this guy is an F.B.I. informant?" I thought it was a strange thing for him to say since it had nothing to do with the situation at hand.

11.  I got the impression that Corporal Forrest harbored some sort of resentment against me, but I wasn't sure why.  Days earlier, I had contacted a personal acquaintance who is a special agent with the F.B.I. and had reported that a Kevin Bennett who lived in the park and worked as the maintenance man had a firearm in his possession.

12.  I reported this to the F.B.I. because I thought that Bennett was violating federal law because he had been convicted of a crime of domestic violence.  I had been contacted by an investigator with the Redding Police Department about the issue, and to my knowledge the police had indeed found a firearm in his possession.

13.  Even though I subsequently learned that Bennett had indeed been convicted of a crime of domestic violence, and had been found with a firearm in his possession, to my knowledge Bennett was not charged with a crime.  I thought this was strange.

14.  I later heard that Bennett had been an informant for the Redding Police Department. So when Corporal Forrest made the comment about me being an F.B.I. informant, and I observed what I thought to be his perceived hostility toward me, I thought perhaps he was upset about me contacting the F.B.I. about one of his informants.  This was the only explanation I could think of for Corporal Forrest's comment.

Page 3 – Declaration of Dwayne B. Burns

15.  As I was sitting in Officer Williams' car, Williams left and I was alone with Corporal Forrest.  I then told Corporal Forrest that I didn't want anyone to search my residence.  A few minutes later, Officer Williams returned and told Corporal Forrest that my wife Lori Burns had consented to a search of my residence at Space 5, and to a search of my residence at Space 23.

16.  I then told Corporal Forrest and Officer Williams that my wife was not residing in either residence, and that she did not have a key to either residence, and as such she did not have any authority to consent to a search of my residences.  I also made it perfectly clear to the both of them that I did not want anyone to enter or search either of my residences.

17.  A short time later I found out that Officers Williams, Kimple, and Zufall had indeed entered my residence at Space 5 and were conducting a search of it.  Officer Williams approached me shortly thereafter and asked me if I had a key to my residence at Space 23.  I told him that I did not have a key, and that I did not want anyone to enter my residence.

18.  A few minutes later, I learned that the officers had somehow got a key to my residence at Space 23 and were inside it.  Officer Kimple told me that they had found a firearm in my residence and had seized it.  I was never given a receipt for my firearm that was seized.

19.  Months later, after all of the charges that were filed against me as a result of my arrest that took place on May 21, 2007 had been dismissed, I contacted the property room of the Redding Police Department.  I was told that Officer Kimple had lodged my firearm that was seized on the date of the incident giving rise to this action into the property room, and that in order to get my firearm back I would need a clearance from the Department of Justice.

20.  Before I was arrested by Officer Kimple on May 21, 2007, I had my firearm in my possession.  After I was arrested by Officer Kimple on May 21, 2007, I no longer had my firearm.  It was not where I had left it.

21.  The firearm that was seized by Officer Kimple, and which I am referring to in this declaration is an Ortgies 7.65mm pistol.  It is a pre-World War II model vintage firearm.  It fires a .32 ACP (Automatic Colt Pistol) caliber round.  Its serial number is 49721.

22.  Subsequent to the incident which gave rise to this action, I learned that California Penal Code Section 12028.7 requires that law enforcement officers shall issue a receipt describing the firearm seized to the person from whom they seize the firearm.

23.  On May 21, 2007, when my firearm was seized, I was not the subject of any court order that would have restricted my possession of a firearm, nor I was a convicted felon.

24.  I have never been convicted of a "crime of domestic violence," as that term has been interpreted by the United States Justice Department.

**I declare under penalty of perjury that the foregoing is true and correct.**

Executed on this 7th day of April, 2011.

