1   **GARY BRICKWOOD, State Bar No. 94892**
    BRICKWOOD LAW OFFICE
2   1135 Pine Street, Suite 210
    Redding, CA 96001
3   (530) 245-1877
    (530) 245-1879 (fax)
4

    Attorneys for Defendants KEVIN KIMPLE,
5   WILLIAM FORREST, WILL WILLIAMS
    and REBECCA ZUFALL
6

7

8               UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10 DWAYNE B. BURNS,           Case No.2:09-CV-00497-MCE-CMK

11         Plaintiff,       **REPLY IN SUPPORT OF MOTION FOR**
                           **SUMMARY JUDGMENT**
12 vs.
                        DATE : April 28, 2011
13 MICHAEL MUKASEY, in his official  TIME : 10:00 a.m.
    capacity as Attorney General of the  PLACE: 2986 Bechelli Lane
14 United State of America, et al.,          Redding, CA
                        JUDGE: Craig M. Kellison
15         Defendants.
    ——————————————————————/
16

17                 **I. INTRODUCTION**

18       Generally speaking, plaintiff's remaining claims consist of two

19 state law claims and a civil rights claim alleging an unlawful search

20 and seizure. Plaintiff's evidence submitted in opposition focuses on

21 the federal civil rights cause of action; as detailed below, there are

22 no disputed issues of fact with respect to the state law claims and

23 defendants are entitled to summary judgment as a matter of law.

24 Plaintiff's opposition on the federal civil rights claim depends upon

25 never before disclosed evidence in the form of witness declarations

26 and an overbroad interpretation of the law applicable to consent

27 searches and qualified immunity. Even so, plaintiff's opposition

28 fails to raise a triable issue of fact.

REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT         **1**

1    The state law claims are, respectively, for a violation of Civil
2    Code Section 52 based on the search of his property, and trespass to
3    chattels with respect to the seizure of plaintiff's firearm.   The
4    motion for summary judgment asserts three defenses: (1) that plaintiff
5    has not filed the required government tort claim for either cause of
6    action; (2) that plaintiff cannot state a cause of action under Civil
7    Code Section 52 as a matter of law, and (3) that plaintiff has sued
8    the wrong officer for the seizure of the weapon.   Plaintiff does not
9    directly oppose any of these issue; rather he attacks them indirectly.
10   First, he does not deny that he did not file a tort claim as required
11   by law, nor does he even mention the issue in his opposition; rather
12   he merely objects to the declaration of Carmona that no claim is on
13   file with the City, thus ignoring that his complaint is defective on
14   its face and fails to state a cause of action for either tort. Second,
15   he does not contest that he may not state a cause of action under
16   Civil Code Section 52, instead arguing that he has facts (although
17   none are pled) that he can state a cause of action under Section 52.1,
18   ignoring the fact that those claims were long ago dismissed and
19   plaintiff did not amend. Plaintiff does not present any argument on
20   the trespass to chattels cause of action, and should therefore be
21   deemed to have acceded to entry of judgment on that claim.

22   **II.  <u>DEFENDANTS ARE ENTITLED TO JUDGMENT ON THE EIGHTH AND NINTH</u>**
23   **<u>CAUSES OF ACTION AS A MATTER OF LAW</u>**

24   As noted, defendants have raised three defenses to the existing
25   causes of action under Civil Code Section 52 and trespass to chattels:
26   failure to file a government tort claim, failure to state a cause of
27   action under Section 52, and failure to sue the correct defendant on
28   the trespass to chattels claim.   Plaintiff's points and authorities

address none of these defenses. Instead, he argues solely that he has stated facts sufficient to constitute a cause of action under Civil Code Section 52.1, a cause of action that was dismissed in the findings and recommendations of Magistrate Kellison in November, 2009, and whose findings were adopted by Judge England in his Order filed February 12, 2010. Until his opposition, plaintiff has never suggested that his complaint could be amended. His excuse? Only that he is not required to comply with California state procedural rules while in federal court.

No doubt this point of law is correct, but it ignores the fact that plaintiff is bound by the Federal Rules of Civil Procedure, and under those rules, a party may amend its pleadings only with the opposing party's written consent or the court's leave. (FRCP Rule 15 (a)(2).  While, it is true that

> "the Federal Rules of Civil Procedure favor a liberal approach to amendments, amendments may not be used as a device to prevent speedy and efficient resolution of cases. Where, as here, a party proposes amendments while a summary judgment motion is pending, the court must look closely to determine whether the proposed amendment is a tactic to prevent termination of the case on summary judgment."

