1 | Dwayne B. Burns
P.O. Box 720157
2 | Redding, CA 96099
Tel. (530)638-1066
3 | E-mail: dwaynebburns@charter.net

**FILED**

APR 2 6 2011

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

4 | Plaintiff, *In Pro Per*

5

6

7

8 | # IN THE UNITED STATES DISTRICT COURT

9 | ## FOR THE EASTERN DISTRICT OF CALIFORNIA

10 | ### SACRAMENTO DIVISION

11

12 | DWAYNE B. BURNS,

13 |     Plaintiff,

14 | vs.

15 | MICHAEL MUKASEY, in his official
capacity as Attorney General of the United
16 | States of America, et al.,

17 |     Defendants.

18

19

Case No.: 2:09-CV-0497-MCE-CMK

**MEMORANDUM IN SUPPORT OF
PLATINIFF'S MOTION TO AMEND THE
SCHEDULING ORDER TO ALLOW FOR
FURTHER DISCOVERY AND
CONTINUING HEARING ON
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**

20 |     Plaintiff DWAYNE B. BURNS, appearing *in propria persona*, hereby responds to

21 | Defendants' Reply in Support of Motion for Summary Judgment (Dkt. # 71) filed herein, and

22 | submits this Memorandum in Support of his Motion for an order amending the Scheduling Order

23 | herein to allow for further discovery and continuing the hearing on the Motions for Summary

24 | Judgment filed by the parties. While Plaintiff acknowledges that this Response and Motion may

25 | be described as extraordinary, the procedural posture of this case can likewise be described as

26 |

1   extraordinary and perhaps even convoluted.

2                       **INTRODUCTION and SUMMARY OF ARGUMENT**

3           The defendants in this case have filed for Summary Judgment.  In support of defendants'

4   motion, they have filed a number of declarations which consist almost entirely of hearsay.  In

5   addition to inadmissible hearsay, defendants also seek to introduce evidence from an individual

6

7   who was never disclosed to Plaintiff at any time prior to the filing of their motion, and also

8   attempts to introduce ultimate opinion testimony by a witness, Mr. Carmona, who was not

9   disclosed as an expert, and is not qualified to give expert testimony due to his conflict of interest.

10          In an attempt to object to the defendants' inadmissible evidence, Plaintiff filed a motion

11  to strike the declarations that were filed by the defendants (See Dkt. # 67).  Defendants have also

12  objected to evidence that Plaintiff has filed in opposition to the defendants motion for summary

13  judgment (See Attachment # 2 to Dkt. # 71).  What makes the posture of this case highly unusual

14  is the fact that by an order dated April 19, 2011 (Dkt. # 70), the Court has put in place what can

15  only be described as a "one-way street" wherein the defendants have been allowed to object to

16

17  Plaintiff's evidence, while Plaintiff has apparently been denied the same right.

18          The only reason given by the Court for taking such an extraordinary step is its reference

19  to Local Rule (L.R.) 230(a) which requires that motions be noticed at least twenty–eight (28)

20  days prior to the hearing set on the matter.  Unlike defendants' motion which is an "original

21  motion" that was set for hearing according to L.R. 230(a), Plaintiff's motion to strike the

22

23  inadmissible evidence submitted by the defendants is a motion that is "related to the general

24  subject matter of the 'original motion'."  Plaintiff is allowed by Local Rule to file such a motion

25  "in the manner and on the date prescribed for the filing of opposition."  *See* L.R. 230(e).

26  ////

What also makes the posture of this case extraordinary is that by the same order of April 19, 2001, the Court has removed Plaintiff's Opposition and Cross-Motion for Partial Summary Judgment from the Court's hearing calendar and ordered the Clerk to "terminate these filings" as motions on the court's docket. The court's order states that "[t]o the extent plaintiff's recent filings constitute opposition/objection to defendants' motion for summary judgment, the court will consider them for this limited purpose." Notwithstanding this "assurance" from the Court, this action taken by the Court leaves Plaintiff, as well as any reviewing court, not knowing what parts, if any, of Plaintiff's filings the Court intends to accept in opposition. It is for this reason that Plaintiff feels it is necessary to file this Response as well as the accompanying Motion.

