**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DWAYNE B. BURNS, | No. 2:09-CV-0497-MCE-CMK |
|     Plaintiff, | |
|   vs. | FINDINGS AND RECOMMENDATIONS |
| KEVIN KIMPLE, et al., | |
|     Defendants. | |
| _____/ | |

Plaintiff, who is proceeding pro se, brings this civil action. Pending before the court are: (1) defendants' motion for summary judgment (Doc. 64); (2) plaintiff's motion to strike (Doc. 67); and (3) plaintiff's cross-motion for summary adjudication (Doc. 68).[1]

/ / /

/ / /

/ / /

/ / /

/ / /

---

[1] Pursuant to Eastern District of California Local Rule 230(g), the matters were submitted on the record and briefs without oral argument.

# I. BACKGROUND

This action proceeds on plaintiff's amended complaint (Doc. 3). Plaintiff alleges the following facts:

1. On May 21, 2007, plaintiff was arrested by defendant Kimple, an officer with the Redding Police Department, on suspicion of spousal abuse;

2. Following plaintiff's arrest, officers of the Redding Police Department conducted separate illegal searches of plaintiff's two dwellings;

3. Plaintiff did not consent to the searches;

4. During the course of the searches, police officers located and seized a vintage firearm;

5. On September 11, 2007, Shasta Superior Court Judge Molly Bigelow entered a restraining order against plaintiff;

6. The spousal abuse charge was dismissed in the summer of 2008;

7. In the fall of 2008, plaintiff attempted to retrieve his firearm from the Redding Police Department, but was informed that, under a state law prohibiting individuals against whom restraining orders are issued, the firearm would not be returned to him due to the September 11, 2007, restraining order; and

8. The Redding Police Department will not return the firearm unless plaintiff first obtains a "clearance" from the Department of Justice, but he cannot obtain the "clearance" due to the outstanding restraining order.

Following proceedings on motions to dismiss, the following claims remain:

| | |
|---|---|
| Federal Law | In the third and fifth claims of the amended complaint, plaintiff asserts that Redding Police Officers Kimple, Forrest, Williams, and Zufall violated his civil rights under 42 U.S.C. § 1983 by illegally searching his residences and seizing property in violation of the Fourth Amendment. |
| State Law | In his seventh and eighth claims, plaintiff asserts that the illegal search and seizure by defendants Kimple, Forrest, Williams, and Zufall violated provisions of the California constitution, and seeks money damages under California Civil Code §§ 52 and 3294. In the ninth claim, plaintiff alleges trespass to chattel arising from defendant Kimple's seizure of his firearm without compensation, and seeks money damages under California Civil Code § 3294. |

///

///

## II. THE PARTIES' EVIDENCE

### A. Defendants' Evidence

Defendants (Kimple, Williams, Zufall, and Forrest) each offer their declarations, as well as the declaration of the Risk Manager for the City of Redding, Chris Carmona, in support of the following:

1. On May 21, 2007, defendants Kimple, Williams, Zufall, and Forrest responded to a domestic violence report of a man with a gun at 5812 Cedars Road in Redding, California.

2. Upon arriving at the scene, Lori Burns, plaintiff's wife, told defendant Kimple that her husband, plaintiff Dwayne Burns, had assaulted her the previous night, that she left to stay with her sister the rest of the night out of fears for her personal safety, and that she and plaintiff had a second fight that day when she returned for her belongings and to check on her dog.

3. Lori Burns also told defendant Kimple that plaintiff may be in possession of a firearm, explaining that he owned a weapon she described as a small silver handgun.

4. Witness Shari McClendon told defendant Kimple that she had heard someone say "gun" and that she had seen plaintiff spinning a silver object in his hand that might have been a gun.

5. Lori Burns told defendants Kimple and Williams that she and plaintiff lived in both trailers located at spaces 5 and 23 and that they kept personal belongings in both trailers.

6. Defendant Kimple arrested plaintiff for domestic violence against Lori Burns, in violation of California Penal Code § 243(e)(1).

7. Incident to the arrest, defendant Kimple searched plaintiff's person and did not locate any weapons.

8. Lori Burns gave defendants her consent to search the trailers at spaces 5 and 23 for the purpose of locating the handgun believed to be owned by plaintiff.