Dwayne B. Burns, Declarant

EXHIBIT D

Dwayne B. Burns
P.O. Box 720157
Redding, CA 96099
Tel. (530)638-1066

Plaintiff, *In Pro Per*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

**SACRAMENTO DIVISION**

DWAYNE B. BURNS,                                  ) Case No.: 2:09-CV-0497-MCE-CMK
                                                  )
                    Plaintiff,                    )
                                                  )
        vs.                                       ) **DECLARATION OF LORI A. BURNS**
                                                  )
MICHAEL MUKASEY, in his official                  )
capacity as Attorney General of the United        )
States of America, et al.,                        )
                                                  )
                    Defendants.                   )
                                                  )
                                                  )

I, LORI A. BURNS, declare as follows:

1. I am the ex-wife of the Plaintiff, Dwayne B. Burns. I was present at the scene of the

events which gave rise to this action. I have never been convicted of a crime. I make this

declaration on personal knowledge, and if called to testify at trial, I could to testify to the facts

stated herein.

Page 1 – Declaration of Lori A. Burns

2. On May 21, 2007, when the incident giving rise to this action occurred, I was not currently living in either the mobile home located at Space 5, nor the mobile home located at Space 23, of the Shady Oaks Mobile Home Park, the address of which is 5812 Cedars Road, Redding, CA 96001.

3. I moved out of the residences at Space 5 and Space 23 prior to this date and time, and I no longer had a key to either residence when this incident occurred.

4. On the date and time of this incident, I told the officers that I spoke with at the scene that I did own the trailers jointly with my then-husband, Dwayne Burns, who is the Plaintiff in this matter, but that I no longer resided there and no longer had a key to either residence.

5. I have read the Declaration of Kevin Kimple filed herein, and I am concerned about certain of his statements of fact which I believe are incorrect. The first of which is I did not have any bruise on my face on the date and time in question. I did not have any injuries to my person, and no photographs were taken of any injuries to my person by any member of the Redding Police Department.

6. I am familiar with defendant Kimple, and I would recognize him if I was asked to identify him, as I was arrested by defendant Kimple just days after the incident giving rise to this action took place, and spent a considerable amount of time in his presence.

7. Despite being arrested by defendant Kimple for allegedly assaulting my husband, no criminal complaint was ever filed against me. The impression that I was led to believe was that if I participated in the prosecution of my husband, then no legal action would be taken against me.

////

Page 2 – Declaration of Lori A. Burns

8. I do not recall ever speaking to defendant Kimple on May 21, 2007. I did speak to other officers at the scene, but to the best of my knowledge, defendant Kimple was not one of the officers that I spoke with.

9. When asked if I would consent to a search of the two residences, I said that I didn't mind, because I was no longer living in either one. When I was asked by one of the officers if I had a key to the residences, and I told him that I did not.

10. I told defendant Williams that my husband and I had argued the night before, but that it consisted merely of words being exchanged and some mutual shoving.

11. When asked by the officers if I had broken the gate to Space 23, I admitted that I did, but because I owned it, I thought I had a right to destroy it if I wanted to.

12. On October 3, 2007, while I was still married to the Plaintiff, I was stopped by defendant Zufall while driving. The first thing defendant Zufall said to me when I rolled my window down to speak to her was, "Dwayne, right?" I thought this was a strange thing for a police officer to say considering that my husband was not present at the time.

13. Defendant Zufall proceeded to give me a citation for not wearing a seat belt, despite the fact that I was wearing a seat belt. As I knew it would basically be my word against hers, I simply paid the citation. I believe this may have been defendant Zufall's attempt to intimidate and harass me for not assisting in the prosecution of my then-husband who is the Plaintiff in this action.

**I declare under penalty of perjury that the foregoing is true and correct.**

Executed on this 21st day of March, 2011.

Lori A. Burns, Declarant

Page 3 – Declaration of Lori A. Burns

EXHIBIT E

Dwayne B. Burns
P.O. Box 720157
Redding, CA 96099
Tel. (530)638-1066

Plaintiff, *In Pro Per*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

**SACRAMENTO DIVISION**

DWAYNE B. BURNS,                                    ) Case No.: 2:09-CV-0497-MCE-CMK
                                                    )
                  Plaintiff,                        )
                                                    )
        vs.                                         ) **DECLARATION OF REBECCA M.**
                                                    ) **BURNS**
MICHAEL MUKASEY, in his official                    )
capacity as Attorney General of the United          )
States of America, et al.,                          )
                                                    )
                  Defendants.                       )
                                                    )
                                                    )

I, REBECCA M. BURNS, declare as follows:

1. I am the sister-in-law of the Plaintiff, Dwayne B. Burns.  I was present at the scene of the events which gave rise to this action.  I have never been convicted of a crime.  I make this declaration on personal knowledge, and if called to testify at trial, I could testify to the facts stated herein.