Schlacter-Jones v. General Telephone of California, 936 F.2d 435, 443 (9th Cir. 1991); Lockheed Martin Corp. V. Network Solutions, Inc., 175 F.R.D. 640, 645 (C.D. Cal. 1997). Plaintiff's tangential opposition is a frank admission that he cannot state a cause of action under Civil Code Section 52. And with no motion pending or leave to amend, despite the dismissal of his claim under Section 52.1 over a year ago, the Court should construe the opposition that is presented as nothing but an attempt to avoid summary judgment.

In any event, plaintiff's points and authorities do not mention his failure to plead compliance with the government claims filing

1   requirement that are a jurisdictional prerequisite to his state law

2   claims. To reiterate, nowhere does the first amended complaint allege

3   that Plaintiff has at any time *filed* a *written* claim for damages with

4   the City of Redding, as required by Government Code Section 905, much

5   less filed a claim within the six months allowed by statute. In his

6   declaration, plaintiff concedes as much, instead arguing only that

7   "file a claim" is "ambiguous" and that in any event "policy makers for

8   the City of Redding are aware of Burns' claim." (Plaintiff's Response

9   to Defendants' Statement of Undisputed Facts, at paragraph 18.)

10      This is patently insufficient.   Under Government Code Section

11  945.4,

12      "no suit for money or damages may be brought against a
        public entity on a cause of action for which a claim is
13      required to be presented in accordance with Chapter 1
        (commencing with Section 900) and Chapter 2 (commencing
14      with section 910) of Part 3 of this division *until a
        written claim therefore has been presented* to the public
15      entity and has been acted upon by the board, or has been
        deemed to have been rejected by the board, in accordance
16      with Chapters 1 and 2 of Part 3 of this division.']".

17  Plaintiff does not allege or attempt to prove here that he submitted

18  a written claim, and he further ignores that the contents of the

19  required written claim *are specified by statute.*   Government Code

20  Section 910.   Last but not least, plaintiff ignores that proof of the

21  filing of a written claim in compliance with statutory requirements

22  is part of *his* burden of proof, both by pleading and by evidence.   He

23  has failed to carry that burden, and his state law tort claims against

24  these public employees necessarily fail.   And the fact of the matter

25  is, as established by the Declaration of Chris Carmona, that plaintiff

26  did not file such a claim.   Plaintiff having failed to present any

27  claim to the City of Redding, his state law claims against the

28  individual officers as alleged in the seventh, eighth and ninth causes

REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT                    **4**

1  of action are barred.    Given the foregoing, it is unnecessary to

2  delve into the question of whether plaintiff has named the correct

3  officer in his claim for trespass to chattels; his failure to file a

4  claim necessarily eliminates his claim irrespective of the identity

5  of the particular public employee.   However, defendants do wish to

6  object for the record as to plaintiff's alleged "evidence" as

7  contained in his declaration concerning a call to the Evidence

8  Technician and the Redding Police Department: that evidence is the

9  rankest form of hearsay. Moreover, plaintiff does not and cannot

10 dispute that it was not Officer Kimple who seized his firearm; despite

11 his various allegations, there is no witness he has identified who

12 will testify to this claimed fact.

13     Wherefore, defendants request that these claims be summarily

14 adjudicated in their favor as a matter of law.

15     **III.  DEFENDANTS REASONABLY RELIED UPON THE STATEMENTS OF**

16     **PLAINTIFF'S WIFE , AND PLAINTIFF WAS NOT "PRESENT" WITHIN THE**

17     **MEANING OF THE RULE OF GEORGIA V. RANDOLPH**

18     Primarily, the Court should put aside the issue plaintiff raises

19 about "probable cause"; contrary to plaintiff's contentions in his

20 opposition, defendants do not "admit" that they lacked probable cause,

21 they simply do not address the issue in the context of this motion.