In what can only be described as the rankest form of hypocrisy, defendants have objected to Plaintiff's evidence filed in opposition to their motion. As Plaintiff will illustrate below, defendants' objections ring hollow when viewed in context with their own failure to provide discovery in this case, and their failure to take this case seriously. Instead of making any effort to depose, or otherwise secure any admissible evidence from, witnesses whose hearsay statements they attempt to pass off on this Court in support of their motion, they simply expect this Court to accept their hearsay, apparently out of deference to their status as police officers.

As a result of the strange posture of this case, the only fair and reasonable way to ensure that all parties are accorded their right to present admissible evidence on the motions is to amend the scheduling order to allow all parties to conduct further discovery if they so desire, and to continue the hearing on the motions until such time as the Court deems appropriate. Time is not a limiting factor in this case as it is not scheduled for trial until April of 2012. Allowing further discovery and postponing any hearings will not prejudice any of the parties, and will only benefit the parties and the Court in reaching a fair and just decision as to the merits of this case.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**ARGUMENT**

**I.     Applicable Law.**

    **A.     Summary Judgment.**

      In deciding a motion for summary judgment, the evidence of the opposing party is to be believed. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The opposing party must demonstrate that the facts in contention are material, i.e., a fact that might affect the outcome of the suit under the governing law, *Anderson*, at 248; *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

      All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. *Matsushita v. Zenith Radio Corp.*, 475 U.S. 574, 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987). To demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

    **B.     Qualified Immunity.**

      Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In general, qualified immunity

protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). In ruling upon the issue of qualified immunity, the initial inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the defendant's conduct violated a constitutional right. See *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If, and only if, a violation can be made out, the next step is to ask whether the right was clearly established. *Id.* This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ." *Id.* "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 202 (citation omitted). Thus, the final step in the analysis is to determine whether a reasonable officer in similar circumstances would have thought his conduct violated the alleged right. See *Id.* at 205.

When identifying the right allegedly violated, the court must define the right more narrowly than the constitutional provision guaranteeing the right, but more broadly than the factual circumstances surrounding the alleged violation. See *Kelly v. Borg*, 60 F.3d 664, 667 (9th Cir. 1995). For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand [that] what [the official] is doing violates the right." See *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Ordinarily, once the court concludes that a right was clearly established, an officer is not entitled to qualified immunity because a reasonably competent public official is charged with knowing the law governing his conduct. See *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982). However, even if the plaintiff has alleged a violation of a clearly established right, the government official is entitled to qualified immunity if he could have ". . . reasonably but mistakenly believed that his

1    . . . conduct did not violate the right." *Jackson v. City of Bremerton*, 268 F.3d 646, 651 (9th Cir.

2    2001); see also *Saucier*, 533 U.S. at 205.

3    
4    The first two steps in the qualified immunity analysis involve purely legal questions. See

5    *Trevino v. Gates*, 99 F.3d 911, 917 (9th Cir. 1996). The third inquiry involves a legal

6    determination based on a prior factual finding as to the government official's conduct. See *Neely*

7    *v. Feinstein*, 50 F.3d 1502, 1509 (9th Cir. 1995). In resolving these issues, the court must view

8    the evidence in the light most favorable to plaintiff and resolve all material factual disputes in

9    favor of plaintiff. *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003).

10   ### C.   Searches and Seizures.

11   An intrusion into a private residence without a warrant issued upon probable

12   cause or exigent circumstances is presumptively unreasonable. *Payton v. New York*, 445 U.S.

13   
14   573, 586 (1980); *Coolidge v. New Hampshire*, 403 U.S. 443, 454-455 (1971). The freedom of

15   individuals verbally to oppose or challenge police action without thereby risking arrest is one of

16   the principal characteristics by which we distinguish a free nation from a police state. See

17   *Houston v. Hill*, 482 U.S. 451, 461-63 (1987).