9. Plaintiff gave defendant Zufall consent to search space 5, but refused to consent to a search of space 23.

10. Based on the consents given, defendant Forrest authorized searches of the trailers at spaces 5 and 23, which were conducted by defendants Williams and Zufall.

///

11.     Officer Williams searched the trailer at space 5 and located items identifying both Lori Burns and plaintiff as occupants, as well as ammunition and an empty handgun box.

12.     Defendant Zufall located and seized a handgun from the trailer at space 23, and defendant Williams located and seized ammunition, marijuana, and drug paraphernalia from the trailer at space 23.

13.     Defendant Zufall seized the handgun she found for the safety of Lori Burns.

14.     Plaintiff did not file a government tort claim with the City of Redding.

By way of his motion to strike, plaintiff objects to the court's consideration of defendants' evidence. Plaintiff generally argues that none of declarations offered by defendants should be considered because they were not previously provided to him. In particular, plaintiff contends that the declarations were not disclosed in response to interrogatories propounded by plaintiff asking if any of the defendants had obtained a statement from any individual concerning the incident, nor were defendants' discovery responses supplemented when the declarations were later obtained. Plaintiff argues that the declarations should be stricken under Federal Rule of Civil Procedure 37(c)(1) as an appropriate sanction.

This objection should be overruled. Because the declarations were prepared in connection with defendants' motion for summary judgment after the close of discovery, they did not exist at the time defendants responded to plaintiff's discovery requests for statements concerning the incident which had been previously obtained by any defendant from any individual. Moreover, defendants were not under an obligation to supplement under Federal Rule of Civil Procedure 26(e) because defendants never learned that their initial disclosure (that no statements concerning the incident had been obtained previous to plaintiff's discovery requests) was incorrect.

/ / /

/ / /

As to each specific declaration offered by defendants, plaintiff argues as follows: (1) paragraphs 5 and 7 of the Forrest declaration consist of hearsay; (2) paragraphs 3, 4, 6, and 8 of the Williams declaration consist of hearsay; (3) paragraphs 3, 6, and 9 of the Zufall declaration consist of hearsay or contain prejudicial matters; (4) the Kimple declaration consists entirely of hearsay; and (5) Carmona's declaration is not based on his personal knowledge and lacks authentication.

### 1. Forrest Declaration

Plaintiff first argues that paragraphs 5 and 7 of the Forrest declaration must be stricken from the record because they consist of hearsay. Paragraphs 5 and 7 read as follows:

> 5. During the investigation, I learned that Mr. Burns was arrested by Officer Kimple for assault on Lori Burns. I learned from Kimple and Williams that Burns was very upset at the scene. I learned that Lori burns was Dwayne Burns' wife and that she stated that Dwayne Burns owned a handgun. I learned that Lori Burns and perhaps her sister had stated that they believed Dwayne Burns might have been in possession of a handgun that morning before police arrived at the trailer park. I learned from Officer Williams that Lori Burns stated that she owned both the trailers at space 5 and at space 23 and that she and Dwayne Burns co-occupied both trailers and kept possessions in both trailers.
>
> 7. I was advised by Officer Williams that Lori Burns had consented that officers could search both the trailers at space 5 and space 23. I was advised by Officer Zufall that Dwayne Burns had consented that officers could search the trailer at space 5, but that he had refused to allow consent to search the trailer at space 23.

According to plaintiff: ". . . These paragraphs simply relate the content of what Forrest was told by others" and, as such, they constitute hearsay. This objection should be overruled and the statements should be considered to the extent they show the officer's state of mind at the time and not the fact of matters stated by others to the officer.