Page 1 – Declaration of Rebecca M. Burns

2. On May 21, 2007, when the incident giving rise to this action occurred, I received a telephone call from my mother-in-law, Dolly Burns, which prompted me to go to the scene of the incident.

3. After receiving the telephone call from Dolly Burns, I, and my husband, Dean Burns, went to the scene of the incident which was not far from where we were.

4. When we arrived at the scene at 5812 Cedars Road, in Redding, California, I saw my brother-in-law, Dwayne Burns, had been handcuffed and was standing next to a police car which was parked not far from my brother-in-law's residence at 5812 Cedars Road, Space 23, in Redding, California.

5. While at the scene of the incident, I personally heard my brother-in-law, Dwayne Burns, tell a number of the police officers who were present that he did not want anyone to enter or search his residences.

6. While at the scene of the incident, my husband, Dean Burns, and I spoke briefly with Corporal William Forrest. I heard Corporal Forrest say that he did not need Dwayne Burns' consent to search his trailers because he had probable cause and because Lori Burns gave her consent to the searches.

7. I, and others who were present, told Corporal Forrest that Lori Burns was not currently residing in either of the residences belonging to Dwayne Burns, and that she did not have a key to either residence.

8. My brother-in-law, Dwayne Burns, owned two residences in the mobile home park. One was located at Space 5, and the other was located at Space 23. I witnessed officers from the Redding Police Department enter both of the residences belonging to Dwayne Burns and search

them.  I saw an officer who I later learned was Officer Rebecca Zufall enter both residences,

along with two male officers who I later identified as Kevin Kimple and Will Williams.

**I declare under penalty of perjury that the foregoing is true and correct.**

Executed on this 7th day of April, 2011.

Rebecca M. Burns, Declarant

Page 3 – Declaration of Rebecca M. Burns

EXHIBIT F

1 | **GARY BRICKWOOD, State Bar No. 94892**
BRICKWOOD LAW OFFICE
2 | 1135 Pine Street, Suite 210
Redding, CA 96001
3 | (530) 245-1877
(530) 245-1879 (fax)
4 |
Attorneys for Defendants TOM BOSENKO, CITY OF REDDING,
5 | PETER HANSEN, KEVIN KIMPLE, WILLIAM FORREST, WILL WILLIAMS
and REBECCA ZUFALL
6 |
7 |
UNITED STATES DISTRICT COURT
8 |
FOR THE EASTERN DISTRICT OF CALIFORNIA
9 |
DWAYNE B. BURNS,                    Case No.2:09-CV-00497-MCE-CMK
10 |
        Plaintiff,
11 |
vs.                        **RESPONSE TO INTERROGATORIES**
12 |
MICHAEL MUKASEY, in his official
13 | capacity as Attorney General of the
United State of America, et al.,
14 |
        Defendants.
15 | _____/
16 |
REQUESTING PARTY:   Plaintiff, DWAYNE BURNS
17 |
RESPONDING PARTY:   Defendant, WILL WILLIAMS
18 |
SET NO.:           ONE
19 |
        Defendant WILL WILLIAMS hereby responds to the First Set of
20 |
Interrogatories propounded by Plaintiff DWAYNE BURNS on August 13,
21 |
2010 as follows:
22 |
23 |
**INTERROGATORY NO. 1**: State your full name, residence address, business
24 |
address, date and place of birth, height, weight, social security
25 |
number, marital status, driver's license number, employer, badge
26 |
number, and/or departmental serial number (DSN).
27 |
28 |
**ANSWER**: Objection, the interrogatory is compound and is overbroad and

1 | policy.

2

3 | **ANSWER**: Yes.  The City of Redding is a participant in a Joint Powers
4 | Agreement.  There is no specific policy number.