22     Plaintiff agrees that government officials enjoy qualified

23 immunity from civil damages unless their conduct violates "clearly

24 established statutory or constitutional rights of which a reasonable

25 person would have known."   "The principles of qualified immunity

26 shield an officer from personal liability when an officer reasonably

27 believes that his or her conduct complies with the law. Police

28 officers are entitled to rely on existing lower court cases without

1   facing personal liability for their actions." Pearson v. Callahan, 555

2   U.S. 223, 129 S. Ct. 808, 823, 172 L. Ed. 2d 565 (2009).

3        Plaintiff concedes, as detailed in United States v. Matlock, 415

4   U.S. 164, 169-75, 94 S. Ct. 988, 992-95, 39 L. Ed. 2d 242 (1974) that

5   a "clearly established" exception to the warrant requirement for a

6   search of a residence is a consent.  Plaintiff argues, relying upon

7   the United States Supreme Court decision in Georgia v. Randolph, that

8   it was "clearly established" that there are circumstances where the

9   consent by one co-occupant will not suffice.  Defendants respectfully

10  submits that plaintiff reads Randolph too broadly, and the distinction

11  he seeks to make is not a valid one.

12       To begin, one must recognize that the decision in Randolph does

13  not overrule the decision in Matlock; instead it merely explores

14  technical differences between circumstances where an objection by a

15  co-occupant will be given effect within the context of a motion to

16  suppress evidence.  And Matlock, at 170-171, describes the well-

17  settled rule that one co-occupant may validly consent to a search even

18  when another co-occupant objects:

19       "It has been assumed by the parties and the courts below
         that the voluntary consent of any joint occupant of a
20       residence to search the premises jointly occupied is valid
         against the co-occupant, permitting evidence discovered in
21       the search to be used against him at a criminal trial. This
         basic proposition was accepted by the Seventh Circuit in
22       this case, 476 F.2d at 1086, as it had been in prior
         cases,4 and has generally been applied *170 in similar
23       circumstances by other courts of appeals,5 and **993
         various state courts.6 This Court left open, in Amos v.
24       United States, 255 U.S. 313, 317, 41 S.Ct. 266, 267, 65
         L.Ed. 654 (1921), the question whether wife's permission to
25       search the residence in which she lived with her husband
         could 'waive his constitutional rights,' but more recent
26       authority here clearly indicates that the consent of one
         who possesses common authority over premises or effects is
27       valid as against the absent, nonconsenting person with whom
         that authority is shared. In Frazier v. Cupp, 394 U.S. 731,
28       740, 89 S.Ct. 1420, 1425, 22 L.Ed.2d 684 (1969), the Court
         'dismissed rather quickly' the contention that the consent

REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT                    6

of the petitioner's cousin to the search of a duffel bag, which was being used jointly by both men and had been left in the cousin's home, would not justify the seizure of petitioner's clothing found inside; joint use of the bag rendered the cousin's authority to consent to its search clear. Indeed, the Court was unwilling to engage in the 'metaphysical subtleties' raised by Frazier's claim that his cousin only had permission to use one compartment within the bag. By allowing the cousin the use of the bag, and by leaving it in his house, Frazier was held to have assumed the risk that his cousin would allow someone else to look inside. Ibid. More generally, in Schneckloth v. Bustamonte, 412 U.S., at 245-246, 93 S.Ct., at 2057, we noted that our prior recognition of the constitutional validity of 'third party consent' searches in cases like Frazier and Coolidge v. New Hampshire, 403 U.S. 443, 487-490, 91 S.Ct. 2022, 2048, 29 L.Ed.2d 564 (1971), supported the view that a consent search is fundamentally different in nature from the waiver of a trial right. These cases at least make clear that when the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected."

The decision in <u>Georgia v. Randolph</u> does not abrogate Matlock or the long line of cases establishing the "consent" objection. Rather, as pointed out in the dissent, the decision merely carves out an exception to the consent rule under a narrow set of circumstances:

Chief Justice ROBERTS, with whom Justice SCALIA joins, dissenting. The Court creates constitutional law by surmising what is typical when a social guest encounters an entirely atypical situation. The rule the majority fashions does not implement the high office of the Fourth Amendment to protect privacy, but instead provides protection on a random and happenstance basis, protecting, for example, a co-occupant who happens to be at the front door when the other occupant consents to a search, but not one napping or watching television in the next room. The cost of affording such random protection is great, as demonstrated by the recurring cases in which abused spouses seek to authorize police entry into a home they share with a nonconsenting abuser. In his dissent, joined by Justice Scalia, Justice Roberts said:

The correct approach to the question presented is clearly mapped out in our precedents: The Fourth Amendment protects privacy. If an individual shares information, papers, or places with another, he assumes the risk that the other

person will in turn share access to that information or those papers or places with the government. And just as an individual who has shared illegal plans or incriminating documents with another cannot interpose an objection when that other person turns the information over to the government, just because the individual happens to be present at the time, so too someone who shares a place with another cannot interpose an objection when that person decides to grant access to the police, simply because the objecting individual happens to be present.