18   Consent is a valid exception to the warrant requirement when the person consenting

19   shares, or is reasonably believed to share, common authority over the property, and no present

20   co-tenant objects. See *United States v. Matlock*, 415 U.S. 164, 170 (1974); *Illinois v. Rodriguez*,

21   497 U.S. 177, 186 (1990). Even overnight houseguests have a legitimate expectation of privacy

22   
23   in their temporary quarters. *Minnesota v. Olson*, 495 U.S. 91 (1990). If that temporary but

24   customary expectation is a foundation of a houseguest's Fourth Amendment rights, it follows

25   that an inhabitant of shared premises may claim at least as much. In fact, a co-inhabitant

26   naturally has an even stronger claim. No sensible person would enter shared premises based on

one occupant's invitation when a fellow tenant said to stay out. Such reticence would show not timidity but a realization that when people living together disagree over the use of their common quarters, a resolution must come through voluntary accommodation, not by appeals to authority. Absent some recognized hierarchy, *e.g.,* parent and child, there is no societal or legal understanding of superior and inferior as between co-tenants. *Georgia v. Randolph*, 547 U.S. 103, 111-13 (2006).

Thus, a disputed invitation, without more, gives an officer no better claim to reasonableness in entering than the officer would have absent any consent. Disputed permission is no match for the Fourth Amendment central value of "respect for the privacy of the home," and the State's other countervailing claims do not add up to outweigh it. *Randolph, supra,* citing *Wilson* v. *Layne,* 526 U. S. 603, 610 (1999). Accordingly, in the balancing of competing individual and governmental interests entailed by the bar to unreasonable searches, the cooperative occupant's invitation adds nothing to the government's side to counter the force of an objecting individual's claim to security against the government's intrusion into his dwelling place. *Camara* v. *Municipal Court of City and County of San Francisco,* 387 U. S. 523, 536–537 (1967). When a physically present co-occupant has stated a refusal to consent to the search, this refusal renders the warrantless search unreasonable and invalid as to him. *Randolph, supra* at 103.

II.     **Pertinent Material Facts.**

      A.     **Plaintiff's Wife Had No Authority to Consent Under *Matlock* and Its Progeny, And This Was Obvious To The Defendants.**

While defendants have made invalid objections to some of the declarations submitted by Plaintiff in opposition to their motion, defendants do not include the declaration of Plaintiff's

---

wife as part of the evidence objected to. As the declaration of Lori Burns makes clear, she told the defendants that she not only was no longer a co-occupant, but that she also did not have a key to either residence. As a non-resident with no key, defendants cannot claim that they reasonably relied on her consent as justification for their actions.

As the declaration of Dolly Burns establishes, defendants had to rely on a ruse and a broken promise in order to obtain a key to search the residence at Space 23. As the declarations of Dean and Rebecca Burns establishes, defendant Forrest was specifically told that Lori Burns was not a resident, had no key to the residences, and that Plaintiff did not consent to any search of his residences.

## B.   There Were No Exigent Circumstances.

In their Reply in support of their motion for summary judgment, the defendants try to justify their actions by throwing the domestic violence plate at the wall and seeing what may stick. As the evidence submitted makes clear, there were no exigent circumstances to justify defendants' actions. They were not "protecting" Plaintiff's wife from anyone. Plaintiff was handcuffed and unarmed. Plaintiff's wife was not a current resident, so there was no reason to embark on their fishing expedition to see what they could find. If defendants thought they had probable cause to search for whatever weapons or other contraband they felt obligated to seek out, they should have applied for a warrant as the law requires. There was no risk of any evidence being destroyed because Plaintiff was in their custody, and they were in a position to observe the residences to ensure that nothing was removed.

## C.   Plaintiff Was "Present" As That Term Is Defined In *Randolph*.

Defendants have the audacity to submit to the Court that Plaintiff was not "present" within the meaning of *Randolph*. What they don't wish to emphasize is the fact that if Plaintiff

1 was not actually standing at the door to his residences in an attempt to keep defendants out, it

2 was because they had prevented him from doing so by having pulled a gun on him, ordering him

3 to the ground at gun point, and arresting him on a charge that was not only subsequently

4 dismissed, but as Lori Burns' declaration establishes, was not even justified in the first place.