/ / /

/ / /

/ / /

/ / /

2. <u>Williams Declaration</u>

Next, plaintiff argues that paragraphs 3, 4, 6, and 8 of the Williams declaration should also be stricken as consisting of hearsay. These paragraphs read as follows:

> 3. After I arrived on the scene, I assisted Officer Kimple in detaining Dwayne Burns. My understanding at the time was that Mr. Burns was believed to have assaulted his wife, Lori Burns. At the time of my contact with Mr. Burns, he was angry and combative. Mr. Burns was handcuffed and placed in the rear of a patrol car for the safety of officers and others at the scene.
>
> 4. I assisted Officer Kimple in interviewing Lori Burns and Shari McClendon. As a result of the interviews, I learned of a physical fight between Lori Burns and Dwayne Burns the previous night, and the continuing argument that morning at the trailer park. I learned that both Lori Burns and Shari McClendon thought that Dwayne Burns might be in possession of or had access to a handgun either on his person or in one of the two trailers. I learned from Lori Burns that Lori Burns and Dwayne Burns co-occupied the trailers in space 5 and space 23, and that Lori Burns owned both trailers herself.
>
> 6. I then asked Lori Burns if she would consent to allow officers to search the trailers at space 5 and space 23. Lori Burns stated that she did consent to officers searching both trailers. She also stated that she believed Dwayne Burns had firearms in both trailers. Lori Burns stated that she was unsure whether Dwayne Burns had drugs in both trailers.
>
> 8. Officer Zufall and I then searched the trailer at space 23. In this trailer, I found another box of ammunition and a gun cleaning kit. I also found two large containers holding approximately 10 pounds of marijuana, a number of syringes, and miscellaneous drug paraphernalia.

As with the Forrest declaration, plaintiff argues that paragraphs 3, 4, and 6 consist "almost entirely of inadmissible hearsay. . . ." As to paragraph 8, plaintiff argues that the last sentence should be stricken because it relates to irrelevant and prejudicial issues, apparently relating to his possession of marijuana. Again, this objection should be overruled and the statements should be considered to the extent they show the officer's state of mind at the time and not the fact of matters stated by others to the officer.

/ / /

/ / /

6

### 3. Kimple Declaration

Plaintiff also argues that the Kimple declaration should be stricken in its entirety as consisting "almost entirely" of inadmissible hearsay and/or irrelevant and prejudicial matters. Specifically, plaintiff challenges paragraphs 2, 3, 4, 5, 6, 7, 8, 9, and 10. Those paragraphs read as follows:

> 2. On May 21, 2007, at approximately 11:00 a.m., I was dispatched on a domestic disturbance call to 5812 Cedars Road, Redding. That location is a trailer home park. Dispatch advised me that there were multiple reporting parties about the domestic disturbance call. Dispatch advised that there was a report by one of the reporting parties that a handgun had been displayed by the suspect, Dwayne Burns, during the disturbance. Dispatch advised that Dwayne Burns was reported to be attempting to run down a female with his truck at the trailer park. Dispatch further advised that Dwayne Burns himself called dispatch to report that a female McClendon at the trailer park had taken his dog and that he was trying to locate McClendon. Dispatch further advised that Dwayne Burns would be waiting for our arrival at the entrance to the trailer park.
>
> 3. When I arrived at the trailer park, I made initial contact with Dwayne Burns at the entrance. Because of the report regarding the handgun, Mr. Burns was immediately handcuffed and detained. He had no gun on his person at that time. Mr. Burns was upset and angry. During our brief contact at that time, Dwayne Burns accused his wife and sister of being liars. His emotions ranged from anger to crying and he made statements that his life was over. Burns was put into the back of a patrol car for safekeeping so that we could investigate the circumstances.
>
> 4. I made contact with Lori Burns at the trailer park. Ms. Burns was found hiding behind a fence within the trailer park. Ms. Burns identified herself as the victim of an assault by her husband, Dwayne Burns.
>
> 5. Lori Burns advised me that she, Lori Burns, owned two trailers in the park, the trailer located in space 5 and the trailer located in space 23. She stated she and Dwayne Burns lived in both trailers and kept belongings in both trailers and that Dwayne Burns spent more time in trailer 5.
>
> 6. Lori Burns advised me that she and Dwayne Burns had been fighting. Lori Burns had a bruise on her face. She told me that she and Dwayne Burns had a physical fight the night before at about 1:00 a.m. and that he had grabbed her face, struck her several times, and pulled her hair. She told me she had not previously reported this fight to the police because she was afraid of her husband. She told me after the fight, she had left the trailer park and spent the night with her sister at her sister's home.