5

6 | **INTERROGATORY NO. 12**: Did you conduct, or assist in the conduct, of
7 | a search of the interior of Plaintiff's residence located at 5812
8 | Cedars Road, Space 5, on or about May 21, 2007?

9 |     If so, set forth:

10 |     (a)   whether you were instructed to conduct said search of
11 |           Plaintiff's residence by anyone in the Redding Police
12 |           Department, or anyone else, and the name, badge number, and
13 |           title of any supervisor, or anyone else, who instructed you
14 |           to conduct said search;

15 |     (b)   whether said search was authorized by a search warrant, or
16 |           any other reason or reasons which gave you the authority to
17 |           conduct such search;

18 |     (c)   any and all material facts that you contend gave you
19 |           authority to conduct said search, and the authority by
20 |           which you felt authorized to conduct said search.

21

22 | **ANSWER**: I participated in a search of space 5.  The search was
23 | conducted after consent was obtained from Lori Burns and Dwayne Burns.

24

25 | **INTERROGATORY NO. 13**: Did you conduct, or assist in the conduct of,
26 | a search of the interior of the Plaintiff's residence located at 5812
27 | Cedars Road, Space 23, on or about May 21, 2007?

28 |     If so, set forth:

---

1        (d)   whether you were instructed to conduct said search of

2                Plaintiff's residence by anyone in the Redding Police

3                Department, or anyone else, and the name, badge number, and

4                title of any supervisor, or anyone else, who instructed you

5                to conduct said search;

6        (e)   whether said search was authorized by a search warrant, or

7                any other reason or reasons which gave you the authority to

8                conduct such search;

9        (f)   any and all material facts that you contend gave you

10               authority to conduct said search, and the authority by

11               which you felt authorized to conduct said search.

12

13 **ANSWER**: I participated in a search of space 23.  The search was

14 conducted after consent was obtained from Lori Burns.

15

16 **INTERROGATORY NO. 14**: Have you ever been subject to a restraining

17 order:

18     If so, set forth:

19       (a)   the date that each restraining order was granted;

20       (b)   the court or jurisdiction that granted the restraining

21               order;

22       (c)   the effective dates that the restraining order(s) were in

23               force; and

24       (d)   the names, addresses and telephone numbers of the

25               individual(s) protected by each such restraining order.

26

27 **ANSWER**:  Responding party objects that the interrogatory seeks

28 information that is neither relevant to the subject of the lawsuit nor

1   **ANSWER**: Responding party incorporates herein the response to
2   Interrogatory No. 17.

3

4   **INTERROGATORY NO. 19**: Have you or anyone acting on your behalf
5   interviewed any individual concerning the incident?  If your answer
6   is yes, for each individual state the name, address, and telephone
7   number of the individual interviewed, the date of the interview, and
8   the name, address, and telephone number of the person who conducted
9   the interview.
10  **ANSWER**: No, except as described in the police report.

11

12  **INTERROGATORY NO. 20**: Have you or anyone acting on your behalf
13  obtained a written or recorded statement from any individual
14  concerning the incident?  If your answer is yes, for each statement
15  state the name, address, and telephone number of the individual from
16  whom the statement was obtained, the date the statement was obtained,
17  the named, address, and telephone number of the person who obtained
18  the statement, and the name, address, and telephone number of each
19  person who has the original statement or a copy.

20

21  **ANSWER**: No.

22

23

24  DATED: September 15, 2010.              BRICKWOOD LAW OFFICE

25

26

27                                         GARY BRICKWOOD
                                           Attorney for Defendants
28

---

INTERROGATORIES, SET ONE                                          12

1

## **VERIFICATION**

2

3      I am a Defendant in the foregoing action, and have read the
4 **Response to Interrogatories, Set No. One**, know the contents thereof
and verify that the same is true of my own knowledge.
5
       I declare, under the penalty of perjury, under the laws of the
6 State of California, that the foregoing is true and correct of my own
knowledge.
7
       Executed on _____, 2010, at Redding, California.
8

9      _____
                                   WILL WILLIAMS
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1