A warrantless search is reasonable if police obtain the voluntary consent of a person authorized to give it. Co-occupants have "assumed the risk that one of their number might permit [a] common area to be searched." United States v. Matlock, 415 U.S. 164, 171, n. 7, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). Just as Mrs. Randolph could walk upstairs, come down, and turn her husband's cocaine straw over to the police, she can consent to police entry and search of what is, after all, her home, too.

Georgia v. Randolph, 547 U.S. 103, 127-28, 126 S. Ct. 1515, 1531, 164 L. Ed. 2d 208 (2006). Seeking to assuage these objections, the majority replied:

But this case has no bearing on the capacity of the police to protect domestic victims. The dissent's argument rests on the failure to distinguish two different issues: when the police may enter without committing a trespass, and when the police may enter to search for evidence. No question has been raised, or reasonably could be, about the authority of the police to enter a dwelling to protect a resident from domestic violence; so long as they have good reason to believe that such a threat exists, it would be silly to suggest that the police would commit a tort by entering, say, to give a complaining tenant the opportunity to collect belongings and get out safely, or to determine whether violence (or threat of violence) has just occurred or is about to (or soon will) occur, however much a spouse or other co-tenant objected. (And since the police would then be lawfully in the premises, there is no question that they could seize any evidence in plain view or take further action supported by any consequent probable cause, see Texas v. Brown, 460 U.S. 730, 737-739, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) (plurality opinion).) Thus, the question whether the police might lawfully enter over objection in order to provide any protection that might be reasonable is easily answered yes. See 4 LaFave § 8.3(d), at 161 ("[E]ven when ... two persons quite clearly have equal rights in the place, as where two individuals are sharing an apartment on an equal basis, there may nonetheless sometimes exist a basis for giving greater recognition to the interests of

1    one over the other.... [W]here the defendant has victimized
2    the third-party ... the emergency nature of the situation
     is such that the third-party consent should validate a
3    warrantless search despite defendant's objections"
     (internal quotation marks omitted; third omission in
4    original)). The undoubted right of the police *119 to enter
     in order to protect a victim, however, has nothing to do
5    with the question in this case, whether a search with the
     consent of one co-tenant is good against another, standing
6    at the door and expressly refusing consent

7    Georgia v. Randolph, 547 U.S. 103, 118-19, 126 S. Ct. 1515, 1525-26,

8    164 L. Ed. 2d 208 (2006)

9        In his concurrence, Justice Breyer said:

10       If a possible abuse victim invites a responding officer to
         enter a home or consents to the officer's entry request,
11       that invitation (or consent) itself could reflect the
         victim's fear about being left alone with an abuser. It
12       could also indicate the availability of evidence, in the
         form of an immediate willingness to speak, that might not
13       otherwise exist. In that context, an invitation (or
         consent) would provide a special reason for immediate,
14       rather than later, police entry. And, entry following
         invitation or consent by one party ordinarily would be
15       reasonable even in the face of direct objection by the
         other. That being so, contrary to THE CHIEF JUSTICE'S
16       suggestion, post, at 1537, today's decision will not
         adversely affect ordinary law enforcement practices.

17

18   Georgia v. Randolph, 547 U.S. 103, 126-27, 126 S. Ct. 1515, 1530-31,

19   164 L. Ed. 2d 208 (2006)

20   Justice BREYER, concurring.

21   So let us turn now to the actual holding of Randolph and see where

22   that leads us in the context of this case:

23       Second, a fine line must be drawn to avoid undercutting
         *Matlock*-where the defendant, though not present, was in a
24       squad car not far away-and *Rodriguez*-where the defendant
         was asleep in the apartment and could have been roused by
25       a knock on the door; if a potential defendant with
         self-interest in objecting is in fact at the door and
26       objects, the co-tenant's permission does not suffice for a
         reasonable search, whereas the potential objector, nearby
27       but not part of the threshold colloquy, loses out. Such
         formalism is justified.