5 

6 In an attempt to justify their actions by claiming that they were protecting Lori Burns

7 from domestic violence, defendants claim that Lori Burns "had a bruise" that they claim was

8 evidence of domestic violence. This is not credible evidence. Not only does Lori Burns state in

9 her declaration that she had no such bruise, but defendants cannot produce any photograph of

10 this alleged bruise. Plaintiff asks the Court to use its common sense in considering whether

11 defendants' claims are credible. Defendants would have the Court believe that they were

12 conducting a domestic violence investigation that included an alleged injury to the victim, yet

13 they did not bother to photograph the injury.

14 

15 Defendants cannot prevent Plaintiff from being "present" and then be allowed to rely on a

16 hyper-technical reading of the *Randolph* decision to excuse their unlawful acts. The facts of this

17 case as it unfolded rendered it impossible for Plaintiff to have been "present" at the front door of

18 both residences at the same time. Plaintiff had two residences at the mobile home park. If

19 defendants are allowed to argue that they were justified in their actions because Plaintiff was not

20 "at the front door," then all defendants would have to do is merely go to whatever residence

21 Plaintiff happened to not be guarding at the moment. Surely the Supreme Court would not

22 sanction such an absurd reading of its opinion. Plaintiff was as present as he could possibly be.

23 The fact that defendants would even attempt to make such a ludicrous argument should speak

24 volumes.

25 

26 ////

**III.   Plaintiff's Evidence Is Admissible and Should Be Considered.**

    **A.   Defendants Hid Evidence From Plaintiff.**

In a surprisingly bold display of hypocrisy, defendants have objected to the declarations of Dolly Burns, Dean Burns, and Rebecca Burns because they claim they should have been given the names and addresses of these witnesses sooner.  These were not witnesses who remained on the sidelines as unknown observers, but were witnesses who were not only present, but had a number of conversations with the defendants, and identified themselves to the defendants at the scene.  Under the Federal Rules of Civil Procedure pertaining to discovery, and the relevant case law construing those rules, a party is not required to produce evidence that the requesting party already has, or that the requesting party can obtain just as easily as the party from whom such evidence is sought.

If there were any actions that were taken with an intent to subvert the flow of justice, purposefully delay the proceedings, or harass the opposing party, they were taken by the defendants and not the Plaintiff.  Defendant Zufall was specifically asked in Interrogatory Number 15, to state the name, address, and telephone number of each individual who witnessed the incident or the events immediately before or after the incident.  Not only did she not provide the names of the witnesses whose declarations she now objects to, but she also failed to provide the name of Karyn Layton who she not only had contact with, but even went the extra step to conduct a search of Ms. Layton's person which also violated Ms. Layton's Fourth Amendment rights.  Defendant Zufall would have us believe that she doesn't recall Ms. Layton being present at the scene of the incident, even though she conducted one of her famous "pat down searches" on her.  Actually, it was more than a "pat down," she thoroughly searched Layton's person.

Plaintiff sought to have the defendants produce their "patrol notebooks" from the day of

the incident. Inexplicably, each and every one of the defendants claim to no longer be in possession of said notebooks, even though one of the main purposes for such notebooks is to record information which may be needed later in court. Common sense dictates that the defendants destroyed their notebooks or have refused to produce them because of the inculpatory evidence that they contain.

As the declaration of Lori Burns establishes, as well as the court records involved, Defendant Zufall cited Lori Burns for a traffic infraction after this incident took place, yet she expressly denied having any contact with any members of Plaintiff's family subsequent to the incident in question. Defendants should not be allowed to **not respond** to Plaintiff's discovery requests, **hide** incriminating evidence, **make false statements** under penalty of perjury, and then complain about Plaintiff not providing names that they already had, or should have had, in their possession.