> 7. Lori Burns told me that she returned to the trailer park the morning of the 21st, the day of this domestic disturbance call, to pick up personal belonging and check on her dog. Ms. Burns told me that after she arrived at the trailer park that morning, she had another argument with Dwayne Burns.
>
> 8. Ms. Burns told me that while they were arguing that morning that she had felt threatened by Burns and that Burns owned a silver handgun and that she believed that he might have it in his possession.
>
> 9. I then spoke with the sister, Shari McClendon. Ms. McClendon told me that she was Lori Burns' sister. Ms. McClendon told me that Lori Burns had stayed with her the night before because of the fight with Dwayne Burns. She told me she had gone to the trailer park with Lori Burns that morning to assist Lori Burns and because Lori Burns was afraid for her safety because of Dwayne Burns. Ms. McClendon told me that she had seen Lori Burns and Dwayne Burns arguing that morning before police arrived and that she had heard a comment about a gun. Ms. McClendon told me that she saw Dwayne Burns fiddling with a silver object in his hand that she thought might have been a gun, but she was not certain whether it was a gun.
>
> 10. I made further contact with Dwayne Burns in the patrol car. He remained extremely angry. He was emotionally upset. I placed Dwayne Burns under arrest for the assault on Lori Burns in violation of Penal Code Section 243(e)(1) and transported Mr. Burns to jail.

Plaintiff argues that these statements consist of hearsay. He also argues that a witness is not permitted to offer inferences or legal conclusions. As to the latter objection, the court does not agree with plaintiff that these paragraphs reflect inferences or legal conclusions. Rather, they directly relate to the officer's investigation of the incident. As to the former objection, the court finds that the statements are not hearsay to the extent they are offered to show the officer's state of mind and not to show the facts of any matters stated by others to the officer.

### 4. Zufall Declaration

Next, plaintiff argues that 3, 6, and 9 of the Zufall declaration should be stricken as consisting of hearsay. These paragraphs read as follows:

> 3. While at the scene of the trailer park, after Dwayne Burns had been handcuffed and placed in the back of a patrol car, I was advised by Officer Will Williams of the Redding Police Department that Williams had obtained consent from Lori Burns to search the trailers at space 5 and space 23. Officer Williams advised me that he had learned from Lori

8

> Burns that she and Dwayne Burns were married and that she owned both trailers and that both she and Dwayne Burns lived in and occupied both trailers.
>
> 6. In that Officer Williams told me he had obtained consent from Lori Burns to search both trailers and in that officers were concerned about the presence of a gun in the trailers and the fact that there had been a domestic violence incident between Dwayne Burns and Lori Burns, I thought it was important to determine if possible whether a gun was present in both trailers and if so, to seize the gun. For this reason, I spoke with Corporal Forrest who was the supervising officer at the scene. I relayed to Corporal Forrest the information contained in this declaration about witness statements that Mr. Burns owned a handgun and was believed to have been in possession of a handgun the morning before police arrived at the scene. I advised Corporal Forrest about the consent from Lori Burns to search both trailers and about the consent from Dwayne Burns to search the trailer at space 5 and about his refusal to consent to a search of the trailer at space 23.
>
> 9. I had learned during our investigation and prior to locating the handgun, that Mr. Burns was then currently on bail for an arrest involving another charge. In that Mr. Burns was currently under arrest by Officer Kimple for a domestic violence charge involving Lori Burns, I took possession of the handgun for the safety of Lori Burns.

Plaintiff contends that paragraphs 3 and 6 contain inadmissible hearsay, and that paragraph 9 contains irrelevant and prejudicial matters, specifically his bail status related to another charge. As with plaintiff's other hearsay objections, the statements go to the officer's state of mind at the time.

     5.  Carmona Declaration

    Chris Carmona's declaration consists of three paragraphs in which he states that his official responsibilities include maintaining records for the City of Redding, that in this capacity he has reviewed all government claims records on file, and that upon such review no government claims were located relating to plaintiff's claims in this case. This evidence is precisely what is allowed under Federal Rule of Evidence 803(10). The Carmona declaration is testimony that a diligent search of public records failed to produce a specific public record to show that the record does not exist. Plaintiff's objections to the Carmona declaration should be overruled.