28

REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT                    9

Thus, the rule espoused in <u>Matlock</u> survived <u>Randolph</u>, and was valid precedent at the time of this search and seizure. Moreover, plaintiff's own evidence establishes that he was not in the residence, but in a patrol car nearby, just like the defendant in Matlock. Finally, although plaintiff now seeks to muddy the water with the self-serving legal conclusions drawn in his "supplemental answers to interrogatories, his original answers (attached as Exhibit A to the Supplemental Declaration of Gary Brickwood served and filed herewith), and especially answers to interrogatories eight through thirteen, plaintiff and his spouse owned both residence, both of their names were on the leases for the rental agreements for the spaces, and both lived in those residences. He only waffled about who had "access" at the time of the incident (see answer to interrogatory no. 14), claiming that only he had "access" (parentheses his), which answer is explained by his declaration filed here that he was the only one at that moment in time who had a key. Thus what we see is that plaintiff is attempting to use his ability to physically prevent his wife from entering into a legal right enforceable as a constitutional violation to deprive her of her real interest in the property as owner and tenant of the mobile space, a residence in which she in fact lived at the time of the incident.

Defendants respectfully submit that under the totality of the circumstances they had a reasonable belief under <u>Matlock</u> that they had obtained a valid consent to entry and search the mobile homes for a firearm that presented a direct risk of harm to a domestic violence victim. As noted in the moving papers and not contested in the opposition, California law specifically allows for the seizure of firearms after a domestic violence arrest. Specifically, Penal Code

1   section 12028.5(b) provides:

2       (b) A sheriff, undersheriff, deputy sheriff, marshal,
        deputy marshal, or police officer of a city..., who is at
3       the scene of a domestic violence incident involving the
        threat to human life or a physical assault, shall take
4       temporary custody of any firearm or other deadly weapon in
        plain sight or discovered pursuant to a consensual or other
5       lawful search as necessary for the protection of the police
        officer or other persons present."

6

7       To summarize, the circumstance here is not a Motion to Suppress

8   improperly obtained evidence, but rather the scene of a domestic

9   disturbance. Both the majority and the dissent in Randolph agree that

10  domestic disturbance calls are a special circumstance where the

11  officers may rely on the consent of one co-habitant even though the

12  other objects. The purpose of the police officer in this circumstance

13  is not to gather evidence but to keep the peace. And this is exactly

14  what these officers did; with the consent of one spouse, they seized

15  a handgun that presented a realistic threat of harm, and were

16  authorized to do so under code and constitutional principles.

17  Moreover, in this circumstance it is not critical to proof of this

18  defense that there was actual consent, only that the officers believed

19  they had obtained a valid consent. These factors are amply

20  demonstrated by the undisputed evidence and not contradicted by

21  plaintiff's opposing evidence. Wherefore, defendants and each of them

22  respectfully request that the court grant them summary judgment as to

23  plaintiff's claims of violations of his constitutional rights.

24  DATED: April 21, 2011.                    BRICKWOOD LAW OFFICE

25

26                                            _____

27                                            GARY BRICKWOOD

28

---

1
## PROOF OF SERVICE

2      I am a citizen of the United States, over the age of 18 years,
and not a party to the within action.  I am employed in Shasta County,
3 California, by BRICKWOOD LAW OFFICE, at their offices located at
1135 Pine Street, Suite 210, Redding, California, 96001.  On this
4 date, I served the following document(s): **REPLY IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT**

5

6   ✓   by placing a true copy thereof for collection and mailing, in the course of
        ordinary business practice, with other correspondence of Brickwood Law Office
7       at 1135 Pine Street, Suite 210, Redding, Shasta County, California, enclosed
        in a sealed envelope with postage thereon fully prepaid, addressed as set
8       forth below.  I am familiar with the practice of Brickwood Law Office for
        collection and processing of correspondence for mailing with the United
9       States Postal Service.  It is the practice that correspondence is deposited
        with the United States Postal Service the same day it is submitted for
        mailing.

10

11 _____  by placing a true copy thereof in a box or other facility regularly
        maintained by _____ U.P.S. / _____ Federal Express, in a sealed envelope or
        package designated by _____ U.P.S. / _____ Federal Express, with delivery
12      fees paid or provided for, addressed as set forth below.

13 _____  by personally delivering a true copy thereof to the person and at the address
        set forth below.

14

15 _____  BY FAX (Telecopier) - I personally sent to the addressee's telecopier number
        a true copy of the above described document(s).  I verified transmission and,
        thereafter, I placed a true copy in a sealed envelope addressed and mailed
16      as indicated above.

17 Dwayne B. Burns
   P.O. Box 720157
18 Redding, CA 96099

19      I declare under penalty of perjury of the laws of the State of
   California that the foregoing is true and correct.  Executed at
20 Redding, California on April ___, 2011.

21

22                              _____

23                              Deena Swafford

24

25

26

27

28