Each and every one of the defendants was specifically asked to produce the names of each individual who witnessed the incident or the events immediately before or after the incident. **Not one** of the defendants made any mention of Plaintiff's family members. Perhaps they were hoping that Plaintiff would forget that his family was present. Plaintiff was not required to cue the defendants into the fact that Plaintiff was aware that they were trying to hide evidence from him. This seems to be a pattern with the defendants. First they selectively forget who they had contact with at the scene, then they refuse to produce their patrol notebooks, then they seek to have the Court believe that an unpublished opinion of the Ninth Circuit from 2007, the *Lacey* case, is applicable to the case at hand, even though *Lacey's* facts were not similar to the present case. Only after Plaintiff pointed out their little ploy did defendants decide to mention the *Randolph* case at all. Indeed, if there has been any attempt to subvert justice, it is

the defendants who have done so.

**B.    Plaintiff Timely Produced The Witness Statements.**

When Plaintiff was originally asked to produce the statements of witnesses, Plaintiff was incarcerated in state prison on a conviction that is even now being decided on appeal and is not final under California law. Plaintiff did not have any statements or declarations in his possession, and did not have any written statements or declarations in his possession until mere days if not hours before they were provided to defendants through a supplemental discovery response. This is quite unlike the actions of defendants who failed to provide Carmona's declaration, or his name, until they served Plaintiff with their motion for summary judgment. Seeking to have Plaintiff provide the defendants with the names of witnesses that the defendants already had, or should have had, while Plaintiff was incarcerated, constitutes the type of harassment and oppression that the rules of discovery relieve a party from having to endure.

**IV.    Discovery Should Be Allowed To Continue and The Hearing On The Matter Continued.**

Defendants claim to have been surprised by the witness declarations that Plantiff has submitted. A reasonable remedy is to allow further discovery in this case, so defendants can depose anyone they desire. Trial in this case is not scheduled until April of 2012. See Order of Judge England dated August 11, 2010 (Dkt. # 59). None of the parties will be prejudiced by the amending of the scheduling order to allow further discovery in this case. In fact, it will give all the parties a chance to have a full, fair, and thorough review of the material facts of the case.

The Court has the inherent authority to control the disposition of the cases on its docket "in a manner which will promote economy of time and effort for itself, for counsel, and for the litigants." See *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962; see also *Landis v. North*

*American Co.*, 299 U.S. 248, 254 (1936).  How these objectives can be achieved "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis,* 299 U.S. at 254-55.

Plaintiff is not represented by learned counsel like the defendants are, and was released from prison in October of last year.  Plaintiff has no objection to allowing defendants the opportunity to depose the witnesses whose hearsay statements they now seek to introduce.  In fact Plaintiff would relish the opportunity to conduct further discovery in this case.

### CONCLUSION

For the reasons set forth herein above, the Scheduling Order should be amended to allow for further discovery in this case to ensure that all parties can adequately prepare their case, and the hearing on the Motions for Summary Judgment should be continued to a later date as the Court deems appropriate.

DATED this 26th day of April, 2011.                    Respectfully submitted,


Dwayne B. Burns
Plaintiff, *In Pro Per*

1

2

## **CERTIFICATE OF SERVICE**

3      I hereby certify that on April 26, 2011, a true and correct copy of the foregoing document

4 (including the accompanying exhibits, and attachments, if any) was served on all parties by

5 telecopy transmittal, hand delivery, and/or first-class U.S. mail, postage prepaid, to the attorney

6 of record named below, in compliance with Fed. R. Civ. P. 5.

7
        Gary Brickwood, Esq.
8        BRICKWOOD LAW OFFICE
        1135 Pine Street, Suite 210
9        Redding, CA 96001

10      **I declare under penalty of perjury that the foregoing is true and correct.**

11 Executed on this 26th day of April, 2011.

12

13

14                              Teresa L. Burns, Declarant

15

16

17

18

19

20

21

22

23

24

25

26

Page 14 – Plaintiff's Response to Reply in Support of Summary Judgment and Motion to Amend Scheduling Order