### B. Plaintiff's Evidence

In support of his cross-motion for summary judgment and in opposition to defendants' motion, plaintiff offers the declarations of his brother Dean B. Burns, his mother Dolly J. Burns, his ex-wife Lori A. Burns, his sister-in-law Rebecca M. Burns, as well as his own declaration, defendants' declarations, and responses to discovery, in support of the following:

   1. Plaintiff resided in two trailers at Space 5 and Space 23 in the mobile home park located at 5812 Cedars Road in Redding, California.

   2. Plaintiff was present at the scene and made clear to Williams and Zufall that he refused to consent to a search of his residence at Space 23.

   3. Plaintiff's residence at Space 23 was entered by Williams and Zufall without a warrant or probable cause.

   4. Plaintiff's firearm was seized as a result of the search of Space 23.

   5. Williams and Zufall relied on Lori Burns' consent for the search of Space 23.

   6. Before the search of Space 23, Kimple pointed a firearm at plaintiff and handcuffed him.

Defendants object to the declarations of Dean Burns, Dolly Burns, and Rebecca Burns on the basis they were not disclosed during discovery. Defendants request that these declarations be precluded under Federal Rule of Civil Procedure 37(c)(1). Defendants also object to specific portions of each declaration as follows: (1) paragraphs 5 and 8 of the declaration of Dean Burns; (2) paragraphs 5 and 9 of the declaration of Dolly Burns; (3) paragraphs 10, 11, 12, 13, 14, 17, 18, 19, 22, 23, and 24 of the declaration of Dwayne Burns; (4) paragraphs 2, 3, 7, 12, and 13 of the declaration of Lori Burns; and (5) paragraphs 5 and 7 of the declaration of Rebecca Burns.

///

///

///

The court finds that the declarations of Dean Burns, Dolly Burns, and Rebecca Burns should be disregarded under Rule 37(c)(1) as a sanction for plaintiff's evasive response to defendants' discovery request seeking the identity of anyone who witnessed the incident or events immediately before or after the incident.  Rather than identify Dean Burns, Dolly Burns, and Rebecca Burns – who now all offer declarations recounting the incident as well as events before and after the incident – plaintiff objected that doing so "would impose an undue burden upon [plaintiff]."

Turning to defendants' objections to specific portions of plaintiff's own declaration, the following paragraphs are at issue:  10, 11, 12, 13, 14, 17, 18, 19, 22, 23, and 24.  Defendants argue that the contents of paragraphs 10, 11, 12, 13,14, 22, and 23 are "irrelevant and hence inadmissible."  Additionally, defendants argue that paragraph 14 contains hearsay.  These challenged paragraphs read:

> 10. At this point, Corporal Forrest arrived and came to where I was seated.  Corporal Forrest then said to Officer Williams, "Did you know that this guy is an F.B.I. informant?"  I thought it was a strange thing for him to say since it had nothing to do with the situation at hand.
>
> 11. I got the impression that Corporal Forrest harbored some sort of resentment against me, but I wasn't sure why.  Days earlier, I had contacted a personal acquaintance who is a special agent of the F.B.I. and had reported that a Kevin Bennett who lived in the park and worked as the maintenance man had a firearm in his possession.
>
> 12. I reported this to the F.B.I. because I thought that Bennett was violating federal law because he had been convicted of a crime of domestic violence.  I had been contacted by an investigator with the Redding Police Department about the issue, and to my knowledge the police had indeed found a firearm in his possession.
>
> 13. Even though I subsequently learned that Bennett had indeed been convicted of a crime of domestic violence, and had been found with a firearm in his possession, to my knowledge Bennet was not charged with a crime.  I thought this was strange.
>
> 14. I later heard that Bennett had been an informant for the Redding Police Department.  So when Corporal Forrest made the comment about me being an F.B.I. informant, and I observed what I thought to be his perceived hostility toward me. I thought perhaps he was upset about me contacting the F.B.I. about one of his informants.  This

>was the only explanation I could think of for Corporal Forrest's comment.
>
>22. Subsequent to the incident which gave rise to this action, I learned that California Penal Code Section 12028.7 requires that law enforcement officers shall issue a receipt describing the firearm seized to the person from whom they seize the firearm.
>
>23. On May 21, 2007, when my firearm was seized, I was not the subject of any court order that would have restricted my possession of a firearm, nor I was a convicted felon.

The court does not agree that paragraphs 10, 11, 12, 13, and 14 are irrelevant. These statements lay the factual foundation for plaintiff's argument that defendant Forrest was acting out of some improper motivation (e.g., Forrest was upset about plaintiff contacting the FBI regarding Bennett), which would be relevant to plaintiff's claims in this case. The court does, however, agree with defendants that paragraph 14 contains inadmissable hearsay in that plaintiff recounts an out-of-court statement (what he "heard") for the truth of the matter stated (that Bennett was in fact an informant for the Redding Police Department).[2]

Defendants next argue that paragraphs 17, 18, and 19 contain inadmissable hearsay, and that paragraph 19 also contains irrelevant material. These paragraphs read as follows:

>17. A short time later I found out that Officers Williams, Kimple, and Zufall had indeed entered by residence at Space 5 and were conducting a search of it. Officer Williams approached me shortly thereafter and asked me if I had a key to my residence at Space 23. I told him that I did not have a key, and that I did not want anyone to enter my residence.
>
>18. A few minutes later, I learned that the officers had somehow got a key to my residence at Space 23 and were inside it. Officer Kimple told me that they had found a firearm in my residence and had seized it. I was never given a receipt for my firearm that was seized.
>
>19. Months later, after all of the charges that were filed against me as a result of my arrest that took place on May 21, 2007, had been dismissed, I contacted the property room of the Redding Police Department. I was told that Officer Kimple had lodged my firearm that

---

[2] The court observes that paragraph 13 likewise contains inadmissable hearsay.

>was seized on the date of the incident giving rise to this action into the property room, and that in order to get my firearm back I would need a clearance from the Department of Justice.

The court agrees that paragraph 17 contains hearsay to the extent plaintiff conveys an out-of-court statement (what he "found out") for the truth of the matter stated (that officers had entered Space 23). Similarly, paragraph 18 contains hearsay with respect to what plaintiff "learned." The court also agrees with defendants that paragraph 19 contains irrelevant material because procedures required to obtain plaintiff's gun are not relevant to plaintiff's claims arising from the May 2007 incident.

Finally, defendants argue that paragraph 24 constitutes nothing more than plaintiff's legal conclusion on an irrelevant matter. Paragraph 24 reads as follows:

>24.   I have never been convicted of a "crime of domestic violence," as that term has been interpreted by the United States Justice Department.

Given plaintiff's admission that the phrase "crime of domestic violence" is a legal term of art, the court agrees with defendants that this paragraph consists of a legal conclusion.

### III.  STANDARDS FOR SUMMARY JUDGMENT

The Federal Rules of Civil Procedure provide for summary judgment or summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The standard for summary judgment and summary adjudication is the same. See Fed. R. Civ. P. 56(a), 56(c); see also Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.

/ / /

/ / /

/ / /

See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Under summary judgment practice, the moving party

> . . . always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.
>
> Id., at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(c)(1).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987). To demonstrate that an issue is genuine, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted). It is sufficient that "the claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.

///

1         In resolving the summary judgment motion, the court examines the pleadings,
2 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if
3 any. See Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, see
4 Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed
5 before the court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587.
6 Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to
7 produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen
8 Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.
9 1987). Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for
10 the judge, not whether there is literally no evidence, but whether there is any upon which a jury
11 could properly proceed to find a verdict for the party producing it, upon whom the onus of proof
12 is imposed." Anderson, 477 U.S. at 251.

### IV. DISCUSSION

15         In their motion for summary judgment, defendants argue: (1) plaintiff's § 1983
16 Fourth Amendment claims fail as a matter of law because it is undisputed that plaintiff's wife
17 gave consent for the searches of the trailers; (2) defendants are entitled to qualified immunity
18 with respect to plaintiff's § 1983 claims; (3) plaintiff's state law claims are barred because he
19 failed to exhaust administrative remedies by filing a government tort claim; (4) plaintiff cannot
20 state a claim for damages under California Civil Code § 52 for the search and seizure because he
21 has not alleged violations of one of the predicate statutes, California Civil Code § 51, 51.5, 51.6,
22 51.7, or 51.9; and (5) plaintiff cannot state a claim for trespass to chattels because the seizure of
23 his firearms were permitted under state law. In his cross-motion for summary adjudication,
24 plaintiff argues that he is entitled to a judgment in his favor as a matter of law on his § 1983
25 claim relating to the search at space 23 (third claim).
26 ///

A.  **Federal Law Claims (Third and Fifth Claims)**

In his third claim, plaintiff alleges a violation of his Fourth Amendment rights with respect to the search at space 23. In his fifth claim, plaintiff challenges the validity of the search at space 5.

Defendants argue that both of plaintiff's Fourth Amendment claims necessarily fail as a matter of law because his wife gave them consent to conduct the searches. Citing United States v. Matlock, 415 U.S. 164 (1974), defendants assert that plaintiff's wife had common authority over both premises because he was a spouse co-habitant. Defendants further cite United States v. Sealey, 830 F.2d 1028 (9th Cir. 1987), for the proposition that this remains true even though the spouses are adverse. According to defendants:

> Here, the officers obtained the consent of plaintiff's wife to the search of both trailers. She told officers that she and Dwayne Burns lived in and co-occupied both trailers and had personal belonging in both trailers. That plaintiff Dwayne Burns refused to consent to search the trailer at space 23 does not officiate the consent given by Lori Burns to conduct the search at space 23. The gun was found in the trailer located at space 23.

In his opposition and cross-motion, plaintiff argues that defendants are not entitled to summary judgment on any of his claims and that he is entitled to judgment as a matter of law as to his third claim relating to the search at space 23.[3] As to space 23, plaintiff cites Georgia v. Randolph, 547 U.S. 103 (2006), for the proposition that "in circumstances like the ones in the present case, a physically present co-occupant's stated refusal to permit entry prevails, rendering the warrantless search unreasonable and invalid as to him."

As defendants correctly observe, a well-established exception to the Fourth Amendment's requirement of a warrant or probable cause before conducting a search or seizing property is consent. See Davis v. United States, 328 U.S. 582 (1946). The principle legal question on which plaintiff's § 1983 claims turn is whether the consent given by Lori Burns, who

---

[3] As to space 5, plaintiff states that ". . .it may be disputable whether Plaintiff consented to a search of his residence at Space 5. . . ."

16

was plaintiff's wife and co-habitant of the trailers at the time, satisfied this exception. Under Matlock, the court concludes that it did because Lori Burns had common authority as plaintiff's spouse and co-habitant of the trailers to give consent. Plaintiff's § 1983 claims fail as a matter of law and the court does not reach defendants' argument that they are entitled to qualified immunity.

The court rejects plaintiff's argument under Georgia v. Randolph that his objection to the searches negated the consent given by Lori Burns. Randolph is distinguishable from the facts of this case in that, in Randolph, the objecting co-habitant was at the door along side the consenting co-habitant. Here, as in Matlock, the objecting co-habitant had been arrested and was in the patrol car at the time consent was given.

### B.   State Law Claims (Seventh, Eighth, and Ninth Claims)

Plaintiff alleges that the searches and seizures violated provisions of the California Constitution and resulted in a trespass to chattels. Defendants first argue that plaintiff's state law claims are barred because he failed to comply with the provisions of California Government Code § 905 which requires that a timely tort claim be filed with the appropriate governmental entity, in this case the City of Redding. Defendants also argue that plaintiff cannot state a claim for relief under California Civil Code § 52 because he has not alleged the violation of a predicate offense. Finally, defendants argue that plaintiff cannot show a trespass to chattels because the seizure of his firearm was permissible under state law.

Because plaintiff's federal claims fail as a matter of law, there is no basis for supplemental jurisdiction over plaintiff's state law claims.

/ / /
/ / /
/ / /
/ / /
/ / /

## V.  CONCLUSION

Based on the foregoing, the undersigned recommends that:

1. Defendants' motion for summary judgment (Doc. 64) be granted;

2. Plaintiff's motion to strike (Doc. 67) be denied;

3. Plaintiff's cross-motion for summary adjudication (Doc. 68) be denied; and

4. All other pending motions (Docs. 72 and 78) be denied as moot;

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).


DATED: October 29, 2015

CRAIG M. KELLISON
UNITED STATES MAGISTRATE JUDGE